# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

DAVE CAMPBELL AND
CATRENIA DAWN CAMPBELL,

**JURY TRIAL REQUESTED**

PLAINTIFFS,

v.                                    Case Number: 3:25-CV-00064-BRW

BARRY JOSEPH O'DELL in his individual capacity,
DANNY L. BUSCH in his individual capacity,
CARL DWAYNE PLUMLEE in his individual capacity,
BARBARA ANN GANN in her individual capacity,
ADAM MARK DAVIS in his individual capacity,
THOMAS RAYMOND OWSLEY in his individual capacity,
ROBERT LEE BENNETT in his individual capacity,
JAMES EDWARD TURNBOUGH in his individual capacity,
JOHN ALLEN BARNETT in his individual capacity,
HUNTER RAY CRAWFORD in his individual capacity,
JACOB LEE SMITH in his individual capacity,
WILLIAM MICHAEL FAWCETT in his individual capacity,
JOHN GREGORY SMITH in his individual capacity,
TIMOTHY MORRIS WEAVER in his individual capacity,
JAMES RAY CANTRELL in his individual capacity,
JAMES BRANDON HOLDER in his individual capacity,
CHANEY WES TAYLOR in his individual capacity,
DREW EDWARD SMITH in his individual capacity,
DONALD TAYLOR McSPADDEN, in his individual capacity,
GARY LEE DUNN, in his individual capacity,
RANDALL DALE DUNN, in his individual capacity,
BRENDA E. DUNN, in her individual capacity,
PAUL DAVID KAUFFMAN, in his individual capacity,
FREDERICK ALEXANDER O'NEIL, in his individual capacity,
GAVIN BRYCE MOORE, in his individual capacity,
LAUREN ELIZABETH SIEBERT, in her individual capacity,
BENJAMIN RICHARD BURNETT, in his individual capacity,

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 05 2025

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

1

SHAYNE LEE PETERSON, in his individual capacity,
JODY LEE SHACKELFORD, in his individual capacity,
JOHN T. MCGINNES, in his individual capacity,
IRON ROCK LAW FIRM, LLC,
FULTON COUNTY SHERIFF'S OFFICE, and
ADULT PROTECTIVE SERVICES.

DEFENDANTS.

## FIRST-AMENDED COMPLAINT

### (Color of Law Retaliation, False Arrest, and Racketeering)

### Statement of Claims:

1.  Plaintiffs, Dave and Catrenia Dawn Campbell, proceeding pro se, bring this action pursuant to 5 U.S.C. § 552, 42 U.S.C. §§ 1983, 1988 and 1962(c) of the RICO Act, to remedy acts of fraud, discrimination, retaliation and racketeering perpetrated against Plaintiffs by the following Defendants: Barry Joseph O'Dell, Danny L. Busch, Carl Dwayne Plumlee, Barbara Ann Gann, Adam Mark Davis, Thomas Raymond Owsley, Robert Lee Bennett, James Edward Turnbough, John Allen Barnett, Hunter Ray Crawford, Jake Lee Smith, William Michael Fawcett, John Gregory Smith, Timothy Morris Weaver, James Ray Cantrell, James Brandon Holder, Chaney Wes Taylor, Drew Edward Smith, Donald Taylor McSpadden, Gary Lee Dunn, Brenda E. Dunn, Randall Dale Dunn, Paul David Kauffman, Frederick Alexander O'Neil, William Gavin Bryce Moore, Lauren Elizabeth Siebert, Shayne Lee Peterson, Benjamin Richard Burnett, Jody Lee Shackelford, John T. McGinnes, Iron Rock Law Firm, PLLC, Fulton County Sheriff's Office and Adult Protective Services.  In November of 2020, Plaintiffs became residents of Mammoth Spring, Arkansas.  Plaintiffs are prejudiced by paying taxes to the City of Mammoth Spring while being deprived of representation, due to

Defendants' unlawful conduct.  Defendants damaged Plaintiffs.  Plaintiffs contend,

Defendants discriminated and retaliated against Plaintiffs because Plaintiffs were

whistleblowers.  Defendants unlawfully used organized Strategic Lawsuits Against

Public Participation (S.L.A.P.P) against Plaintiffs; both civilly and criminally to

silence Plaintiffs' protected speech and to prevent Plaintiffs from filing a lawsuit

Plaintiffs notified the City of Mammoth Spring on 04/15/24.  Under §1983, the Fourth

Amendment was violated by an arrest without probable cause and an unlawful seizure.

Under §1983, the First Amendment was violated by prohibiting Plaintiffs' Freedom of

Speech, Freedom to Seek Redress and Freedom to Assemble.  Defendants organized a

kidnapping of Plaintiffs' neighbor, Betty K Dunn, via the judicial system, which silenced

an exonerating witness for Plaintiffs.  Defendants' racketeering conduct also violated the

Fourth and 14th Amendments against Plaintiffs.  Defendants caused Plaintiffs to suffer

extreme emotional distress, the loss of Plaintiffs' neighbor, loss of friendships, loss of

confidence, loss of Plaintiffs' business, loss of Plaintiffs' good name, loss of consortium,

loss of good health replaced with continuous stomach pain, etc., and financial loss to be

determined by the Court.  Plaintiffs demand relief for the damages Plaintiffs suffered

because of Defendants' unconstitutional and racketeering conduct.

### Parties

I.    **Plaintiffs' name and address:**

1.  Plaintiff, Dave Campbell, (herein, *"Plaintiff Dave Campbell"*), resides at 440

Main Street, Mammoth Spring, Arkansas, 72554-8800.  Plaintiff Dave Campbell is a 69-

year-old Army Veteran, retired as Postmaster.

2.  Plaintiff, Catrenia Dawn Campbell, (herein, *"Plaintiff Dawn Campbell"*) resides

3

at 440 Main Street, Mammoth Spring, Arkansas, 72554-8800 is a former court reporter and now retired.

## II.    Defendants names and addresses:

1.    Defendant, Barry Joseph O'Dell, sued in his personal capacity,  (herein *"O'Dell"*) is a Mammoth Spring City Councilman and Church of Christ Preacher, with last known residence: 214 Florence ST, Mammoth Spring, AR, Fulton County 72554.

2.    Defendant, Danny L. Busch, sued in his personal capacity, (herein, *"Busch"*) is the mayor for the City of Mammoth Spring with last known residence: 111 Riverbend RD, Mammoth Spring, AR, 72554.

3.    Defendant, Carl Dwayne Plumlee, sued in his personal capacity,  (herein, *"Plumlee"*) was the City Attorney for the City of Mammoth Spring and was the Deputy Prosecuting Attorney for Fulton County, Arkansas, with last known residence: 203 Circle High DR, Salem, Fulton, County AR, 72576.

4.    Defendant, Barbara Ann Gann sued in her personal capacity, (herein, *"Gann"*) is a Mammoth Spring City Clerk and Notary for the State of Arkansas with last known residence: 2532 AR HWY 175, Mammoth Spring, Fulton County, AR, 72554.

5.    Defendant, Adam Mark Davis, sued in his personal capacity,  (herein, *"Davis"*) is a Mammoth Spring City Councilman and Mammoth Spring State Park Ranger, with last known residence: 521 River Bend RD, Mammoth Spring, Fulton County AR, 72554.

6.    Defendant, Thomas Raymond Owsley, sued in his personal capacity, (herein, *"Owsley"*) was a Mammoth Spring City Councilman with last known residence: 613 S 7th ST, Mammoth Spring, Fulton County, AR, 72554.

7.    Defendant, Robert Lee Bennett, sued in his personal capacity,  (herein,

"*Bennett*") was a Mammoth Spring City Councilman and is a school principal with last known residence: 104 Riverview DR, Mammoth Spring, Fulton County, AR, 72554.

8.    Defendant, James Edward Turnbough, sued in his personal capacity, (herein, "*Turnbough*") is Mammoth Spring police chief with last known residence:  332 Preacher Town TRL, Mammoth Spring, Fulton County, AR, 72554.

9.    Defendant, John Allen Barnett, sued in his personal capacity, (herein, "*Barnett*") is Mammoth Spring Assistant Police Chief with last known residence: 515 Weatherstone RD, Mammoth Spring, County, AR, 72554.

10.    Defendant, Hunter Ray Crawford, sued in his personal capacity, "*Crawford*") with last known residence: 1000 Fryatt Cemetery RD, Mammoth Spring, Arkansas 72554-7513.

11.    Defendant, Jacob Lee Smith sued in his personal capacity, (herein, "*Jake Smith*") is Sheriff for Fulton County, Arkansas with last known residence: 346 Mare LN, Salem, Fulton County, AR, 72576.

12.    Defendant, William Michael Fawcett sued in his personal capacity, (herein, "*Fawcett*") is Deputy Sheriff for Fulton County, Arkansas with last known residence: 5604 Sturkie RD, Viola, AR, 72583.

13.    Defendant, John Gregory Smith sued in his personal capacity, (herein, "*John Smith*") is Chief Investigator for Fulton County, Arkansas with last known residence: 1966 HWY 9 South, Salem, AR, 72576.

14.    Defendant, Timothy Morris Weaver, sued in his personal capacity, (herein, "*Weaver*") is a Fulton County, Arkansas Magistrate Judge with last known residence: 2524 Barren Fork Rd, Mount Pleasant, AR 72561-8886.

15.    Defendant, James Ray Cantrell, sued in his personal capacity, (herein,

*"Cantrell"*) is a deputy / bailiff for Fulton County, Arkansas with last known residence: 225 High School RD (POB 895) Salem, Fulton County, AR, 72576.

16.     Defendant, James *"Brandon"* Holder, sued in his personal capacity, (herein, *"Holder"*) is Fulton County District Clerk with last known residence: 795 Goldsmith AV, Mammoth Spring, AR, 72554.

17.     Defendant, Chaney Wes Taylor, sued in his personal capacity, (herein, *"Taylor"*) is a Fulton County District Judge with last known residence: 15 Aberdeen DR, Batesville, AR, 72501-4299.

18.     Defendant, Drew Edward Smith, sued in his personal capacity, (herein, *"Drew Smith"*) is Prosecuting Attorney for Fulton County with last known residence: 2599 Sunny Slope Rd, Edgemont, AR 72044-9756.

19.     Defendant, Donald Taylor McSpadden, sued in his personal capacity, (herein, *"McSpadden"*) is a circuit judge for Fulton County, Arkansas, with last known residence: 115 Dusty LN, Cave City, AR, 72521.

20.     Defendant, Gary Lee Dunn, sued in his personal capacity, (herein, *"Gary Dunn"*) with last known residence: 10117 County Road 6550, West Plains, MO 65775-6320.

21.     Defendant, Randall Dale Dunn, sued in his personal capacity, (herein, *"Randall Dunn"*) with last known residence: 207 East Church St, Horseshoe Bend, AR 72512-3824.

22.     Defendant, Brenda E. Dunn, sued in her personal capacity, (herein, *"Brenda Dunn"*) with last known residence: 10117 County Road 6550, West Plains, MO 65775-6320.

23.     Defendant, Paul David Kauffman, sued in his personal capacity, (herein,

*"Kauffman"*) is a medical doctor with last known residence: 102 Riva Ridge Ln, Salem, Arkansas, 72576.

24.  Defendant Frederick Alexander O'Neil, sued in his personal capacity, (herein, *"O'Neil"*) in a Thayer, Missouri attorney with last known residence: 1695 County RD 261, Myrtle, MO, 65778.

25.  Defendant Gavin Bryce Moore, sued in his personal capacity, (herein, *"Moore"* is a nursing home administrator with last known residence: 3317 Partipilo ST, Mountain Home, AR, 72653-5854.

26.  Defendant Lauren Elizabeth Siebert, sued in her personal capacity, (herein, *"Siebert"*) is a radio personality / reporter with last known residence: 50 Orchard Dr, Williford, AR 72482-7012

27.  Defendant, Benjamin Richard Burnett, sued in his personal capacity, (herein, *"Burnett"*) is an attorney in Mountain Home, Arkansas, with last known residence: 1156 Greystone N, Yellville, AR  72687-8148.

28.  Defendant, Shayne Lee Peterson, sued in his personal capacity, (herein, *"Peterson"*) who owns a business next door to Plaintiffs, with last known residence: 28 Dogwood CIR, West Plains, Howell County, MO  65775.

29.  Defendant, Jody Lee Shackelford, sued in his personal capacity, (herein, *"Shackelford"*) is an Arkansas attorney with last known residence: 58 Isleta DR, Cherokee Village, AR  72529-5013.

30.  Defendant, John T. McGinnes, sued in his personal capacity, (herein, *"McGinnes"*) is an Arkansas attorney with last known residence: 14 Pottawattamie DR, Cherokee Village AR  72529-7306.

31.  Defendant, Iron Rock Law Firm, LLC, is a Delaware Corporation, Registered

Agent: A Registered Agent, Inc., with address 8 The Green, Ste A, Dover, DE 19901.

32. Defendant, Fulton County Sheriff's Office, (herein, *"FCSO"*) is located at 451 N. Main ST, Salem, AR, 72576.

33. Defendant, Adult Protective Services, is being sued for information only is located at Donaghey Plaza South, (P.O. Box 1437) Little Rock, AR 72203-1437

34. An indispensable party to this action is Melissa Rogers, who is the secretary to Mammoth Spring Mayor, Defendant Danny Busch. Ms. Rogers filed for bankruptcy shortly after suing Plaintiffs and is protected by the Automatic Stay. Plaintiffs may seek to add Ms. Rogers.

## Jurisdiction

35. This Court has jurisdiction over the subject matter of this civil action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of the First, Fourth, Fifth, Eighth and 14th Amendments to the Constitution of the United States of America, as well as the laws of the State of Arkansas.

36. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C § (civil rights) and 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C §§§ 1331, 1343, and 1367.

## Venue:

37. Venue is proper in the Eastern District of Arkansas, pursuant to 28 U.S.C. §1391(a) and (b) and 28 U.S.C. (a) (3) and (4). This action properly lies in this judicial district with this Court since the events giving rise to this claim occurred in Fulton County, which is in the Eastern District of Arkansas.

## **Statement of Facts:**

### *April 01, 2024 City Council Meeting*

38.     On 04/01/24, Plaintiffs attended a Mammoth Spring City Council meeting.

39.     Plaintiffs were the only citizens scheduled on the agenda to speak at the 04/01 council meeting concerning Plaintiffs' neighbors 14.5' wall.

40.     Plaintiffs' scheduled speech for the 04/01/24 council meeting was stopped after the mayor (Defendant Busch) falsely alleged the wall was coming down, because *"they* [Petersons] *want to get along."*

41.     After discussion of the wall ended, Defendant Busch alleged Plaintiff, Dave Campbell, *"cussed out"* Assistant Police Chief Barnett during a phone call.

42.     After being accused of cussing Defendant Barnett, Plaintiffs explained to Defendant Busch:  Plaintiff, Dave Campbell, stated the word *"shit"* to describe the way Plaintiffs are treated in Mammoth Spring.

43.     Plaintiffs elaborated to Defendant Busch and the city council about two particular incidents; an ignored pit bull dog attack against Plaintiffs in September of 2023 and a 10/30/23 break-in at Plaintiffs' neighbor's home (Betty Dunn) wherein Defendant Turnbough initially refused to attend the scene and Defendant Barnett aggressed upon Plaintiffs.

44.     After Plaintiffs stated the aforesaid during the 04/01/24 council meeting, Defendant Busch stopped Plaintiffs from speaking further by stating, *"you're done"* while Plaintiff, Dave Campbell, was speaking.

45.     Defendant Busch alleged he received complaints against Plaintiffs.

46.     Plaintiff, Dawn Campbell, asked Defendant Busch what complaints he received about Plaintiffs.

47. Laughing, Defendant Busch alleged Plaintiffs do not have any friends where Plaintiffs live.

48. Plaintiff, Dave Campbell, then touched Plaintiff, Dawn Campbell's elbow while stating, *"C'mon, Baby, let's go."*

49. Defendant Turnbough, while sitting in the next room, ordered loudly, *"DON'T EVER TOUCH YOUR WIFE LIKE THAT AGAIN."*

50. Plaintiffs then walked to Defendant Turnbough and stood in front of him.

51. Plaintiff, Dave Campbell, asked Defendant Turnbough if he was kidding.

52. Defendant Turnbough then repeated the aforesaid order over Plaintiff, Dawn Campbell's body.

53. Plaintiff Dawn Campbell then stated to Defendant Turnbough, *"Dave is my husband and he can touch me however and whenever he wants to when letting me know he is ready to leave."*

54. Plaintiffs then left City Hall and quickly returned, with Plaintiff, Dave Campbell, standing in the foyer while Plaintiff, Dawn Campbell, attended the meeting.

55. Defendant Turnbough sat in the lobby loudly ordering Plaintiff, Dave Campbell, to go back into the meeting with his wife and to be a man.

56. Plaintiff, Dawn Campbell, then went back into the lobby.

57. Plaintiff, Dawn Campbell, stated the meeting is being disrupted by Defendant Turnbough's loud voice.

58. Plaintiff, Dawn Campbell looked Defendant Turnbough in the eye and stated, *"Dave has never been aggressive to me."*

59. Defendant Turnbough responded by nodding his head while whispering, the statement, *"I know, I know."*

60. After confirming he knows Plaintiff, Dave Campbell, is not aggressive to Plaintiff, Dawn Campbell, Defendant Turnbough stated, Plaintiffs need to hire an attorney and Plaintiffs better watch what Plaintiffs state on a website.

61. Plaintiff, Dawn Campbell, then went back into the meeting and Plaintiff, Dave Campbell, remained in the lobby where Defendant Turnbough finally quieted down.

62. Defendant Plumlee, as the Mammoth Spring City Attorney, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

63. Defendant Busch, as Mammoth Spring Mayor, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

64. Defendant Davis, as a Mammoth Spring councilman, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

65. Defendant O'Dell, as a Mammoth Spring councilman, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

66. Defendant Bennett, as a Mammoth Spring councilman, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

67. Defendant Owsley, as a Mammoth Spring councilman, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs

and remained silent.

68.  Defendant Crawford, as a Mammoth Spring peace officer, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

69.  Defendant Barnett, as a Mammoth Spring peace officer, was present during the 04/01/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

70.  Through Plaintiffs' FOIA Request, Defendant Busch was unable to substantiate his 04/01/24 allegation of having received complaints against Plaintiffs.

   iii.          *"Spoliation of Evidence:"*

71.  On the morning of 04/15/24, Plaintiffs hand-delivered to Defendant Busch a Preservation/ Litigation Notice.

72.  Plaintiffs ordered the 04/01/24 City Council Meeting videos to be preserved.

73.  Defendant Busch instructed his secretary, Melissa Rogers, to wait at least a week before notifying *"Chip"* at Guard Dog Security of Plaintiffs' video preservation request.

74.  At 11:35 AM on 04/22/24, Mayoral Secretary Melissa Rogers, emailed *"Chip"* at Guard Dog Security, stating, *"we have been given an audio/video preservation request.  Can you get us the footage from April 1, 2024 between 5:00 and 9:00 pm in our council/courtroom and the lobby?  We have the audio turned off, which is fine, we just need the video."*

75.  Defendant Busch sent Plaintiffs a letter dated 04/23/24, which states, *"This information has been requested…The security company will pull this footage, however*

*previous pulls have cost the city between $93.00 and $145.00 per incident...In regards to the April 1st Council Meeting held inside the Courtroom of the Mammoth Spring City Hall, video only footage has been requested, again, for a fee that will be passed on to the party requesting the footage."*

76.    Plaintiffs officially requested the 04/01/24 preserved evidence in a letter to *"City Treasurer"* dated 06/17/24.

77.    Plaintiffs' 06/17/24 letter was intercepted by City Secretary Rogers.

78.    In response to Plaintiffs' request for the 04/01 preserved video evidence, Defendant Busch sent Plaintiffs a letter dated 06/21/24, which states, *"The April 1, 2024 meeting video is no longer available."*

79.    On 08/02/24, Plaintiffs had a discussion with Defendant O'Dell, who was parked in front of Plaintiffs' home.

80.    In the 08/02 discussion, Defendant O'Dell was asked why he relied on the 04/01/24 video three times during his 06/10/24 speech about Plaintiffs.

81.    Defendant O'Dell responded to the aforesaid question about the 04/01/24 video, *"I was told we had it."*

82.    On or about 01/03/25, Defendant O'Dell stated publicly on Facebook, the security company deleted the 04/01/24 video after 04/30/24, because they *"can't keep it forever."*

83.    In a sworn affidavit, Arthur Keitzmann testified, the 04/01/24 video was already deleted when he went to preserve it.

84.    Mr. Keitzmann testified he does not remember the date he attempted to preserve the 04/01/24 video evidence.

#### iv.  *"Mrs. Betty K. Dunn"*

85.     Betty Dunn lived directly behind Plaintiffs' home at 435 Bethel AV in Mammoth Spring.

86.     Betty Dunn is the mother of Randall Dunn and Gary Dunn.

87.     Randall Dunn and Gary Dunn have a first cousin who works at the Mammoth Spring State Park, which is ran by Defendant Davis.

88.     Randall Dunn and Gary Dunn's cousin has the same last name as Defendant Busch.

89.     Around September of 2023, Betty Dunn fell alongside the road while tending to her trash can.

90.     Defendant Turnbough telephoned Plaintiffs with notification of Mrs. Dunn's fall.

91.     In Defendant Turnbough's telephoned notice about Mrs. Dunn, Defendant Turnbough stated Mrs. Dunn asked him to call Plaintiffs and did not want her sons notified of her fall.

92     On 10/28/23, Plaintiffs believed Betty Dunn attended Church at Mammoth Spring Church of Christ, so emailed Preacher / Councilman Barry O'Dell with notification of Betty Dunn's hospitalization.

93     Defendant's 10/28/23 email stated, *"Good Morning Pastor O'Dell, we understand our neighbor, Betty Dunn, is a member of your Church. A nurse told us Betty does not know where she is. Yesterday evening, Betty's youngest son was investigating Betty's home and told us he plans to cut off the door knobs, change the locks and sell his mother's home.  Before being taken in the ambulance, Betty reminded us not*

*to notify her sons.  We assume the hospital notified her sons, because the nurse had*

*informed us her two sons were listed as contacts.  Also, Betty's cousin [redacted] asked*

*that we not notify Betty's sons, because there is so much fighting between them.  Betty*

*had told the nurse her sons are in Alabama."*

94   Defendant O'Dell did not respond to Plaintiffs' 10/28/23 email about Mrs.

Dunn until 04/04/25.

95   Defendant O'Dell waited from 10/28/23 until 06/06/24 to object to being

called *"Pastor,"* by instructing Plaintiffs in an email response where he was not called

*"Pastor,"* to correct Plaintiffs' records, because O'Dell is not a *"pastor."*

96   On 10/30/23, Randall Dunn was caught climbing through Mrs. Dunn's

window after he removed her air conditioner while using a ladder he brought to the scene.

97.   On or about 12/06/23, Defendant Turnbough visited Plaintiffs' home with the

notification, there is a document at City Hall evidencing Gary and Randall Dunn are not

permitted at 435 Bethel AV while Betty Dunn is alive.

98.   After Betty Dunn's fall in the Fall of 2023, her grandson and granddaughter-

in-law (Amanda Dunn) moved into her home.

99.   After Charles and Amanda Dunn moved out of Mrs. Dunn's home in April of

2024, Plaintiff asked Mrs. Dunn if either of her grandchildren received a Power of

Attorney for her.

100.   Mrs. Dunn did not know her grandchildren received a Power of Attorney.

101.   Plaintiffs drove Mrs. Dunn to Simmons Bank and learned Amanda Dunn

executed a Power of Attorney and also received a debit card on behalf of Mrs. Dunn.

102   Mrs. Dunn filed a criminal complaint with MSPD and FCSO, with

allegations of theft and abuse by Amanda Dunn.

103  Simmons Bank notified authorities of suspicious activity on Betty Dunn's account.

104   To Plaintiffs' knowledge, no one from MSPD or FCSO followed up with Mrs.

Dunn pertaining to her complaints.

105.   Plaintiffs spoke with Saundra Davis at Simmons Bank to learn if anyone followed up with Simmons' complaint and was informed no one had; Plaintiffs were informed another complaint was being submitted to authorities on Mrs. Dunn's behalf.

106.  Mrs. Dunn received her water bill in the name of, *"Amanda Dunn."*

107.  Mrs. Dunn sent a FOIA request to the City of Mammoth Spring requesting the authority to place her account into the name of *"Amanda Dunn."*

108.   In a letter dated 05/08/24, Defendant Busch stated, *"On November 6, 2023, Amanda Dunn notified City Hall, who verified with the Mammoth Spring Police Department, that her grandmother-in-law, Betty Dunn, was ill and unconscious following a fall."*

109.  Betty Dunn's fall referenced in Defendant Busch's letter occurred on 10/26/23.

110.   The Power of Attorney Amanda Dunn executed in Mrs. Dunn's name while she was hospitalized was on or about 11/03/23.

111.   Defendant Busch's 05/08/24 letter states, *"At that time [11/06/23], Amanda Dunn presented POA papers.  Also at that time, Amanda Dunn paid the required deposit of $150 and a connect fee of $10 to have water left on in her name at 435 Bethel Avenue. Upon receiving this deposit, City Hall changed the name on the account to Amanda Dunn*

*from Charles Lee Dunn (deceased). The account had an $8.00 deposit which was applied to the water bill."*

112.   Defendant Busch's 05/08/24 letter also states, *"On May 2, 2024, Amanda Dunn came into City Hall requesting that the water at 435 Bethel Avenue be turned off in her name. Due to the employees at City Hall being familiar with Mrs. Dunn and past medical issues, Mayor Busch agreed to turn the water on for Mrs. Dunn without having the deposit and connect fee totaling $160. This decision was based on concern for Mrs. Dunn's well-being, however, per city ordinance, a deposit should have been required. The account has been restored to Mrs. Betty Dunn's name per her request."*

113.   In a letter dated 05/13/24, in *"RE: Amanda Dunn Investigation,"* Defendant Plumlee sent a letter to Defendant Turnbough stating, *"I have reviewed your file on the above investigation. At this time I do not feel there is sufficient credible evidence to go forward with criminal charges."*

114.   In response to Plaintiffs' FOIA Request, Defendant Plumlee was unable to provide a probable cause statement regarding Betty Dunn and Simmons Bank's Incident Reports.

115.   On 09/30/24, Defendant Kauffman executed an affidavit alleging to have evaluated Betty Dunn on 07/16/24 and found her *"mentally incapacitated."*

116.   Betty Dunn's 07/16/24 Fulton County Ambulance Run Report found Mrs. Dunn *"alert and oriented"* on 07/16/24.

117.   After being reported to the Medical Board, Defendant Kauffman sent a letter to the board alleging he entered the wrong date and actually found Mrs. Dunn mentally incapacitated on 07/01/24.

118.    Defendant Kauffman's 07/01/24 patient report for Betty Dunn found her *"alert and oriented"* on July 01, 2024.

119. In October of 2024, Plaintiffs faxed Mrs. Dunn's ambulance run report to Defendant McSpadden's office and served a copy of the 7/16 ambulance run report to Defendant O'Neil.

120. Defendant McSpadden telephoned Plaintiffs' residence shortly after being faxed Mrs. Dunn's report and threatened Plaintiffs with contempt of court if anything other than a petition is filed in Mrs. Dunn's case.

121. In October of 2024, Defendant McSpadden alleged he would not look at the document Plaintiffs sent him concerning Betty Dunn.

122.    Defendant McSpadden did not object to Plaintiffs' previous submissions of the 07/16/24 video evidence in Mrs. Dunn's guardianship matter.

123.    Mrs. Dunn handwrote a Motion for Continuance of her emergency guardianship since the nursing home could not transport her to Batesville and Defendant McSpadden did not grant Mrs. Dunn's motion.

124.    On 02/07/25, Plaintiffs spoke with Betty Dunn in the hall of the nursing home, who stated on video, *"You know, something destroyed me ... that boss end to void me."*

125.    Mrs. Betty K. Dunn completed her life's journey on or about 04/22/25.

### *June 10, 2024 City Council Meeting*

126.  At the 06/10/24 council meeting, Defendant O'Dell, while acting in the role of city councilman, publicly accused Plaintiffs of calling him *"homosexual"* during the packed and overflowing council meeting, while prohibiting Plaintiffs from defending themselves.

127.  During the 06/10 council meeting, Defendant O'Dell, while in the role of a city councilman, accused Plaintiff Dave Campbell of lying about what occurred during the 4/01/24 city council meeting.

128.   After accusing Plaintiff, Dave Campbell, of lying about the 04/01/24 meeting, Defendant O'Dell did not allege what lie Plaintiff, Dave Campbell allegedly stated.

129.  During the 06/10/24 council meeting, Defendant O'Dell relied on the preserved 04/01/24 video evidence three times while speaking about Plaintiffs to the crowd.

130.  Defendants; O'Dell, Busch, Owsley, Bennett, Davis and Turnbough would not permit Plaintiffs to talk during the 06/10/24 City Council Meeting.

131.  When Plaintiffs attempted to notify the crowd, Plaintiffs never called Defendant O'Dell homosexual, Defendant Busch called on Defendant Turnbough to silence Plaintiffs and prevent Plaintiffs from defending themselves against slander.

132.  Defendant Plumlee, as the Mammoth Spring City Attorney, was present during the 06/10/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

133.  Defendant Davis, as a Mammoth Spring councilman, was present during the 06/10/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent, with exception to laughing and clapping.

134.  Defendant Bennett, as a Mammoth Spring councilman, was present during the 06/10/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

135.  Defendant Owsley, as a Mammoth Spring councilman, was present during the 06/10/24 Mammoth Spring City Council meeting to witness the conduct against Plaintiffs and remained silent.

136.  On 01/03/25 at 3:11 PM, Defendant O'Dell admitted his 6/10/24 public speech about Plaintiffs was made because, *"the Campbells had called for all of city council, the whole Police department, the mayor, and the City attorney to resign because of corruption. That's why I gave that speech. We made copies of all the correspondence for everybody who was there so they could read if they wanted to."*

137.  Plaintiffs' FOIA Request revealed, Defendant O'Dell failed to disclose to the 06/10/24 meeting attendees, copies of O'Dell's 6/6/24 email correspondence between himself and Plaintiffs

138.  Plaintiffs' grievance letters seeking redress referred to by Defendant O'Dell on 01/03/25 was marked, *"return to sender"* and/or *"refused"* by the following defendants and address as follows: 1) Mayor Danny Busch at City of Mammoth Spring, 160 N First ST, Mammoth Spring, AR, 72554;  2) Assistant Chief Barnett, Mammoth Spring Police Department, POB 462, Mammoth Spring, AR, 72554; 3)  Barry O'Dell,

214 Florence ST, Mammoth Spring, AR, 72554; and 4) Robby Bennett, 104 Riverview DR, Mammoth Spring, AR, 72554.

### *"July 16, 2024 Incident at 435 Bethel AV"*
### *"Danny Busch and Barbara Gann"*

139. On 07/16/24, Gary, Brenda and Randy Dunn went to Mammoth Spring City Hall and notified City Hall representatives they [Dunns] were going to 435 Bethel AV and might require the Mammoth Spring Police Department, due to expecting an issue with Plaintiffs.

140. During the foregoing visit on 07/16/24, Betty Dunn's Warranty Deed was presented to City Hall representatives.

141. Mrs. Dunn's Warranty Deed states she had life rights to her estate *"without impeachment of waste."*

142. On 07/16/24, Defendant Busch ignored Mrs. Dunn's Life Rights.

143. On 07/16/24, Defendant Busch acted as if Mrs. Dunn had no rights to her residence.

144. On 07/16/24, Defendant Busch permitted Gary, Randall and Brenda Dunn to trespass at 435 Bethel AV without being supervised by authorities.

145. On 07/16/24, Defendant Gann ignored Mrs. Dunn's Life Rights.

146. On 07/16/24, Defendant Gann acted as if Mrs. Dunn had no rights to her residence.

147. On 07/16/25, Defendant Gann permitted Gary, Randall and Brenda Dunn to go to 435 Bethel AV without being supervised by authorities.

*"July 16, 2024 Incident at 435 Bethel AV"*
*"James Edward Turnbough"*

148.   On 07/16/24, Defendant Turnbough knew Gary, Randy and Brenda Dunn were considered as trespassers at 435 Bethel AV in Mammoth Spring.

149.   On 07/16/24, Defendant Turnbough ignored Mrs. Dunn's Life Rights.

150.   On 07/16/24, Defendant Turnbough acted as if Mrs. Dunn had no rights to her residence.

151.   On 07/16/25, Defendant Turnbough permitted Gary, Randall and Brenda Dunn to go to 435 Bethel AV without being supervised by authorities.

152.   On 07/16/24, at 09:54:27, Plaintiff, Dave Campbell, called 9-1-1 concerning Gary, Brenda and Randall Dunn's appearance at 435 Bethel AV.

153.   On 07/16/24 at approximately 09:55:06, Defendant Turnbough indicated he knew Randall and Gary Dunn were not supposed to be at 435 Bethel AV by responding, *"uh-huh,"* when Dispatcher Hutchinson reminded him they *"have been through this a dozen times,"* the fact Randall and Gary Dunn were not supposed to be at 435 Bethel Avenue with Betty Dunn.

154.   On 07/16/24, Defendant Turnbough erroneously alleged no officers were available to assist Plaintiffs at 435 Bethel AV.

155.   Dispatcher Hutchison notified Defendant Turnbough, *"He* [Dave Campbell] *says he's packing.  And he's headed that way.  I told him, 'you'd better not unpack.'"* Defendant Turnbough replied, *"Well, I'm not supposed to be there, so you'll have to send an officer."*

156.   In response to Dispatcher Hutchinson questioning Defendant Turnbough about being at 435 Bethel AV, Defendant Turnbough falsely alleged Plaintiff, Dave Campbell, asked that he [Turnbough] not go on a call.

157.   After speaking with Dispatcher Hutchinson, Defendant Turnbough telephoned Defendant Crawford with instructions to report to 435 Bethel Avenue.

158.   In Defendant Turnbough's follow-up call with Dispatcher Hutchinson on 07/16/24, he alleged, *"They* [Campbells] *requested I not go through the Sheriff. So – "*

### *"July 16, 2024 Incident at 435 Bethel AV"*
### *"John Barnett"*

159.   In a telephone call with Dispatcher Hutchinson on at 10:07:36, on 07/16/24, Defendant Barnett asked Dispatcher Hutchinson, *"Do you have any deputies close to Mammoth,"* to which she responded, *"I've got 'em headed that way. But, no, they're not close. They came out of Salem."*

160.   Defendant Barnett stated in the 07/16 call, *"I didn't know if Jamie called. The secretary called me…That's the reason I was trying to get a hold of you, but Jamie did apparently."*

161.   In the aforesaid phone call with Defendant Barnett, Dispatcher Hutchinson stated, *"Jamie said nobody else was on duty, so –"* to which Defendant Barnett admitted, *"Well, Hunter is … But there's a lot of people arguing, so I was just hoping to have somebody there."*

162.   Defendant Turnbough telephoned Dispatcher Hutchinson after the foregoing call with Barnett and alleged he [Turnbough] *"forgot about Hunter."*

## *"July 16, 2024 Incident at 435 Bethel AV"*
## *"Hunter Crawford"*

163.    Hunter Crawford arrived to the scene of 435 Bethel AV on 07/16/24 at approximately 10:00 a.m.

164.    On 07/16/24, Defendant Crawford ignored Mrs. Dunn's Life Rights.

165.    On 07/16/24, Defendant Crawford acted as if Mrs. Dunn had no rights to her residence.

166.    On 07/16/24, Defendant Crawford permitted Gary, Randall and Brenda Dunn to remain at 435 Bethel AV, despite Betty Dunn telling them to leave.

167.    On 07/16/24, Defendant Crawford knew Defendants Randall and Gary Dunn were considered as trespassers at 435 Bethel AV by the homeowner; Betty Dunn.

168.    Shortly after Defendant Crawford arrived on 07/16, Defendant Gary Dunn pushed Defendant Randall Dunn out from underneath the carport and stated, *he's gonna arrest him,"* referring to Plaintiff Dave Campbell being arrested by Crawford.

169.    When Plaintiff, Dave Campbell, asked Defendant Crawford if he was going to arrest him, Defendant Crawford stated, *"So, okay, I need both sides."*

170.    Plaintiff Dave Campbell asked Defendant Crawford again if he was going to arrest him and Defendant Crawford responded by asking, *"Okay. Now, what happened?"*

171.    While a camera was held in front of him on 07/16/24, Defendant Crawford was notified the entire 07/16/24 incident is recorded.

172.    Defendant Crawford was present on 07/16/24, when Dave Campbell stated to one of Mrs. Dunn's son, *"We'll see what the video shows."*

173.  In front of Defendant Crawford, Plaintiff Dawn Campbell stated, *"I have it on here"* while pointing to the camera, which was obviously recording the incident.

174.  On 07/16/24, Defendant Crawford was notified, Gary, Randall and Brenda Dunn each assaulted Plaintiff Dave Campbell, which caused Plaintiff to push said Dunns away.

175.  On 07/16, Defendant Crawford was reminded, Defendant Randall Dunn broke into Betty Dunn's residence on 11/30/23.

176.  On 07/16, Betty Dunn informed Defendant Crawford she wanted to press charges against Randall Dunn for breaking into her home on 11/30/23, which Randall Dunn admitted while in the presence of Defendant Crawford.

177.  On 07/16, Defendant Crawford ignored Mrs. Dunn's request to file charges against Randall Dunn for breaking into her home on 11/30/23.

178.  On 07/16, Plaintiff Dave Campbell stated to Defendant Crawford, *"I think Betty wants to press charges against him for breaking into her house"* to which Betty Dunn stated, *"Yes."*

179.  On 07/16, Plaintiff Dave Campbell stated to Defendant Crawford, *"We need a police report to file papers on him for breaking into her house.*

180. Defendant Crawford responded to the notice he was given about Mrs. Dunn filing charges by asking, *"What about today?"* and stating, *"That's what I'm here for right now."*

181.  On 07/16/24, Defendant Crawford called Randall Dunn, *"Buddy"* when Randall Dunn interrupted Plaintiff's conversation with Defendant Crawford.

182.  Defendant Crawford called for an ambulance for Mrs. Betty Dunn against her will at 10:11:01 on 07/16/24.

183. Defendant Crawford did not request a statement from Betty Dunn on 07/16/24.

184. Defendant Crawford did not request a statement from Plaintiff Dawn Campbell on 07/16/24.

185. Defendant Crawford did not request a statement from Plaintiff Dave Campbell on 07/16/24.

186. On 07/16, Plaintiff Dawn Campbell informed Defendant Crawford, *"Dave walked up here and he pushed Dave."*

187. On 07/16, Plaintiff, Dawn Campbell, informed Defendant Crawford, *"When we were walking up here, he [Gary Dunn] came and pushed Dave. And Dave pushed him [Gary Dunn] back and he [Gary Dunn] fell down."*

188. On 07/16, Plaintiff, Dawn Campbell, informed Defendant Crawford, *"Well, this has been prearranged, because they said they were coming up here to take her out of here. Because Betty doesn't want to leave her house, obviously."*

189. On 07/16, Plaintiff Dawn Campbell informed Defendant Crawford, *"And so, Dave walked up here to check on Betty and he [Gary Dunn] pushed at – pushed Dave and Dave pushed him back and he fell."*

190. On 07/16, Plaintiff Dawn Campbell informed Defendant Crawford, *"He fell down backwards as Dave pushed him back. He pushed Dave first."*

191. Gary Dunn did not deny Plaintiff Dawn Campbell's aforesaid words and stated, *"I was trying to go to my mother."*

192. Defendants; Randall and Gary Dunn each informed Defendant Crawford, Gary Dunn was knocked down, to which Plaintiff, Dawn Campbell, responded, *"Because*

*he pushed Dave,"* to which Defendant Gary Dunn again did not deny and reiterated, *"I was trying to get in there to my mother."*

193. Plaintiff Dawn Campbell informed Defendant Crawford, *"Randy walked up to Dave and put his belly on Dave's belly and Dave pushed him off."*

194. Plaintiff Dawn Campbell informed Defendant Crawford, *"...this morning when I let the dogs out, I saw them pulling in, so I went and told Dave. He called 9-1-1. We walked up here and Gary came and pushed him."*

195. Dave Campbell elaborated on the foregoing notice by informing Defendant Crawford, Gary Dunn pushed him *"Twice."*

196. When Gary Dunn asked Dave Campbell in the presence of an officer, *"Did you not hit me in the stomach,"* Dave Campbell stated, *"Anybody that comes up and shoves me is gonna get hit in the stomach, or face."*

197. When Gary Dunn alleged to Defendant Crawford, Dave Campbell, *"is the one that is causing the trouble,"* Mrs. Betty Dunn loudly stated to Defendant Crawford, *"NO, HE AIN'T."*

198. On 07/16/24, Plaintiffs requested Defendant Crawford to separate the parties so Plaintiffs could speak to Defendant Crawford without being interrupted.

199. Defendant Crawford failed to separate the parties on 07/16/24.

200. Defendant Crawford falsely alleged in his statement to have separated the parties on 07/16/24.

201. On 07/16, Defendant Crawford called Fulton County Dispatch alleging he needed help.

202. On 07/16, Defendant Crawford did not instruct the trespassers to leave 435

Bethel AV, even after Mrs. Dunn demanded the trespassers leave.

203.  On 07/16, Defendant Crawford knew he should have at least attempted to separate the parties.

204.  On 07/16, when Plaintiff Dawn Campbell asked Defendant Crawford, *"Hey, can we talk to you without these guys interfering and chiming in,"* Defendant Randall Dunn stated, *"No."*

205.  On 07/16, Plaintiff Dave Campbell stated to Defendant Crawford, *"Yeah, really.  Back them up so we can talk."*

206.  On 07/16, Plaintiff Dawn Campbell stated to Defendant Crawford, *"We didn't chime in when they were talking to you. This isn't right."*

207.  On 07/16, Defendant Crawford stated to Defendant Randall Dunn, *"Just let them talk for a minute.  Okay, Buddy?"*

208.  Immediately upon hearing Defendant Crawford call her youngest son, *"Buddy,"* Betty Dunn hollered, *"THIS IS MY HOUSE."*

209.  After Betty Dunn reminded Defendant Crawford he was at her house, Defendant Crawford was told by Plaintiffs, *"This is Betty's house"* and *"Betty can tell you what happened today."*

210.  Concerning Betty Dunn informing Defendant Crawford what happened on 07/16, Defendant Crawford was told by Defendant Randall Dunn, *"She won't.  She lies."*

211.  Randall Dunn did not allege Betty Dunn could not state what happened due to alleged Dementia; Gary Dunn accused Betty Dunn of stating *"lies."*

212.  Defendant Crawford did not ask Betty Dunn what happened on 07/16; instead, Defendant Crawford stated to Plaintiff Dave Campbell, *"Okay.  Continue the story."*

213. Plaintiff Dave Campbell's response to being told to continue was, *"Okay. As long as you can assure me they're* [Gary and Randall Dunn] *not going to interfere."*

214. The 07/16/24 video evidence proves Defendant Crawford did not separate the parties and did permit Gary and Randall Dunn to repeatedly interrupt Plaintiffs.

215. Defendant Crawford viewed Betty Dunn's Warranty Deed, which states, on its face, Mrs. Dunn possessed life rights *"without impeachment of waste."*

216. On 07/16/24, Defendant Crawford knew Betty Dunn possessed life rights to her estate *"without impeachment of waste."*

217. Despite knowing Gary Dunn and Randall Dunn's ownership of Mrs. Dunn's home had not yet occurred since Betty Dunn is alive, Defendant Crawford represented to Fulton County Dispatch, *"Betty Dunn is residing in the house"* and *"Gary Dunn and Randall Dunn have a warranty Deed on the house."*

218. On 07/16, Defendant Crawford stated, *"They've got a deed for the house,"* to which Defendant Randall Dunn responded, *"Yeah."*

219. On 07/16, Plaintiff Dawn Campbell reminded Defendant Crawford, *"But it has Betty on there."*

220. On 07/16, Plaintiff Dave Campbell reminded Defendant Crawford, *"She gets to live here until she dies."*

221. On 07/16/24, after the foregoing statements were made, Defendant Crawford asked Betty Dunn if she would be moving into an apartment, so her sons could possess her home.

222. Defendant Crawford was informed Betty Dunn would be remaining in her home, because she has life rights to her home, yet none of the above information is

contained in Defendant Crawford's report about the 07/16/24 Incident.

223.  On 07/16, Defendant Crawford witnessed Defendant Gary Dunn state to Plaintiffs, *"Crawford, he don't like you people and you can tell it,"* and Defendant Crawford did not deny Defendant Gary Dunn's allegation.

224.  On July 16, 2024, at the request of Mrs. Dunn's estranged sons who lack a POA for Betty Dunn, Defendant Crawford summoned the Fulton County Ambulance Service to evaluate Mrs. Dunn's competency.

225.  Mrs. Dunn passed a mental and medical evaluation, administered by Senior Paramedic Randy Fowler from Fulton County Ambulance Service.

226.  Paramedic Fowler's Run Report states, Betty Dunn answered all his questions correctly, all her vital signs were good and she was *"alert & oriented."*

227.  Officer Crawford did not authorize Defendants: Randall and Gary Dunn to take Betty Dunn to be evaluated by Dr. Kauffman on 07/16/24.

228.  Randall and Gary Dunn were unsuccessful in their attempt to take Betty Dunn on 07/16/24.

229.  After Gary, Brenda and Randall Dunn left 435 Bethel Avenue on 07/16, Defendant Crawford asked Plaintiffs if Gary and Randy Dunn may return to 435 Bethel Avenue to make repairs on Mrs. Betty Dunn's residence.

230.  After the 07/16/24 incident at 435 Bethel, Gary, Randall and Brenda Dunn filed seven (7) criminal complaints against Plaintiff, Dave Campbell, which are dated 07/16/24 and 07/19/24.

231. Brenda Dunn's 07/16/24 *"Voluntary Statement"* against Plaintiff, Dave Campbell, states: *"Got tired of Mr. Campbell knocking my husband around got between my husband Gary and Mr Campbell (sic) stuck my finger toward his face not touching him said to leave my husband along (sic). He said my stomach touched him do not know of this happening my self (sic). He took his keen and hit me with it below the stomach so I went to car and stayed back went to Police Dept to get help."*

232. Gary Dunn filed two *"Voluntary Statements"* dated 07/16/24: One states, *"Harased (sic) though (sic) the U.S. Mail – hit in belly pushed to the Ground & also belly bump & called names by David Campbell & his wife."* The second statement states, *"harassed By U.S. Mail – hit in stomach – pushed to Ground – Belly Bumped & Called names by Dave Names & insulted by Dave Campbell and wife."*

233. Randall Dunn's Voluntary Statement dated 07/16/24 states: *"Harrsed (sic) & pushed called names treated like I was stupid, called names & insulted."*

234. The Dunns' 07/16/24 Voluntary Statements were not filed with the Fulton County District Court; Defendant Drew Smith served the 07/16/24 Voluntary Statements to Plaintiff, Dave Campbell, as if they are part of the four criminal cases he brought against Plaintiff, Dave Campbell.

235. On 07/19/24, Gary Dunn filed another Voluntary Statement against Plaintiff, Dave Campbell, which states: *"David (sic) Campbell – bumped me with his stomach and hit me with his fist in the stomach and then pushed me down – using both hands and said you pushed me."*

31

236. On 07/19/24, Randy Dunn filed another Voluntary Statement, which states, *"Dave Campbell push (sic) me for no reason and said I push (sic) him. I told him I didn't push him. He then pushed me harder with my back hitting a post that holds the carport up. If not for the post I would have fallen down. He then left me alone except talking about how stupid I was and insulting me constant."*

237. On 07/19/24, Brenda Dunn filed another Voluntary Statement, which states: *"got out of Terrain car shook my finger in Dave's face stood in front of Gary to do this and said Don't push my husband. Dave said no one shakes there (sic) finger in my face so shook it some more. Then he kneed me in my lower stomach and I said may God Bless you. He said God is with me real loud."*

### Conduct of Defendant Jacob Smith:

238. Defendant Jacob Smith denied Betty Dunn's request for an investigation into her complaint against Charles and/or Amanda Dunn around May of 2024.

239. Defendant Jacob Smith was aware Simmons Bank reported suspicious activity on Betty Dunn's account by Amanda Dunn in the Spring of 2024

240. On 07/16/24, Defendant Jacob Smith was already aware, Gary and Randall Dunn were not supposed to be at 435 Bethel AV in Mammoth Spring, with Betty Dunn.

241. Prior to 07/16/24, Defendant Jacob Smith discussed Gary and Randall Dunn being prohibited from 435 Bethel Avenue with his FCSO employees on multiple occasions.

242. On 07/16/24, Defendant Jacob Smith disregarded Mrs. Dunn's Warranty Deed by acting as if Mrs. Dunn does not have life rights to her estate.

243.  On 07/16/24, Defendant Jacob Smith knew Betty Dunn filed a complaint with the MSPD and Defendant FCSO.

244.  Defendant Jacob Smith did not witness or authorize Gary, Randall, or Brenda Dunn to take Betty Dunn away in a vehicle, or ambulance on 07/16/24.

### *Conduct of William Fawcett:*

245.  On 07/16/24, Defendant Fawcett was already aware, Gary and Randall Dunn were not supposed to be at 435 Bethel AV in Mammoth Spring, with Betty Dunn.

246.  On 07/16/24, Defendant Fawcett disregarded Mrs. Dunn's Warranty Deed by acting as if Mrs. Dunn does not have life rights to her estate.

247.  On 07/16/24, Defendant Fawcett knew Gary and Randall Dunn were considered by Betty Dunn as trespassers at 435 Bethel Avenue in Mammoth Spring.

248.  Prior to 07/16/24, Defendant Fawcett discussed Gary and Randall Dunn being prohibited from 435 Bethel Avenue with his FCSO employees on multiple occasions.

249.  Defendant Fawcett has viewed the 7/16/24 video evidence sent by Plaintiffs.

250.  Defendant Fawcett witnessed, by watching the YouTube links sent by Defendant Gann, Plaintiff Dave Campbell being attacked by Gary Dunn upon Plaintiff walking to Betty Dunn's carport on 07/16/24.

251..  Defendant Fawcett took no action to protect Plaintiff Dave Campbell's Constitutional Rights from being violated.

252.  Defendant Fawcett did not witness or authorize Gary, Randall, or Brenda Dunn to take Betty Dunn away in a vehicle, or ambulance on 07/16/24.

### *Conduct of John Gregory Smith:*

253.   On 07/16/24, Defendant John Smith disregarded Mrs. Dunn's Warranty Deed by acting as if Mrs. Dunn does not have life rights to her estate

254.   On 07/16/24, Defendant John Smith knew Gary and Randall Dunn were considered by Betty Dunn as trespassers at 435 Bethel Avenue in Mammoth Spring.

255.   Prior to 07/16/24, Defendant John Smith discussed Gary and Randall Dunn being prohibited from 435 Bethel Avenue with FCSO employees on multiple occasions.

256.   Defendant John Smith knows Plaintiff Dave Campbell was arrested for standing his ground and defending himself, his wife and neighbor on 07/16/24.

257.   On 07/16/24, Dawn Campbell notified John Smith, Betty Dunn has life rights to her residence and Randall and Gary Dunn's interest goes into effect when Betty Dunn is dead.

258.   Defendant John Smith viewed Betty Dunn's Warranty Deed on 07/16/24.

259.   On 07/16/24, Defendant John Smith disregarded Mrs. Dunn's Warranty Deed by acting as if Mrs. Dunn does not have life rights to her estate.

260.   On 07/16/24, Defendant John Smith suggested to Plaintiffs not to file charges against Defendants; Randall Dunn, Brenda Dunn or Gary Dunn.

261.   On 07/16/24, Defendant John Smith alleged it would be a *"he said/he said"* scenario if Defendant brought charges against Defendants; Brenda, Randall and Gary Dunn.

262.   On 07/16/24, Defendant John Smith ignored Plaintiffs when he was

reminded Plaintiffs have a video of the entire 07/16/24 incident.

263.  On 07/16/24 Plaintiff Dawn Campbell informed Defendant John Smith, *"They're* [Gary, Brenda and Randy Dunn] *trying to take her* [Betty Dunn] *against her will."*

264.  On 07/16/24, Defendant John Smith witnessed, Gary, Brenda and Randall Dunn did not deny they were trying to take Betty Dunn against her will.

265.  Defendant John Smith did not make a report of the 07/16/24 Incident at 435 Bethel Avenue he assisted with.

266.  Defendant John Smith did not witness or authorize Gary, Randall, or Brenda Dunn to take Betty Dunn away in a vehicle, or ambulance on 07/16/24.

### *Conduct of Defendant James Cantrell:*

267.  On 07/16/24, Defendant Cantrell was already aware, Gary and Randall Dunn were not supposed to be at 435 Bethel AV in Mammoth Spring, with Betty Dunn.

268.  On 07/16/24, Defendant Cantrell disregarded Mrs. Dunn's Warranty Deed by acting as if Mrs. Dunn does not have life rights to her estate

269.  Defendant Cantrell assisted in working the 07/16/24 Incident at 435 Bethel Avenue in Mammoth Spring, which resulted in Plaintiff Dave Campbell's arrest.

270.  Defendant Cantrell was wearing a body camera on 07/16/24.

271.  Defendant Cantrell repetitively excluded himself from Defendant Crawford and Defendant John Smith's conversations at 435 Bethel Avenue on 07/16/24.

272.  Defendant Cantrell's body camera did not record any of the conversations, which occurred between Defendant Crawford, Defendant John Smith, RICO Defendants

Randall, Gary and Brenda Dunn, and the Fulton County Ambulance Service.

273.  Defendant Cantrell turned off his body camera after being signaled by Defendant Crawford, patted his chest where his would-be camera would be mounted.

274.  Prior to 07/16/24, Defendant Cantrell discussed Gary and Randall Dunn being prohibited from 435 Bethel Avenue with FCSO and Mammoth Spring Police Department employees on multiple occasions.

275.  Defendant Cantrell did not make a report of the 07/16/24 Incident at 435 Bethel Avenue he assisted with.

276.  Defendant Cantrell did not witness or authorize Gary, Randall, or Brenda Dunn to take Betty Dunn away in a vehicle, or ambulance on 07/16/24.

### *"July 19, 2024 The Dunns Filed More Complaints Against Dave Campbell"*

277.  On 07/19/24, Defendant Barnett, Defendant Hunter Crawford and Defendant Turnbough visited with Gary, Randall and Brenda Dunn at Mammoth Spring City Hall.

278.  Randall, Brenda and Gary Dunn filed three more criminal complaints against Plaintiff, Dave Campbell, from the 07/16/24 incident.

279.  Brenda Dunn, admitted in her statement dated 07/16/24, she got in the face of Plaintiff, Dave Campbell, multiple times and shook her finger in Plaintiff's face.

280.  Defendant Crawford's statement attached to Defendant Barnett's alleged affidavit admitted, *"We informed Gary, Randall, and Brenda that they need to get in touch with their attorney about the property dispute, and show them a copy of the deed."*

281.  Gary Dunn's medical report stated Gary Dunn was instructed by Defendant MSPD to go to the doctor to document his injuries.

282. Despite Defendant Crawford being the responding officer on 07/16/24, Defendant Barnett is who created the *"Affidavit of Probable Cause For Arrest."*

283. In Defendant Crawford's statement in support of arresting Plaintiff Dave Campbell, Defendant Crawford falsely alleged no evidence existed from 07/16/24 to show who touched whom first.

284. Defendant Crawford ignored and omitted from his statement, the witness statements of Dave Campbell, Dawn Campbell and Betty Dunn.

285. Defendant Turnbough accompanied Defendant Barnett to Simmons Bank on 07/19/24.

286. On 07/19/24, Defendant Turnbough asked Saundra Davis at Simmons Bank to notarize Defendant Barnett's *"Affidavit of Probable Cause for Arrest."*

287. On 07/19/24, Ms. Davis refused to notarize Defendant Barnett's affidavit, while alleging a *"conflict of interest."*

### *July 22, 2024 Barnett, Plumlee, Crawford and Gann Fabricated Arrest Documents:*

288. Within two-and-a-half hours, on the morning of 07/22/24, Defendant Plumlee carried out the process to create a false affidavit to arrest Plaintiff, Dave Campbell.

289. On the morning of 07/22/24, Defendant Plumlee appeared at Mammoth Spring City Hall, which opens at 8:00 am.

290. On 07/22, Defendant Plumlee learned Defendant Barnett (MSPD #5) was not on duty that day.

291. On 7/22, while employed in dual roles as *"city attorney"* and *"deputy*

*prosecuting attorney,"* and while acting in the role of an investigator, Defendant Plumlee

sought out and obtained the Affidavit prepared by Defendant Barnett to achieve the arrest

of Plaintiff, Dave Campbell.

292.  Defendant Plumlee requested Defendant Gann to notarize Defendant

Barnett's affidavit without Defendant Barnett's presence, signature, or oath.

293.  Defendant, Barbara Gann, complied with Defendant Plumlee's direction and

placed her Notary seal fraudulently upon Affiant Defendant Barnett's un-submitted,

unsigned and unsworn *"affidavit."*

294.  Defendant Plumlee then received the false "affidavit" from Defendant Gann.

295.  Defendant Plumlee sought out and instructed Defendant Crawford (MSPD 7)

to sign Defendant Barnett's Notarized instrument.

296.  Defendant Crawford (MSPD #7) complied and signed the Notarized Jurat.

297.  As the Mammoth Spring City Attorney, Defendant Plumlee then placed the

forged Affidavit into the hands of himself as Fulton County Deputy Prosecutor.

298.  Defendant Plumlee signed his name along with *"D.P.A."* and *"approved"*

on the unissued warrant affidavit of Defendant Barnett.

299.  Defendant Plumlee hand delivered his false document to Defendant Weaver.

300.  Defendant Weaver signed his name to the false document sometime before

10:28 a.m on 07/22/24.

301.  Per FOIA response, Defendant Plumlee does not endorse criminal referrals

with his signature, *"DPA",* or *"Approved"* on City of Mammoth Spring arrest papers.

302.  Defendant Plumlee only signed his name with *"DPA"* and *"Approved"* on

38

Plaintiff Dave Campbell's arrest documents, pertaining to the City of Mammoth Spring.

303.  Defendant Holder uttered the false 07/22 warrant affidavit by executing an unauthorized warrant to seize Plaintiff, Dave Campbell.

304.  Defendant Holder could see the warrant affidavit was unsigned by the affiant.

305.  Defendant Holder failed to attach a copy of the false warrant affidavit to the warrant.

306.  On or about 10/10/24, Defendant Gann was reprimanded by former Arkansas Secretary of State, John Thurston, for notarizing the 07/22/24 warrant affidavit.

307.  On 04/29/25, Defendant Barnett testified in Case No. 25CV-24-72, he was not on duty on 07/22/24 and he did not submit, swear, or sign his 07/22/24 arrest affidavit.

### *07/16/24 - Case No. 25CV-24-72 Brought by Defendant Turnbough:*

308.  On 07/16/24, Defendant Turnbough alleged defamation against Plaintiffs with a request for a Preliminary Injunction.

309.  Defendant Turnbough alleged the statement, *"Jamie and Melissa get it on,"* in his Injunction Request against Plaintiffs, which Plaintiffs did not state.

310.   Defendant Turnbough's Case No. 25CV-24-72 was filed by Defendant John McGinnes and Defendant Shackelford.

311.  Defendant McGinnes and Defendant Shackelford falsely alleged, in suing Plaintiffs on 07/16/24, they are *"The Iron Rock Law Firm, PLLC."*

312.  During a motion hearing in Case No. 25CV-24-72 on 04/29/25, Defendant

McGinnes confirmed *"The Iron Rock Law Firm, PLLC"* never existed/

313. On 04/29/25, Hon. Meyer instructed Defendant McGinnes and Defendant Shackelford to use their personal names instead of *"The Iron Rock Law Firm, PLLC."*

314. During the 04/29/25 motion hearing, Defendant McGinnes indicated he filed for corporation status in the State of Delaware.

315. On 04/14/25, *"Iron Rock Law Firm, LLC"* was filed in Delaware.

316. In the aforesaid 04/29 hearing, Defendant McGinnes alleged his and Defendant Shackelford's use of the business name, *"The Iron Rock Law Firm, PLLC"* is supported by a Sharp County Circuit Filing of the fictitious name, *"Iron Rock Law Firm."*

317. John McGinnes and Jody Shackelford continue to advertise at GoIronRock.com, *"'The Iron Rock Law Firm, PLLC,' is a brand of "The Jody Shackelford Law Firm, PLLC.'"*

318. In January of 2024, *"The Jody Shackelford Law Firm, PLLC.'"* was revoked by Arkansas Secretary of State.

319. John McGinnes emailed Plaintiffs after the 04/29/25 ruling not to use Iron Rock Law Firm, using *"Iron Rock Law Firm."*

### *August 02, 2024 Color-Of-Law Arrest:*

320. Plaintiff, Dave Campbell was arrested on 08/02/24 by Defendant FCSO without showing Plaintiff the warrant and without notifying Plaintiff of the alleged charge(s).

321. Plaintiff's arrest was erroneously entered into the database by Defendant FCSO as *"Domestic Battering."*

322.  Defendant FCSO waited approximately six weeks to correct its erroneous *"Domestic Battering"* charge.

323.  Defendant FCSO's erroneous *"Domestic Battering"* charge against Plaintiff, Dave Campbell, was republished by third-party websites.

324.  On 08/02/24, Defendant FCSO, through its representatives, recommended Plaintiff, Dave Campbell, call Jeremy Roland from Triple R Bail Bonds in Cherokee Village, Arkansas to post his bail.

325.  On 08/02/24, Defendant FCSO, through its representative, alleged to Plaintiff, Dawn Campbell, the correct bail bond company was selected by Plaintiff, Dave Campbell.

### *Conduct of Defendant Jacob Lee Smith*

326.  After 08/02/24, Defendant Jacob Smith reviewed video evidence showing Plaintiff Dave Campbell was assaulted by Gary, Randall and Brenda Dunn on 07/16/24.

327.  Defendant Jacob Smith knows Plaintiff Dave Campbell was arrested for standing his ground and defending himself, his wife and neighbor on 07/16/24.

328.  On 08/02/24, Defendant Jacob Smith authorized the arrest of Dave Campbell.

329.  Defendant Jacob Smith acted without subject-matter jurisdiction in ordering the arrest of Dave Campbell, due to the forged warrant *"affidavit."*

330.  On 08/02/24, Defendant Jacob Smith subjected Plaintiff Dave Campbell to an unlawful strip search by a jailer not authorized under Arkansas Criminal Rules.

331.  Defendant Jacob Smith stated in response to Plaintiff Dave Campbell's

complaint of being subjected to a strip search, *"A strip search is policy and every person booked into the jail is required to submit to it. This is safety issue and non negotiable. Males shall perform the search on male detainees and females shall perform the search on female detainees, unless circumstances make it impossible."*

332.  Defendant Jacob Smith admitted something unfortunate could have happened to Plaintiff Dave Campbell from the 08/02/24 arrest by stating, *"jail is an unpleasant experience at best."*

### Conduct of William Fawcett:

333.  On 08/02/24, Defendant Fawcett knew Plaintiff was assaulted on 07/16/24 by Gary, Randall and Brenda Dunn.

334.  After 08/02/24, Defendant Fawcett reviewed video evidence showing Plaintiff Dave Campbell was assaulted by Gary, Randall and Brenda Dunn on 07/16/24.

335.  Defendant Fawcett knows Plaintiff Dave Campbell was arrested for standing his ground and defending himself, his wife and neighbor on 07/16/24.

336.  On 08/02/24, Defendant Fawcett authorized the arrest of Dave Campbel!.

337.  Defendant Fawcett acted without subject-matter jurisdiction in ordering the arrest of Dave Campbell, because Defendant Barnett's *"Affidavit of Probable Cause For Arrest"* is forged by Defendant Crawford.

338.  Defendant Fawcett stated to Plaintiffs, Defendant's Barnett's warrant affidavit used to arrest Plaintiff Dave Campbell has not been proven fraudulent, despite knowing the former Arkansas Secretary of State John Thurston's office reprimanded the Notary for notarizing a document without the Affiant.

### *Conduct of Defendant Jacob Smith:*

339.   On 08/02/24, Defendant Jacob Smith knew Plaintiff was assaulted on 07/16/24 by Gary, Randall and Brenda Dunn.

340.   After 08/02/24, Defendant Jacob Smith reviewed video evidence showing Plaintiff Dave Campbell was assaulted by Gary, Randall and Brenda Dunn on 07/16/24.

341.   Defendant Jacob Smith knows Plaintiff Dave Campbell was arrested for standing his ground and defending himself, his wife and neighbor on 07/16/24.

342.   On 08/02/24, Defendant Jacob Smith retaliated in having Plaintiff Dave Campbell arrested.

343.   Defendant Jacob Smith acted without subject-matter jurisdiction in ordering the arrest of Dave Campbell, because Defendant Barnett's *"Affidavit of Probable Cause For Arrest"* is forged by Defendant Crawford.

344.   In response to Plaintiffs notifying Defendant Jacob Smith of the forged warrant affidavit, Defendant Jacob Smith stated, *"Any issues you have with the affidavit or other procedural matters, I would recommend advising your attorney. I have never read the affidavit in your case because it belongs to the city of Mammoth Spring. Not all crimes require the affiant to witness anything. For simplicity's sake, an extreme example would be a murder. The affiant would not likely have witnessed the crime, but would have sufficient evidence for a judge and prosecutor to sign off. I don't know if that helps clarify, or you believe those folks involved are just lying. Again, I would recommend showing to your attorney."*

345.   Defendant Jacob Smith falsely alleged to the public Plaintiff Dave

Campbell was charged with *"Domestic Battering."*

346. On 08/02/24, FCSO erroneously entered the charges against Plaintiff Dave Campbell as *"Domestic Battering."*

347. On or about 08/07/24, Plaintiff Dave Campbell sent Defendant Jacob Smith an email notifying Defendant Jacob Smith of the erroneous *"Domestic Battering"* charge posted online.

348. Defendant Jacob Smith did not correct Defendant FCSO's erroneous *"Domestic Battering"* charge; the charge was finally corrected approximately six weeks later by Defendant Fawcett.

349. In response to Plaintiff Dave Campbell's 2nd notice to Defendant Jacob Smith about his office's erroneous *"Domestic Battering"* charge, Defendant Jacob Smith stated, *"As to any booking error, those are something that can happen at the hand of even the most seasoned jailer. Those get corrected as quickly as possible. As you stated, Chief Fawcett addressed the error and corrected it. While it's rare, this is normal course of business."*

350. Defendant Jacob Smith has viewed the 7/16/24 video evidence Plaintiffs emailed him.

351. By watching the video evidence, Defendant Jacob Smith witnessed Plaintiff Dave Campbell being attacked by Gary Dunn upon Plaintiff walking to Betty Dunn's carport on 07/16/24.

352. Defendant Jacob Smith took no action to protect Plaintiff Dave Campbell's

Constitutional Rights from being violated.

### *Conduct of Defendant Drew Smith:*

353.  On 08/02/24, Defendant Drew Smith was already aware, Gary and Randall Dunn were not supposed to be at 435 Bethel AV in Mammoth Spring.

354.  On or about 07/22/24, Defendant Drew Smith authorized the arrest of Plaintiff Dave Campbell for standing his ground and defending against trespassers.

355.  Defendant Drew Smith is aware, Defendant Gann emailed Defendant Plumlee YouTube video links of the 07/16/24 video evidence.

356.  Defendant Drew Smith mailed Plaintiff Dave Campbell a copy of Defendant Gann's email, which contained the YouTube links of the 07/16/24 video evidence.

357.  Defendant Drew Smith has viewed the 7/16/24 video evidence sent by Defendant Gann.

358.  Defendant Drew Smith is aware no injuries were reported by Gary, Randall and Brenda Dunn as a result of the 07/16/24 incident.

359.  Defendant Drew Smith failed to provide Plaintiff Dave Campbell with any evidence of an injury to Brenda, Randall, or Gary Dunn.

360.  Defendant Drew Smith knows he cannot lawfully charge Plaintiff Dave Campbell with causing an injury to anyone.

361.  Defendant Drew Smith witnessed, by watching the YouTube links sent by Defendant Gann, Plaintiff Dave Campbell being attacked with a weapon by Gary Dunn upon Plaintiff walking to Betty Dunn's carport on 07/16/24 by invitation.

362.  Defendant Drew Smith took no action to protect Plaintiff Dave Campbell's

Constitutional Rights from being violated.

363. Defendant Drew Smith was notified by Plaintiffs, the warrant affidavit is forged.

364. Defendant Drew Smith is aware Defendant Gann was reprimanded by former Arkansas Secretary of State John Thurston for notarizing the 07/22/24 affidavit without the presence of the affiant.

365. Defendant Drew Smith knowingly uttered the false 07/22/24 arrest affidavit.

366. Defendant Drew Smith is aware Plaintiff has not received a probable cause hearing.

367. Defendant Drew Smith sent Plaintiff a draft copy of an email by Defendant Plumlee, which was not previously sent to Plaintiff.

368. Defendant Drew Smith's 01/31/25 service of documents contained different statements than were filed with the Fulton County District Court in Plaintiff, Dave Campbell's four pending cases.

369. Defendant Drew Smith sent Plaintiff Dave Campbell a copy of Defendant Plumlee's unsent email which does not contain the reprimanded affidavit.

370. Defendant Drew Smith sent Plaintiff Dave Campbell evidence from Defendant Gann dated 10/17/24 where Defendant Gann notified Defendant Plumlee of Plaintiff's 07/16/24 video evidence at 435 Bethel Avenue.

371. Defendant Drew Smith is aware there is a video of the 07/16/24 incident showing who touched whom first.

372. Defendant Drew Smith is aware, in prosecuting Plaintiff Dave Campbell he is relying on a fraudulent, unsworn statement alleging no evidence exists to show who touched whom first.

373.  Defendant Drew Smith is aware he is prosecuting Plaintiff Dave Campbell in complete absence of subject-matter jurisdiction since Defendant Barnett's *"Affidavit of Probable Cause For Arrest"* is not signed, or sworn to by the Affiant.

374.  In prosecuting Plaintiff Dave Campbell, Defendant Drew Smith failed to ensure the affidavit was attached to the warrant.

375.  Defendant Drew Smith failed to ensure the validity of the warrant affidavit used to cause the arrest of Plaintiff, Dave Campbell.

376.  Defendant Drew Smith is aware Ark. R. Crim. P. 7.2 required the affidavit to be attached to the warrant.

377.  Defendant Drew Smith is aware Defendant Barnett intentionally checked unknown for location on his charging statement, for the charge of Disorderly Conduct because his 'alleged Disorderly Conduct' charge was at a private residence where Plaintiffs were invited.

### *Brandon Holder:*

378. Defendant Holder placed his signature upon the forged and fraudulent document at approximately 10:28:22 a.m. on 7/22/24, achieving possession of a fraudulent warrant against Plaintiff Dave Campbell.

379.  Defendant Holder failed to attach the fraudulent Affidavit to the Warrant, pursuant to Rule 7.2.

380.  After being confronted with John Barnett's Affidavit being forged by Hunter Crawford, Defendant Holder alleged he *'had no choice'* but to utter the false document.

381.  Defendant Holder refused to notify the Court of the false 07/22/24 Affidavit.

382.  Defendant Holder indicated Plaintiff Dave Campbell could not notify the Court of the 07/22/24 forged Affidavit.

### Conduct of Timothy Weaver:

383.  Defendant Weaver ordered Plaintiff Dave Campbell's arrest without probable cause.

384.  Defendant Weaver authorized Defendant Barnett's Affidavit, despite the *"Affidavit For Probable Cause For Arrest"* being signed by Defendant Crawford.

385.  Plaintiff, Dave Campbell, notified Defendant Weaver of the forged Affidavit Defendant Weaver signed to cause Plaintiff Dave Campbell's arrest.

386.  Defendant Weaver ignored Plaintiff Dave Campbell's notification of the fraudulent document Defendant Weaver uttered against Plaintiff, Dave Campbell.

387.Plaintiff, Dawn Campbell, notified Defendant Weaver of the forged Affidavit Defendant Weaver signed to cause Plaintiff Dave Campbell's arrest.

388.  Defendant Weaver ignored Plaintiff Dawn Campbell's notification of the fraudulent document Defendant Weaver uttered against Plaintiff Dave Campbell.

389.  Defendant Weaver took no judicial action to correct his part in Defendant Plumlee's hood-winked misrepresentation.

390.  Defendant Weaver is a mandated reporters.

391.  Defendant Weaver failed to report a crime when brought to his attention.

*January 28, 2025 – Unlawful Seizure of Plaintiff's Property*
**Conduct of Defendant Chaney Taylor:**

392.    On 01/28/25, Plaintiff Dave Campbell's property was seized by Defendant Taylor.

393.    On 01/28/25, during Plaintiff Dave Campbell's *"arraignment,"* Defendant Taylor was immediately notified of Defendant Barnett's *"Affidavit of Probable Cause For Arrest"* being forged by Defendant Crawford.

394.    On 01/28/25, Defendant Taylor was notified the notary was reprimanded by Arkansas Secretary of State for notarizing Defendant Barnett's affidavit.

395.    Defendant Taylor knows there are no sworn statements in any of the four criminal matters against Plaintiff, Dave Campbell.

396.    After being notified of the foregoing, Defendant Taylor acted as the Court.

397.    After Plaintiff, Dave Campbell, notified Defendant Taylor of Defendant Gann's reprimand by John Thurston for notarizing the arrest affidavit, Defendant Taylor stated to Plaintiff Dave Campbell, *"you're out of your lane."*

398.    During the 01/28 *"arraignment,"* Defendant Taylor made an agreement with Defendant Cantrell to seize Plaintiff Dave Campbell's property.

399.    As Plaintiff Dave Campbell read his notes, Defendant Taylor ordered Plaintiff's notes seized by Defendant Cantrell.

400.    Plaintiff, Dave Campbell, resisted when Deputy Cantrell seized his property.

401.   Defendant Taylor then read the portion of Dave Campbell's notes aloud, which notified the Court there is no subject-matter jurisdiction, due to no affidavit.

402.   Defendant Taylor knows Plaintiff Dave Campbell's notes stated: *"No Reasonable Articulated Suspicion.  No probable cause.  No Subject Matter Jurisdiction. No Affidavit.  Weaver's signature based on "sworn affidavit" for probable cause.  There is none."*

### *Conduct of Defendant James Cantrell:*

403.   On 01/28/25, Plaintiff Dave Campbell's property was illegally seized by Defendant Cantrell.

404.   Defendant Cantrell was ordered by Defendant Taylor to seize Plaintiff Dave Campbell's property during Plaintiff's 01/28/25 *"arraignment."*

405.   Defendant Cantrell agreed with Defendant Taylor to seize Plaintiff Dave Campbell's property during Plaintiff's 01/28/25 *"arraignment."*

406.   Deputy Cantrell seized Plaintiff Dave Campbell's property after Plaintiff notified the Court it lacked subject-matter jurisdiction, due to no sworn statements.

407.   Defendant Cantrell seized Plaintiff's note paper from Plaintiff's hand as Plaintiff was reading the paper to the Court during the arraignment.

408.   Plaintiffs received the surveillance camera evidencing Defendant Cantrell seized Plaintiff's paper as Plaintiff resisted.

409.   Defendants; Cantrell and Taylor, while acting under the color of the law, violated Plaintiffs Constitutional rights by seizing Plaintiff Dave Campbell's property.

410.   Defendant Cantrell prevailed with his use of force in seizing Plaintiff's paper.

411.    After Defendant Cantrell seized Plaintiff's paper, Cantrell gave Plaintiff's paper to Defendant Taylor, who read Plaintiff's notes aloud to the courtroom.

### ***Due Process Violations:***

412.  Defendant Holder withheld exonerating evidence from Plaintiff, Dave Campbell, and alleged Plaintiff needed to hire an attorney to view documents in the four criminal cases against Plaintiff, Dave Campbell.

413.  Defendant Holder amended the foregoing advice to Plaintiff, Dave Campbell, in a FOIA Response and also released the exonerating evidence to Plaintiff, Dave Campbell.

414. Defendants; Turnbough, Barnett, Crawford, Jake Smith, FCSO, Drew Smith, and Carl Plumlee withheld all documents in the four pending criminal charges against Plaintiff Dave Campbell and failed to attach any document to the warrant.

415.    Plaintiffs requested copies of the papers filed in the four criminal charges against Plaintiff, Dave Campbell, and was ignored by Defendant Plumlee and Defendant Drew Smith.

416.  Defendant Drew Smith's office ignored numerous FOIA requests for the documents filed in the four pending criminal cases against Plaintiff Dave Campbell.

417.  On 02/07/25, Defendant Drew Smith's office finally released Defendant Barnett's forged *"Affidavit of Probable Cause for Arrest"* to Plaintiff Dave Campbell.

418.  Plaintiff Dave Campbell was arraigned on 01/28/25 and a bench trial was set that day for 02/25/25.

419.  On 01/28/25, Defendant Taylor was notified the prosecution had not served any papers to Plaintiffs, Dave Campbell, at the time Defendant Taylor set a Feb. bench trial.

420.  Defendant Taylor deprived Plaintiff, Dave Campbell, a Probable Cause Hearing when a Probable Cause Hearing was attempted by Plaintiff, Dave Campbell on 01/28/25.

421.  Defendant Taylor refused to recuse after being disqualified by Plaintiff, Dave Campbell, for seizing Plaintiff's property on 01/28/25 during the arraignment.

422.  Plaintiff, Dave Campbell, also disqualified Defendant Taylor for following Plaintiffs in a public place and stating Plaintiff, Dawn Campbell's last name, despite being a stranger and Plaintiff, Dave Campbell, had not filed anything into the cases.

423.  Defendant Taylor denied Plaintiff Dave Campbells' request to wear a body cam to be secure after the unlawful seizure of Plaintiff's property on 01/28/25.

424.  Defendant Taylor stated to the courtroom attendance on 01/28/25, the Court will consider requests for body cams if the requests are made in advance.

425.  Plaintiff Dave Campbell's request to wear a body camera was well in advance of a hearing.

426.  In the order denying Plaintiff Dave Campbell's request to wear a body camera, Defendant Taylor authorized Plaintiff, Dave Campbell, to pay a certified court reporter.

427.  Defendant Drew Smith finally released copies of the documents to Plaintiff after Plaintiff's arraignment, which was six months after the charges were brought.

428.    Plaintiff, Dave Campbell, was not served with the documents in the four criminal cases against him until January 31, 2025, which was in the form of a pc disc.

429.  Defendant Drew Smith sent Plaintiff a draft copy of an email by Defendant Plumlee, which was never sent to Plaintiff and contained different statements for the same witnesses and one set was not filed with the Court.

430.    Defendant Plumlee's unsent email does not contain the affidavit, which caused Defendant Gann to be reprimanded by the Arkansas Secretary of State.

431.    Defendant Plumlee's unsent email contains a letter from Defendant Gann dated 10/17/24 where Defendant Gann notified Plumlee of Plaintiff's 07/16/24 video

evidence at 435 Bethel Avenue.

432.    The FSCO deputies, MSPD officers and City Hall personnel knew Gary, Randy and Brenda Dunn were trespassing on 07/16/24.

433.    The FSCO and MSPD officers knew Plaintiff, Dave Campbell, was assaulted on 07/16/24 by Gary, Randy and Brenda Dunn on 07/16 and acted in defense.

434.    Defendant Drew Smith withheld the 7/22/24 false affidavit from Plaintiff in responding to Plaintiff's FOIA Request on 01/31/25.

435.    Plaintiff sent Defendants a motion to dismiss the four pending criminal charges on 01/28/25 and Defendants remained silent while Defendant Taylor set a bench trial for less than one month from the arraignment and while knowing Plaintiff had not even been served with the documents in the case, with exception to the warrant.

436.    Plaintiff, Dave Campbell, was deprived of a bond hearing and required to pay a hefty bond in order to be set free on a leash.

437.    On 01/28/25, Plaintiff, Dave Campbell, was deprived of the three stages authorized by Ark. R. Crim. P. 20, which are the exploratory, omnibus and trial planning stages in the four pending criminal charges in Fulton County resulting from 07/16/24.

438.  Over the objection of Plaintiff, Dave Campbell, who requested time to complete discovery in the four criminal cases, Defendant Drew Smith, Defendant Taylor and Defendant Holder set a Bench Trial in the four cases for May of 2024.

439.    Defendant Drew Smith failed to serve Plaintiff, Dave Campbell, with the alleged injuries by Brenda, Randall and Gary Dunn to justify Defendant Drew Smith's three *"Battery Third Degree"* charges against Plaintiff, Dave Campbell.

440.    Defendant Drew Smith is out of time to respond to Plaintiff's discovery request.

441. Defendant Taylor refused to hear and/or Defendant Holder refused to set a

hearing on Plaintiff's Motion to Dismiss and Motion to Declare 07/22/24 Affidavit Void.

442. Defendant Taylor deprived Plaintiff, Dave Campbell, of a hearing on Defendant Drew Smith's Motion to Take Judicial Notice of the Warrant.

443. Despite failing to take up the three foregoing motions, Defendant Holder and Defendant Taylor refused to reschedule the May of 2025 bench trial.

444. Mammoth Spring City Attorney William Hass, from Thayer, Missouri, filed a motion to quash for Defendant O'Dell and Defendant Turnbough for, Dave Campbell's subpoenas seeking to discover the lie and/or lies Defendant O'Dell and Defendant Turnbough alleged to the public were made by Plaintiffs to substantiate the two public officials defamatory allegations, Plaintiffs are *"Liars."*

445. Defendant Taylor and Defendant Holder set a hearing on Mr. Hass' quash motions to be heard before the time expired for Plaintiff, Dave Campbell, to oppose Mr. Hass' motions to conceal evidence.

### *Threat Against Plaintiffs By Barry Joseph O'Dell*

446. On or about 04/02/25, Defendant O'Dell drove by Plaintiffs' residence where Plaintiffs were standing in front of Plaintiffs' home holding a camera.

447. A short time after seeing Plaintiffs in their yard with a camera, Defendant O'Dell posted publicly on Facebook, *"Imagine being so paranoid that you use a small, black body camera in your hand to record someone driving home for lunch."*

448. Defendant O'Dell's *"paranoid"* post resulted in many negative comments about the people described by Defendant O'Dell's post.

449. In response to Defendant O'Dell's *"paranoid"* post, the Sharp County Justice of the Peace, Thomas Estes, commented, *"Wonder when they will buy a satellite from Elon to follow you? P.S. I'm pretty sure I will never reach the state of my life where I'm bored*

*enough to track your actions."*

450. Defendant O'Dell stated in a comment to his *"paranoid"* post, he happened to be listening to a song about murder by Skid Row and may or may not have been singing it at the time of seeing Plaintiffs with a camera.

451. Defendant O'Dell's *"paranoid"* post caused his friends to allege Plaintiffs are *"CRAZY,"* have *"mental illness,"* and are *"working for the devil,"* etc.

### Damages and Harm:

452. Defendants' discriminatory and retaliatory treatment of Plaintiffs caused Plaintiffs to suffer from panic attacks, fear/worry, depression, continuous stomach pain, the loss of Plaintiffs' neighbor, the loss of Plaintiffs' reputation, the loss of Plaintiffs' business, the loss of friendships, including business relationships, and a financial loss.

453. On April 15, 2024, Plaintiffs served a letter to Defendant Turnbough seeking clarification of his 04/01/24 order over the person of Plaintiff, Dawn Campbell and Defendant Turnbough ignored Plaintiffs. Another letter was sent in June of 2024, which Defendant Turnbough also ignored.

454. The town of Mammoth Spring has become a hostile environment for Plaintiffs, which causes Plaintiffs to suffer the effects of major depression and generalized anxiety.

455. On 04/01/24, Defendant Turnbough revealed Defendants' defamation campaign to paint Plaintiffs in a false light of "domestic violence."

456. Defendants caused Plaintiff, Dave Campbell to be erroneously charged with *"Domestic Battering"* instead of *"Battery."*

457. When Plaintiff, Dave Campbell, requested Defendant Turnbough and/or

Defendant Jacob Smith to correct the erroneous *"Domestic Battering"* charge, both

defendants ignored Plaintiff, Dave Campbell and failed to correct the fraudulent charge.

## IV. CLAIMS FOR RELIEF

## <u>CLAIM ONE</u>

**Fraudulent Arrest Affidavit - Color of Law Violation - 42 U.S.C. §1983**

458. This claim is brought against the following Defendants in their personal

capacities: 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 8) James Edward

Turnbough; 9) John Allen Barnett; 10) Hunter Ray Crawford; and 14) Timothy Morris

Weaver.

459. The foregoing paragraphs are re-alleged and fully incorporated herein.

460. The 07/22/24 arrest *"affidavit"* used to receive a warrant to arrest Plaintiff

Dave Campbell was not properly notarized.

461. Deception was used by Defendants to induce another to rely on a false

oath.

462. The false oath in the 07/22/24 arrest affidavit was relied on and such

reliance caused harm to Plaintiffs.

463. The aforesaid Defendants set forth in this claim committed fraud by

making an omission of a material fact in the 07/22/24 , *"Affidavit of Probable cause for*

*Arrest"* which is the omission of the Affiant's signature on Affiant Barnett's arrest

affidavit.

464. The omission of Mr. Barnett's signature makes every statement in the

*"Affidavit of Probable Cause for Arrest"* misleading, because the Notarized Affidavit

falsely indicates it is sworn.

465. Defendants each took part in the issuance of an arrest warrant in violation of the Fourth Amendment of the United States Constitution, because the Fourth Amendment requires an affidavit used to establish probable cause to provide a factual showing of probable cause.

466. Defendants' conduct in the creation of the 07/22/24 arrest documents was malicious and in reckless disregard for the truth.

467. Defendants' actions were needless, unreasonable, unlawful and with intent.

468. On 04/29/25, Affiant Barnett admitted on the witness stand in Case 25CV-24-72, he did not sign his 07/22/24 arrest affidavit.

469. Assistant Chief Barnett's admission on 04/29/25, which is: he is aware Plaintiff Dave Campbell's was arrested without probable cause, is an indication of Defendants' malice and reckless disregard for the truth.

470. The 07/22/24 *"Affidavit of Probable Cause for Arrest"* was created with the intent to deceive or mislead.

471. Defendants acted with malice and reckless disregard for the truth with the creation of the 07/22/24 affidavit to seek a warrant to arrest Plaintiff Dave Campbell.

472. Defendants acted with malice and reckless disregard the truth by standing down and permitting Randall, Brenda and Gary Dunn to trespass at 435 Bethel AV on 07/16/24.

473. MSPD should have been on the scene from the moment Brenda, Randall and Gary Dunn arrived at 435 Bethel Avenue.

474. MSPD or City of Mammoth Spring should have directed Randy, Brenda and Gary Dunn to leave on 07/16/24.

475. Defendants' 07/22/24 arrest documents against Plaintiff Dave Campbell

were created with the intent to deceive and mislead.

476.   The 07/16/24 *"affidavit"* involves a forged signature.

477.   The 07/16/24 *"affidavit"* misrepresented "unknown" as the location of the incident, despite Affiant Barnett's form stating the location was private residence; 435 Bethel AV.

478.   Defendants knew they had to select the *"unknown"* option in order to erroneously charge Plaintiff Dave Campbell with the public charge of *"disorderly conduct."*

### Tampering with or Fabricating Physical Evidence

479.   Assistant Chief Barnett's 07/22/24 unsigned *"affidavit"* states he interviewed only Gary Dunn, Randy Dunn and Brenda Dunn.

480.   Assistant Chief Barnett's did not interview Mrs. Betty Dunn, or Plaintiffs and did not review the 07/16/24 video evidence.

481.   Officer Crawford concealed and fabricated evidence.

482.   Barnett never sought the "noticed" 07/16/24 video evidence.

483.   Officer Barnett testified the 'Dunn Trio' presented a copy of a Warranty Deed to City Hall of 435 Bethel AV, yet failed to include a copy of Mrs. Betty Dunn's Warranty Deed in his charging documents.

484.   Mrs. Dunn's Warranty Deed shows Gary and Randall Dunn had a deed for future ownership on 07/16/24.

485.   Mrs. Dunn's Warranty Deed shows Gary and Randall Dunn had no business at Betty Dunn's residence until her passing.

**Lack of Personal Knowledge:**

486.   Affiant Barnett did not have personal knowledge of facts stated in his 07/22/24 arrest *"affidavit."*

487.   Affiant Barnett did not attend the scene of the 07/16/24 Bethel incident.

488.   Defendant Turnbough intentionally defrauded the judicial system by having a police officer, who was not present on 07/16, become the Affiant to an arrest document instead of the police officer who was actually was involved and worked the 07/16/24 incident.

**Notarization Errors:**

489.   Affiant Barnett's 07/22/24 arrest *"affidavit"* was not properly notarized, because the Affiant failed to appear in person and did not sign his affidavit.

490.   Affiant Barnett's 07/22/24 arrest *"affidavit"* is forged by Officer Crawford.

491.   Defendant Gann notarized a blank Jurat and knowingly uttered a false document.

492.   Arkansas Secretary of State, John Thurston, reprimanded Defendant Gann on or about 10/10/24, for failing to notarize the signature and oath of the affiant on 07/22/24.

**Prejudice to Plaintiffs:**

493.   Mr. Plumlee (Mammoth Spring's attorney and Fulton County's deputy prosecutor) implemented a new procedure with Mammoth Spring arrest documents on 07/22/24, by signing his name with *"approved"* and *"D.P.A."*

494.   Plaintiffs' FOIA responses revealed Mr. Plumlee only signed one arrest document, of late, in Mammoth Spring, which prejudicially was Plaintiff Dave Campbell's arrest documents.

**Undue Influence or Coercion:**

495.   Defendants pressured or coerced Officer Crawford into signing his name on Plaintiff Dave Campbell's arrest *"affidavit"* in place of Assistant Chief Barnett.

**The Affidavit Contains False Statements:**

496.  Defendant Barnett's unsigned, *"affidavit"* states, *"At approximately 9:46 AM as Mr. Gary was heading into his mother's 'Ms. Betty's' home he noticed Mrs. Campbell was walking toward Ms. Betty's home, she quickly turned around and ran to her residence.*

497.  Assistant Chief Barnett did not request a statement from either Plaintiff.

498.   Assistant Chief Barnett's unsigned, *Mr. Gary said that he seen Mr. Campbell become visibly irate practically running up to their property with Mrs. Campbell, right behind him."*

499.  The 07/16/24 video evidence proves Plaintiff Dave Campbell walked at a normal pace toward Mrs. Betty Dunn.

500.  Mr. Crawford's statement attached to Mr. Barnett's unsigned affidavit is, *"The neighbors of Ms. Dunn, Dave and Dawn Campbell, were at the house when Ms. Dunn's kids showed up."*

501.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"As the Campbell's (sic) made it onto their property Mr. Gary asked if Mr. Campbell had a weapon, they both stated they did while placing their hands on their waste (sic) line indicating they were carrying firearms."*

502.  The 07/16/24 video evidence proves Plaintiff Dave Campbell was immediately assaulted upon walking to Mrs. Dunn's carport's edge by Gary Dunn.

503. The 07/16/24 video evidence proves Gary Dunn aggressed upon Plaintiff Dave Campbell by slapping Plaintiff in the face with a laminated 9"x13" caution sign he removed from Mrs. Dunn's home.

504. The 07/16/24 video evidence shows Gary Dunn continue to lean on Plaintiff Dave Campbell for approximately 15 seconds after Plaintiff walked under the carport.

505. The 07/16/24 video evidence proves Gary Dunn did not ask about a weapon upon Plaintiffs' arrival to 435 Bethel AV.

506. The 07/16/24 video evidence proves, Gary Dunn stated to Campbells at approximately .55 seconds into the 07/16 video, *"Crawford, he don't like you people and you can tell it."*

507. The 07/16/24 video evidence proves Gary Dunn did not ask about a gun until approximately six-and-a-half minutes after Plaintiffs' arrival to 435 Bethel AV.

508. The 07/16/24 video evidence proves Plaintiffs did not have their hands on their waists, or point to their waists when Gary Dunn asked about a firearm.

509. The 07/16/24 Fulton County 911 call audio evidences Plaintiff Dave Campbell notified FCSO he was carrying a handgun when asked if there were weapons involved.

510. The 07/16/24 Fulton County 911 call audio evidences Plaintiff Turnbough was notified by 911, Plaintiff Dave Campbell was carrying a handgun.

511. The 07/16/24 video evidence proves Gary Dunn pushed Plaintiff Dave Campbell to block Plaintiff's path.

512. At approximately 00:16 seconds into the 07/16/24 video evidence, Plaintiff Dave Campbell stated to Gary Dunn, *"I am going to stand on the porch and the cops are*

*on their way,"* which were the only words stated by Plaintiff Dave Campbell at that time.

513.  Gary Dunn fell down at approximately 00:19 seconds into the 07/16/24 video evidence.

514.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Mr. Gary then told them that they needed to leave the property they both refused, instead Mr. Campbell started calling Mr. Gary and Mr. Rany (sic) idiots, constantly insulting them and their intelligence."*

515.  The 07/16/24 video evidence proves Plaintiff Dave Campbell did not call anyone an *"idiot"* at 435 Bethel AV on 07/16/24 and rather stated once, *"the lack of education is showing."*

516.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"During this time Mr. Gary noticed his mother being visibly upset, as he tried to make his way to Ms. Betty to check on her, Mr. Campbell stepped in front of him to block his path."*

517.  The 07/16/24 video evidence proves, Mrs. Dunn was clearly upset on 07/16/24 because her sons notified her they were there to take her to a doctor, or hospital.

518.  The 07/16/24 video evidence proves Mrs. Dunn stated she did not want to go with her sons on 07/16/24.

519.  The 07/16/24 video evidence proves Plaintiffs went to 435 Bethel AV in self defense of Mrs. Dunn.

520.  The 07/16/24 video evidence proves, Gary Dunn leaned on Plaintiff Dave Campbell from behind while prodding Plaintiff Dave Campbell in the back of the neck with his weapon.

521.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Mr. Gary then tried to step around Mr. Campbell, Mr. Campbell chest bumped Mr. Gary and stated loudly 'You pushed me'!"*

522.  At approximately 00:19 seconds into the 07/16/24 video evidence proves, Gary Dunn remained in Plaintiff, Dave Campbell's space while pointing Mr. Dunn's laminate in the air.

523.  The 07/16/24 video evidence proves, Gary Dunn was pushed out of Plaintiff, Dave Campbell's space.

524.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell, did not state, *"you pushed me"* as Gary Dunn alleged.

525.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell at approximately 00:21 seconds into the incident, Gary Dunn stated, *"He hit me. That's assault."*

526.  At approximately 00:33 seconds into the 07/16/24 video evidence, Plaintiff Dave Campbell stated, *"He kept pushing the shit out of me. Now, back off me."*

527.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell never chest bumped Gary Dunn.

528.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell never hit Gary Dunn with Plaintiff's left fist.

529.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell did push Gary Dunn completely out of Plaintiff Dave Campbell's space to avoid further dangerous conflict. I was not going to allow the Dunn Trio near Mrs. Betty.

530.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Then Mr. Campbell*

*hit Mr. Gary with his left closed fist in Mr. Gary's stomach, Mr. Campbell then vigorously pushed Mr. Gary to the ground with both hands."*

531.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell removed Gary Dunn from Plaintiff's personal space, per Arkansas' Stand Your Ground Law.

532.  The 07/16/24 video evidence proves, Randall entered Plaintiff Dawn Campbell's space, so Plaintiff Dave Campbell was justified in backing Randall Dunn up.

533.  The 07/16/24 video evidence proves, MSPD did not appear to the scene until after Plaintiff Dave Campbell was assaulted three times.

534.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Mrs. Campbell then screamed at Mr. Campbell stop and calm down."*

535.  The 07/16/24 video evidence proves, Randall Dunn was the recipient of Plaintiff, Dawn Campbell's words, telling him to calm down at 2:53 minutes into the incident when stating to Mrs. Dunn, ". *"I've got you on camera and you need to calm down."*

536.  The 07/16/24 video evidence proves, the only other time the words *"calm down"* were stated was at approximately 15:50 when Dawn Campbell stated to Randy Dunn, *"Let's just calm down."*

537.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Mr. Campbell immediately turned his aggression toward Mr. Randy, Mr. Gary's brother, Mr. Campbell pushed Mr. Randy then yelled you pushed me, then pushed Mr. Randy even harder causing him to stumble and he would've fell if he didn't hit his back on the pole that holds the carport up."*

538.  At approximately 02:37 into the incident, the 07/16/24 video evidence proves, Randall Dunn placed his stomach on Plaintiff, Dave Campbell, while pointing his finger in Plaintiff's face.

539.  The 07/16/24 video evidence proves, before pushing Randall Dunn out of Plaintiff Dave Campbell's space at approximately 02:40, into the incident, Plaintiff Dave Campbell warned Randall Dunn to *"Back the [expletive] up."*

540.  The 07/16/24 video evidence proves, at approximately 02:39 into the incident, Randall Dunn admitted being the aggressor by stating, *"You touched me this time."*

541.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell did not turn Plaintiff's aggression toward Randall Dunn.

542.  The 07/16/24 video evidence proves, much dialogue occurred from 00:22 until  02:40 into the incident when Randall Dunn was backed out of Plaintiff Dave Campbell's space.

543.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell turned toward Randall Dunn to confirm Mr. Dunn was not going to retaliate against Plaintiff for pushing Gary Dunn out of Plaintiff's space.

544.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell's move was at *"defensive"* move; not an *"aggressive"* move.

545.  The 07/16/24 video evidence proves, Randall Dunn was pushed one time ; he was not pushed twice.

546.  A word search of the transcript to the 07/16/24 video evidence did not capture anyone stating, *"you pushed me"* during the timeframe alleged by Randall Dunn.

547.  At approximately 05:48 into the 07/16/24 video evidence, Gary Dunn

stated, *"you pushed me down..."*

548. At approximately 20:00 into the 07/16/24 video evidence, Plaintiff Dave Campbell stated, *"you pushed me twice."*

549. At approximately 20:12 into the 07/16/24 video evidence, Randall Dunn stated, *"It's just like you walked up to me and pushed me."*

560. The 07/16/24 video evidence proves, when Randy Dunn was backed up against a pole, the words *"you pushed me"* were never stated by anyone.

561. Assistant Chief Barnett's unsigned *"affidavit"* states, *"Then Mr. Campbell turned back towards Mr. Gary and Mrs. Brenda, Mr. Gary's wife, got out of their vehicle, went to Mr. Campbell and while shaking her finger in his face said stop pushing my husband around."*

562. The 07/16/24 video evidence proves, Immediately after Randy Dunn was backed into a pole, Brenda Dunn left in her car and allegedly went to MSPD / City Hall.

563. The 07/16/24 video evidence proves, at around 02:56 into the incident, Gary Dunn stated, *"Brenda's going to the City now."*

564. The 07/16/24 video evidence proves, Brenda Dunn returned from City Hall and drove through Mrs. Betty Dunn's front yard at approximately 06:33 into the incident.

564. The 07/16/24 video evidence proves, Brenda Dunn never actually said her line, *"stop pushing my husband around;"* instead, Brenda Dunn stated to Plaintiff Dave Campbell at approximately 07:25 *"Get – "* as she placed herself in Plaintiff Dave Campbell's space while pointing her finger near Plaintiff's face and placing her stomach on Plaintiff's.

566. The 07/16/24 video evidence proves, Brenda Dunn never stated, *"nobody*

*shakes their finger in my face."*

567. The 07/16/24 video evidence proves, Brenda Dunn began shaking her finger in Plaintiff Dave Campbell's face at approximately 07:24 into the incident.

568. The 07/16/24 video evidence proves, at approximately 07:25, Plaintiff Dave Campbell stated to Brenda Dunn, *"You get the [expletive]out of here."*

569. The 07/16/24 video evidence proves, at approximately 07:26, Gary Dunn stated, *"You hit her ."*

570. The 07/16/24 video evidence proves, at approximately 07:28 Plaintiff Dave Campbell stated to Brenda Dunn, *"I don't like you and you'd better get the [expletive] out of here."*

571. The 07/16/24 video evidence proves, Plaintiff Dave Campbell's *"belly bump"* to Brenda Dunn at approximately 07:26 was not effective and Brenda Dunn was still pushing against Plaintiff Dave Campbell at 07:29 into the incident.

572. Assistant Chief Barnett's Arrest Affidavit admits Brenda Dunn aggressed on Plaintiff, Dave Campbell.

573. At approximately 07:29, the 07/16/24 video evidence proves, Plaintiff Dave Campbell, with his arms behind his back, used his stomach to force Brenda Dunn off and away from him.

574. The 07/16/24 video evidence proves, Brenda Dunn never grasped for breath and instead got back in Plaintiff Dave Campbell's face after being pushed away.

575. The 07/16/24 video evidence proves, Brenda Dunn was not kneed in the stomach; Brenda Dunn was pushed.

576. The 07/16/24 video evidence proves, Gary Dunn confirmed Brenda Dunn was *"pushed"* and not *"kneed"* by stating, *"Video him when he's pushing Brenda."*

577.  The 07/16/24 video evidence proves, as Brenda Dunn was aggressing on Plaintiff Dave Campbell, she was stopped by being bumped out of Plaintiff's space and away from harm.

578.  The 07/16/24 video evidence proves, Plaintiff Dave Campbell's hands were constantly behind his back during the pushing back of Brenda Dunn.

579.  Assistant Chief Barnett's unsigned *"affidavit"* states, *"Mr. Campbell replied God is with me!  After being kneed in the stomach Mrs. Brenda got back in her vehicle, went to City Hall, and asked for help."*

580.  The 07/16/24 video evidence proves, Brenda Dunn went to the police station at approximately 02:40, which was immediately after Randy Dunn was backed into a pole.

581.  The 07/16/24 video evidence proves, Brenda did not put her finger and body into Plaintiff Dave Campbell's personal space until after she returned from the police station.

582.  The 07/16/24 video evidence proves, Brenda Dunn left 435 Bethel AV at approximately 02:40 into the incident and returned at approximately 06:33.

583.  The 07/16/24 video evidence proves, Brenda Dunn aggressed upon Plaintiff Dave Campbell at approximately 07:24 by putting her finger in his face and her stomach on Plaintiff's.

584.  The 07/16/24 video evidence proves, Brenda Dunn did not state, *"may God bless you."*

585.  The 07/16/24 video evidence proves, at approximately 07:33, Brenda Dunn stated to Plaintiff Dave Campbell, *"God be with you."*

586. The 07/16/24 video evidence proves, Plaintiff Dave Campbell responded to Brenda Dunn, at approximately 07:36, stating, *"Yeah. God be with me. I think He is with me. Thank you very much."*

587. The 07/16/24 video evidence proves, Brenda Dunn replied to Plaintiff's statement, God is with him, at approximately 07:36, by alleging, *"No, He's not."*

588. Assistant Chief Barnett's unsigned *"affidavit"* states, *"By the time she arrived back at the scene Officer Hunter Crawford was on scene."*

589. The 07/16/24 video evidence proves, Officer Crawford was not on scene when Brenda Dunn arrived back at 435 Bethel Av. from visiting MSPD.

590. The 07/16/24 video evidence proves, Officer Crawford arrived at approximately 07:50.

591. Officer Crawford's 07/16/24 statement states, *"When I arrived on scene, I was greeted by ... Gary Dunn's wife Brenda Dunn ..."*

592. Assistant Chief Barnett's unsigned *"affidavit"* states, *"Due to the above stated facts, I Assistant Chief John Barnett of the Mammoth Spring Police Department am charging Mr. Dave Campbell with 3 counts of Battery in the 3rd Degree and 1 count of Disorderly Conduct. End of Statement."*

593. In pressing charges against Plaintiff Dave Campbell, Randall Dunn did not allege any injuries.

594. In pressing charges against Plaintiff Dave Campbell, with alleged victim Randall Dunn, Assistant Chief Barnett charged Plaintiff Dave Campbell with, *"Battery – 3rd Degree / Recklessly Causes Injury."*

595. Gary Dunn's medical report verifies numerous issues.

596.   The 07/16/24 video evidence and minute 05:04 proves, Randy Dunn stated to Plaintiff Dave Campbell, *"A warrant's out for you."*

597.   The 07/16/24 video evidence proves, at approximately 09:13, Gary Dunn stumbled while walking underneath Betty Dunn's carport.

598.   Gary Dunn's medical report states, Gary Dunn reported to Dr. Washburn he fell on and injured his left side.

599.   The 07/16/24 video evidence proves Gary Dunn landed on his right side.

600.   Gary Dunn's medical report states *"After he fell, he got up, the guy came up and belly bumped him but the patient didn't fall that time....Nothing on his right side is hurting. He is doing okay but was told to come and be checked out by the police."*

601.   Brenda Dunn did not allege any injuries in her complaint to have Plaintiff Dave Campbell arrested.

602.   Assistant Chief Barnett's unsworn "affidavit" does not list any injuries for Brenda Dunn.

603.   Assistant Chief Barnett's unsigned *"affidavit"* states, *"Then Mr. Campbell turned back towards Mr. Gary."*

604.   The City of Mammoth Spring stood down while knowing the Dunn were trespassing.

605.   Defendant Turnbough participated in the aforesaid event by standing down and lying to the Fulton County dispatcher.

606.   After alleging to the 911 dispatcher, no one was available to respond to Plaintiff Dave Campbell's 911 plea, Plaintiff Turnbough dispatched Officer Crawford to the scene.

607.   Officer Crawford's statement of the 07/16/24 incident admitted Plaintiff Turnbough called him to the 07/16/24 incident at 435 Bethel Avenue.

608.   Officer Hunter Crawford's statement attached to Plaintiff Dave Campbell's arrest affidavit states, *"On 07/16/2024, I Officer Hunter Crawford received a call from Chief of Police Jamie Turnbough. The call was regarding 435 Bethel Avenue in Mammoth Spring, Ar. Betty Dunn is residing in the house, and her children, Gary Dunn and Randall Dunn have a Warranty deed on the house."* Mr. Crawford indicated nothing about my 9-1-1 call that day. Mr. Crawford's statement indicates his call from Mr. Turnbough was related to Gary, Randy and Brenda Dunn's visit to City Hall on the morning of 07/16/24 when they showed a copy of Mrs. Dunn's deed to City Hall.

**False Statements and Omissions were Material to Finding of Probable Cause:**

609.   On 07/22/24, the probable cause found by the magistrate judge clearly stated it was based on an *"affidavit."*

610.   The false statements contained in Mr. Barnett's 07/22 *"affidavit,"* and attachments to the *"affidavit"* were material to a finding of probable cause.

611.   Defendants could not have alleged probable cause without the omission of the 07/16/24 video evidence.

612.   Defendants could not have alleged probable cause without the omission of the statements of Betty Dunn, Plaintiff Dawn Campbell and Plaintiff Dave Campbell.

613.   Defendants could not have alleged probable cause without the omission of the fact, Gary, Randall and Brenda Dunn were trespassing at 435 Bethel AV on 07/16/24.

**Reliance on Defendants' Fraud:**

614.    Defendants' fraud was erroneously relied upon by the judicial system.

615.    Defendants' fraud was erroneously relied upon by the State of Arkansas in the prosecution of Plaintiff Dave Campbell.

616.    Defendants' fraud was forced to be relied upon by Plaintiffs.

**Due Process Issues:**

617.    When reading Defendants' 07/22/24 *"affidavit"* as a whole in a realistic and common sense manner, Defendants' *"affidavit"* does not allege specific facts and circumstances from which the magistrate could reasonably conclude Plaintiff, Dave Campbell, was associated with a crime.

618.    The magistrate was misled by information contained in the affidavit that Affiant John Barnett either knew was false, or would have known was false had he not recklessly disregarded the truth.

619.    Defendants knowingly violated the law by executing the 07/22/24 *"affidavit."*

620.    Defendants intended to harm Plaintiffs with their 07/22/24 *"affidavit."*

621.    On 04/30/25, Affiant Barnett confirmed Defendants' knowledge of violating the law by testifying in Case No. 25CV-24-72, he did not sign his 07/22/24 affidavit.

622.    Defendants' actions violate clearly established statutory or Constitutional rights of which a reasonable person would have known.

623.    A Constitutional violation occurred against Plaintiff Dave Campbell, which were clearly established at the time of the violation.

624.    Defendants' unlawfulness in executing the 07/22/24 *"affidavit"* to arrest Plaintiff Dave Campbell was apparent to Defendants.

190.  Defendants' unlawfulness in executing the 07/22/24 *"affidavit"* to arrest Plaintiff Dave Campbell is apparent to a reasonable person.

625.  Defendants' conduct in executing the 07/22/24 *"affidavit"* to arrest Plaintiff Dave Campbell was wanting.

626.  Defendants' conduct in executing the 07/22/24 *"affidavit"* was objectively unreasonable.

627.  Defendants willfully and maliciously violated Plaintiff Dave Campbell's Fourth and Eighth Amendment Rights.

628.  Defendants violated the Fourth Amendment on 07/22/24 by failing to provide a truthful factual showing in the affidavit used to establish probable cause.

629.  Defendants purposefully filed a false affidavit to secure an arrest warrant.

630.  Defendants knew, or had reason to know, they materially misled a magistrate on the basis for a finding of probable cause.

631.  Affiant Barnett and Defendants knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant.

632.  Affiant Barnett's false statements or omissions were material, or necessary, to the finding of *"probable cause."*

633.  The warrant affidavit used to arrest Plaintiff Dave Campbell includes false information, as set forth above.

634.  By reporting less than the total story, Defendants and Affiant Barnett manipulated the inferences Magistrate Weaver drew in the authorization of a warrant to arrest Plaintiff Dave Campbell.

635.  The false statements and omissions in the warrant affidavit were made

knowingly and intentionally.

636. Affiant Barnett knew Gary, Randall and Brenda Dunn gave false statements to cause Plaintiff Dave Campbell's arrest, because Affiant Barnett worked the scene on 11/30/23 when Randall Dunn broke into the home at 435 Bethel Avenue.

637. Affiant Barnett knew Betty Dunn did not want Brenda, Randall and Gary Dunn at her residence on 07/16/24.

638. Affiant Barnett omitted facts from Defendants' arrest documents with the intent to make the *"affidavit"* misleading.

639. Affiant Barnett omitted facts from his *"affidavit,"* which any reasonable person should have known a judge would wish to have brought to their attention.

640. If Affiant Barnett's *"affidavit"* were corrected to include his omissions, the corrected affidavit would not have supported a finding of probable cause.

641 There is insufficient content in the warrant affidavit to support a finding of probable cause.

### Damages:

642. Plaintiffs have incurred damages as a result of the reliance on Defendants' fraudulent 07/22/24 *"affidavit"* of Assistant Police Chief John Barnett.

643. Defendants' fraudulent 07/22/24 *"affidavit"* caused Plaintiffs' damages.

644. Defendants demand to recover all damages caused by Defendants' fraudulent 07/22/24 *"affidavit"* of Assistant Chief John Barnett.

645. The Supreme Court has recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment.

646. Plaintiffs claim and demand compensation from Defendants for the damages

caused to Plaintiffs by Defendants' conduct, as alleged herein.

647.  Plaintiffs' reputations are forever tarnished by the erroneous *"Domestic Battering"* charge and false light Plaintiffs are placed in by Defendants.

648.  Plaintiffs lost privacy and respect as a result of Defendants' animus to harm Plaintiffs with Defendants' reckless disregard for the truth.

## CLAIM TWO

### 42 U.S.C. §1983 – Monell Liability.
### Violations of the Constitution of the United States

649.    Plaintiffs bring this cause of action against Defendant Fulton County Sheriff's Department (herein as, *"FCSO"*).

650.  The foregoing paragraphs are re-alleged and incorporated fully herein.

651.    FCSO is a law enforcement agency in Fulton County, Arkansas.

652.    FCSO knew as early as 11/30/23, Betty Dunn had volatile issues with Gary and Randall Dunn; her sons.

653.    FCSO knew Gary, Randy and Brenda Dunn were trespassing on 07/16/24.

654.    FCSO knew Plaintiff Dave Campbell was assaulted on 07/16/24 by Gary, Randy and Brenda Dunn causing Plaintiff Dave Campbell to act in self defense.

655.    FCSO served a warrant to arrest Plaintiff, Dave Campbell, with a warrant affidavit being attached.

656.    FCSO has a policy, or practice of knowingly making arrests without any evidence of probable cause.

657.  FCSO has a custom, pattern and/or practice of permitting male FCSO employees search female prisoners and vice versa.

658.    On 08/02/24 Plaintiff Dave Campbell was subjected to a strip search.

659.    FCSO has a custom, pattern and/or practice of fraudulently entering alleged charges into the Internet database, which are different than the actual charge.

660.    FCSO falsely alleged to the public Plaintiff Dave Campbell was charged with *"Domestic Battering."*

661.    FCSO failed to correct the fraudulent *"domestic battering"* charge against Plaintiff Dave Campbell until approximately six weeks had passed.

662.    FCSO's failure to correct the fraudulent *"domestic battering"* charge resulted in third-party Internet sites republishing FCSO's fraudulent information.

663.    FCSO caused Plaintiffs to forever erroneously be displayed on the World Wide Web as being arrested in a charge of *"domestic battering."*

664.    Plaintiff Dave Campbells' rights are protected by the Constitution of the United States.

665.    Consistent with and as a result of Defendant FCSO's customs, patterns, practices, and/or procedures, Defendant unjustifiably and unlawfully violated Dave Campbell's Constitutional rights.

666.    At all times relevant to this claim, Plaintiff was participating in protected activity guaranteed by the Bill of Rights to the Constitution of the United States.

667.    At all times relevant to this claim, Defendants acted under the color of Arkansas law.

668.    FCSO, while acting under the color of Arkansas law, deprived Plaintiffs of rights secured by the Constitution of the United States.

669.    FCSO intentionally and maliciously failed to protect Plaintiffs from being attacked by known trespassers.

670.    The Sheriff of FCSO is the *"policymaker"* with respect to FCSO, as a law enforcement agency.

671.    Defendant Jacob Smith, as the Sheriff of Fulton County and policymaker for FCSO, has a custom, pattern, practice, and/or procedure of violating constitutional rights.

672.    Defendant Jacob Smith, as the Sheriff of Fulton County and policymaker for the FCSO, has a custom, pattern, practice, and/or procedure of permitting his officers to violate Constitutional Rights and FCSO policies.

673.    Defendant Jacob Smith, as the Sheriff of Fulton County and policymaker for the FCSO, has a custom, pattern, practice, and/or procedure of having jailers and deputies recommend specific bail bondsmen.

674.    Sheriff Jacob Smith attempted to justify FCSO's unlawful strip search policy.

675.     Defendant Jacob Smith stated in response to Plaintiff Dave Campbell's complaint, *"Jail is an unpleasant experience at best. A strip search is policy and every person booked into the jail is required to submit to it. This is safety issue and non negotiable. Males shall perform the search on male detainees and females shall perform the search on female detainees, unless circumstances make it impossible."*

676.    When FCSO officers committed acts of constitutional violations while working for FCSO, Defendant Jacob Smith would ratify their unconstitutional acts and assist in violating inmates constitutional rights.

677.    As evidence of the above-stated custom, pattern, practice, and/or procedure, FCSO's policy is to strip search inmates in violation of Arkansas Rules of Criminal

Procedures by having jailers perform strip searches in lieu of medical professionals.

678.    Defendant Jacob Smith admitted women jailers search women inmates and men jailers search men inmates, *"unless it is not practicable."*

679.    Moreover, Defendant Jacob Smith was aware civil rights violations acts and other misconduct had been carried out by his employees, but no action has been taken by Defendant FCSO.

680.    Sheriff Jacob Smith was notified of FCSO's fraudulent *"domestic battering"* entry on the World Wide Web on or about 08/07/24 and failed to correct FCSO's fraud.

681.    There is a nexus between FCSO's conduct and Plaintiffs' damages.

682.    FCSO's conduct, as herein set forth, proximately caused deprivation of Constitutional Rights to Plaintiffs.

683.    The harm and damages done to Plaintiffs is as a result of the conduct of Defendant. Defendant's conduct, in depriving Plaintiffs of Constitutional Rights, caused harm and damages to Plaintiffs, which Plaintiffs are continuing to suffer.

684.    As a direct and proximate result of the FCSO's customs, patterns, practices, and/or procedures, as stated herein above, Plaintiff's rights guaranteed by the Fourth Amendment of the United States Constitution are violated.

685.    FCSO's actions were not taken in good-faith and were in violation of clearly established law.

686.    FCSO's actions were unnecessary, unreasonable, unlawful, and unjustified.

687.    FCSO has a duty to protect every citizen's Constitutional Rights.

688.    FCSO's actions strike at the very heart of the First Amendment.

689.    FCSO's conduct, as alleged herein, constitutes prejudice against Plaintiffs by FCSO.

690.    Defendant's actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

691.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

692.    Defendant FCSO's actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

## CLAIM THREE

### 42 U.S.C. §1983 – Abridging the Freedom of Speech on 04/01/24
### Violation of the 1st Amendment of the United States Constitution

693. This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett and 8) James Edward Turnbough.

694.    The foregoing paragraphs are re-alleged and fully incorporated herein.

695.    Defendants' conduct, as alleged herein, constitutes discrimination based on speech in violation of the First Amendment of the United States Constitution.

696.   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

697.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in rights protected by the Constitution.

698.   While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

699.   Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

700.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

701.   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

702.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

703.   Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

704.   Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM FOUR

### 42 U.S.C. §1983 – Abridging the Freedom of Seeking Redress on 04/01/24
### Violation of the 1st Amendment of the United States Constitution

705. This claim is brought against the following Defendants in their personal capacities: 1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett and 8) James Edward Turnbough.

706. The foregoing paragraphs are re-alleged and fully incorporated herein.

707. Defendants' conduct, as alleged herein, constitutes discrimination based on Plaintiffs' attempt to seek redress for grievances, in violation of the First Amendment of the United States Constitution.

708. The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

709. At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

710. While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

711. Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

712. Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

713.    Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

714.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

715.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

716.  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

### CLAIM FIVE

**42 U.S.C. §1983 – Abridging the Freedom of Speech on 06/10/24
Violation of the First Amendment of the Constitution**

717.This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; and 8) James Edward Turnbough.

718.    The foregoing paragraphs are re-alleged and fully incorporated herein.

719.    Defendants' conduct, as alleged herein, constitutes retaliation and based on speech in violation of the First Amendment of the United States Constitution.

720.    The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

721.    At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

722.    While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

723.    Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

724.    Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

725.    Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

726.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

727.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

728.    Plaintiffs claim and demand compensation from Defendants for the damages

caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM SIX

### 42 U.S.C. §1983 – Abridging the Freedom to Seek Redress on 06/10/24
### Violation of the First Amendment of the Constitution

729.   This claim is brought against the following Defendants in their personal

capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee;

5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; and 8) James

Edward Turnbough.

730.   The foregoing paragraphs are re-alleged and fully incorporated herein.

731.   Defendants' conduct, as alleged herein, constitutes retaliation based on

Plaintiffs' attempt to seek redress of grievances, in violation of the First Amendment of

the United States Constitution.

732.   The stated reasons for Defendants' conduct, as alleged herein, were not the

true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

733.   At all times relevant to this claim, Defendants acted under the color of

Arkansas law and Plaintiffs were participating in protected activity secured by the

Constitution of the United States.

734.   While acting under the color of law, Defendants deprived Plaintiffs of rights

guaranteed by the United States Constitution.

735.   Defendants' color-of-law conduct, as alleged herein, proximately

caused Plaintiffs to be harmed and suffer damages and there is a nexus between

Defendants' conduct, as alleged herein, and Plaintiffs' damages.

736.   Defendants' conduct, as alleged herein, constitutes prejudice against

Plaintiffs by Defendants.

737.   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

738.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

739.   Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

740.  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM SEVEN

**42 U.S.C. §1983 – Abridging the Freedom of Press on 06/10/24
Violation of the First Amendment of the Constitution**

741.  This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; and 8) James Edward Turnbough.

742.   The foregoing paragraphs are re-alleged and fully incorporated herein.

743.   Defendants' conduct, as alleged herein, constitutes retaliation based on

Press Freedom, in violation of the First Amendment of the United States Constitution.

744.   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

745.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

746.   While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

747.   Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

748.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

749.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

750.   Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

751.   Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM EIGHT

### 42 U.S.C. §1983- Abridging Freedom of Speech
### Violation of 1st Amendment - Chilling Protected Speech on Billboard Sign

752.  This claim is brought against the following Defendants in their personal capacities:  8) James Edward Turnbough; 29) Jody Lee Shackelford; and 30) John T. McGinnes.

753.  The foregoing paragraphs are re-alleged and fully incorporated herein.

754.  After being shut down on 04/01/24, Plaintiffs created the website; MoArkNews.com and built a marquee billboard in Plaintiffs' front yard on Main Street in Mammoth Spring.

755.  In June of 2024, Plaintiffs were participating in Constitutionally-protected activity on a billboard sign.

756.  On or about 06/18/24, Plaintiffs placed a message on the billboard stating, *"CITY HALL LET JAMIE PIMP ON MY WIFE IN 4/1 OPEN MEETING; WHAT'S HE 'DONE' WITH MELISSA?!"*

757.  Defendant sued Plaintiffs in Fulton County Circuit Court on 07/16/24 seeking an injunction request to bar Plaintiffs from the *"message which states, 'Jamie and Melissa get it on,' or any similar message,"* which Plaintiffs never stated.

758.  Defendants violated Plaintiffs' Constitutional rights with a SLAPP suit.

759.  Chilling Plaintiffs' First Amendment freedoms was a substantial and motivating factor of Defendants' conduct.

760.  Defendants' actions against Plaintiffs were motivated by Plaintiffs' speech on a marquee billboard sign on Main Street in downtown Mammoth Spring, Arkansas.

761. Defendants' retaliatory acts violated the Constitutional rights guaranteed Plaintiffs by the First Amendment of the United States Constitution.

762. Defendants' actions were not in good-faith and in violation of clearly-established law.

763. The Freedom of Speech protection enables individuals to express their opinions and ideas without government censorship or restraint.

764. Defendants' conduct, as alleged herein, constitutes retaliation based on speech in violation of the First Amendment of the United States Constitution.

765. The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

766. At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

767. While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

768. Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

769. Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

770. Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

771. As a direct and proximate result of Defendants' actions, Plaintiffs have

suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

772. Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

773. Plaintiffs claim and demand compensation from Defendants for the damages

caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM NINE

### 42 U.S.C. §1983 – Unlawful Arrest without Probable Cause Supported by Oath Violation of the 4th Amendment of the United States Constitution.

774. This claim is brought against the following Defendants in their personal capacities: 1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith; 14) Timothy Morris Weaver; 15) James Ray Cantrell; 16) James Brandon Holder; 17) Chaney Wes Taylor; 18) Drew Edward Smith; and 32) Fulton County Sheriff's Office.

775. The foregoing paragraphs are re-alleged and fully incorporated herein.

776.   Defendants conspired to cause Plaintiff, Dave Campbell, to be falsely imprisoned.

777.   Defendants lacked reasonable suspicion, or grounds to believe Plaintiff, Dave Campbell, committed a crime on 07/16/24.

778.   Defendants maliciously caused a warrant to issue against Plaintiff Dave Campbell without probable cause supported by an oath.

779.   Defendants' conduct, as alleged herein, constitutes retaliation in violation of

the Fourth Amendment of the United States Constitution.

780.   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

781.   Plaintiff Dave Campbell's 08/02/24 arrest would not have been initiated without respect to retaliation.

782.   Defendants' retaliatory acts violated the Constitutional rights guaranteed Plaintiffs by the First and Fourth Amendments of the United States Constitution.

783.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

784.   While acting under the color of law, Defendants deprived Plaintiffs of rights

guaranteed by the United States Constitution.

785.   Defendants' actions were not taken in good-faith and were in violation of clearly-established law.

786.   Defendants did not act in accordance with their official duties.

787. Defendants lacked Plaintiff Dave Campbell's consent to arrest him.

788. At all times associated with Plaintiff Dave Campbell's arrest, it was believed he was not free to leave.

789. Plaintiffs suffered prejudice by Defendants' conduct, because Plaintiff Dave Campbell is the only arrest affidavit Defendant Plumlee signed *"approved"* as *"D.P.A."* for the City of Mammoth Spring.

790. Defendants' actions were not taken in good-faith and were in violation of clearly established law.

791. Defendants' actions were unnecessary, unreasonable, unlawful, willful, malicious and unjustified.

792. Defendants' conduct in achieving the arrest of Plaintiff, Dave Campbell, is not a normal course of conduct for the judicial system.

793. Plaintiffs suffered adverse actions due to Defendants' retaliatory acts done due to Plaintiffs' exercising protected activity.

794 Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

795. Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

796. Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

797. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the

following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

798. Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

799. Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM TEN

**42 U.S.C. §1983 – False Imprisonment**
**Violation of the 4th Amendment of the United States Constitution.**

800. This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith; 14) Timothy Morris Weaver; 15) James Ray Cantrell; 16)  James Brandon Holder; 17) Chaney Wes Taylor; 18) Drew Edward Smith; and 32) Fulton County Sheriff's Office.

801. The foregoing paragraphs are re-alleged and fully incorporated herein.

802. Defendants conspired to cause and keep bound, Plaintiff, Dave Campbell.

803. Defendants' conduct, as alleged herein, constitutes retaliation in violation

of the Fourth Amendment of the United States Constitution.

804. At all times relevant to this claim, Plaintiffs were participating in protected activity secured by the Constitution of the United States.

805. At all times relevant to this claim, Defendants acted under the color of Arkansas law.

806. Defendants, while acting under the color of Arkansas law, deprived Plaintiffs

of rights secured by the Constitution of the United States.

807. Defendants intentionally restrained Plaintiff Dave Campbell's liberty.

808. At no time did Plaintiff Dave Campbell ever agree to be restrained, arrested, or kept bound over.

809. Defendants had no legal right to restrict the freedom of Plaintiff Dave Campbell.

810. Defendants exceeded their lawful authority by arresting Plaintiff.

811. Defendants violated Plaintiff Dave Campbell's civil rights.

812. Plaintiff, Dave Campbell, was aware of Defendants' unlawful confinement at the time it occurred on or about 08/02/24.

813. The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

814. At all times relevant to this claim, Defendants acted under the color of Arkansas law.

815. While acting under the color of law, Defendants deprived Plaintiffs of rights

guaranteed by the United States Constitution.

816.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

817.   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

818.   Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

819.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

820.   Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

821.   Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM ELEVEN

**42 U.S.C. §1983 – Unlawful Seizure of Paper on 01/28/25
Violation of the 4th Amendment of the United States Constitution.**

822. This claim is brought against the following Defendants in their personal

capacities:  15) James Ray Cantrell; and 17) Chaney Wes Taylor.

823. The foregoing paragraphs are re-alleged and fully incorporated herein.

824. Defendants' conduct, as alleged herein, constitutes retaliatory animus.

825    At all times relevant to this claim, Defendants acted under the color of

Arkansas law and Plaintiffs were participating in protected activity secured by the

Constitution of the United States.

826.  While acting under the color of law, Defendants deprived Plaintiffs of rights

guaranteed by the United States Constitution.

827.   Defendants' conduct, as alleged herein, constitutes prejudice against

Plaintiffs by Defendants.

828.      Defendants' actions were unnecessary, unreasonable, unlawful, malicious

and with reckless disregard for the truth.

829.  Defendants' color-of-law conduct. as alleged herein, proximately caused

Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants'

conduct, as alleged herein, and Plaintiffs' damages.

830.   As a direct and proximate result of Defendants' actions, Plaintiffs have

suffered and continue to suffer substantial past and future damages, both compensatory

and general, including, but not limited to, endless stomach pains and a loss of the

following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

831.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

832.    Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM TWELVE

### 42 U.S.C. §1983 – Cruel and Unusual Punishment
### Violation of the 8th Amendment of the United States Constitution.

833.    This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith; 14) Timothy Morris Weaver; 15) James Ray Cantrell; 16)  James Brandon Holder; 17) Chaney Wes Taylor; 18) Drew Edward Smith; 19) Donald Taylor McSpadden.

834.    The foregoing paragraphs are re-alleged and fully incorporated herein.

835.    Defendants intentionally caused Plaintiff, Dave Campbell, to be unconstitutionally arrested as a form of cruel and unusual punishment for Plaintiffs' exercising Constitutional Rights.

836. Defendants set up the circumstances for Plaintiff Dave Campbell's arrest.

837. Defendants caused Plaintiff Dave Campbell's multiple charges of *"battery"* to be entered into the database as *"domestic battering."*

838. Defendants falsely alleged to others Plaintiff Dave Campbell is *"aggressive"* to his wife.

839. Plaintiffs notified Defendants within a few days the fraudulent *"domestic battering"* entry was made.

840. Defendants failed to correct the fraudulent *"domestic battering"* charge until approximately six weeks had passed.

841. Knowingly arresting Plaintiff, Dave Campbell, without probable cause and subjecting Plaintiff to a strip search in violation of Arkansas Rules of Criminal Procedures is cruel and unusual punishment.

842. Arresting Plaintiff Dave Campbell and falsely entering the charges as *"domestic battering"* is cruel and unusual punishment, because it defamed Plaintiffs and tarnished Plaintiffs' marriage-image.

843. Knowingly uttering the fraudulent 07/22/24 arrest *"affidavit"* to keep Plaintiff, Dave Campbell bound over to Fulton County is cruel and unusual punishment.

844. Threatening Plaintiffs with contempt of court to *"void"* Plaintiffs' neighbor is cruel and unusual punishment, as Defendant McSpadden did to aid his TUF gang.

845. Defendants display a deliberate indifference concerning their unlawful conduct against Plaintiffs.

846. Defendants' punishment to Plaintiffs is grossly disproportionate to the lack of crime committed by Plaintiffs.

847. Defendants' punishment to Plaintiffs was overly painful, degrading and

humiliating.

848.   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

849.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

850.   While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

851.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

852.   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

853.   Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

854.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

855.   Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

856.   Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## **CLAIM THIRTEEN**

### **42 .S.C. §1983 – Excessive Bail**

857.   Plaintiffs bring this claim against Defendant Fulton County Sheriff's office Defendant Carl Dwayne Plumlee and Defendant Timothy Morris Weaver.

858.   The foregoing paragraphs are re-alleged and fully incorporated herein.

859.   Defendant Plumlee prejudicially caused Plaintiff, Dave Campbell, to pay excessive bail.

860.   On 07/22/24, Defendant Weaver approved Plaintiff's arrest without probable cause.

861.   FCSO's policy is to not charge bail, or physically arrest a person for a misdemeanor.

862.   Plaintiffs own multiple properties on Main Street in Mammoth Spring and Plaintiff, Dave Campbell, does not have a criminal history, is not a flight risk and is a senior citizen.

863.   Pursuant to Arkansas Rules of Criminal Procedure, Defendants were required to have a bond hearing with Plaintiff present prior to setting a surety bond.

864.   Pursuant to Arkansas Rules of Criminal Procedures, Plaintiff, Dave Campbell, under the circumstances was required to be released on his own recognizance.

865.   While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

866.   Defendants' conduct, as alleged herein, constitutes prejudice against

Plaintiffs by Defendants.

867.    Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

868.    Defendants did not act in accordance with official duties and judicial responsibilities by requiring Plaintiff, Dave Campbell, to post excessive bail.

869.    The bail Defendants caused Plaintiff Dave Campbell to pay was more than reasonable.

870.    The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

871.    At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

872.    Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

873.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

874.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an

award of punitive damages is appropriate to the fullest extent permitted by law.

875.  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM FOURTEEN

### 42 .S.C. §1983 – Unsafe Prison Conditions

876.   Plaintiffs bring this claim against Defendant Fulton County Sheriff's Office, Defendant Jacob Lee Smith, and Defendant William Michal Fawcett.

877.  The foregoing paragraphs are re-alleged and fully incorporated herein.

878   Defendants' conduct, as alleged herein, constitutes retaliation.

879   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

880.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

881   While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

882.  Defendants created unsafe prison conditions by subjecting Plaintiff Dave Campbell to a strip search in violation of Arkansas Rules of Criminal procedures.

883.  Defendants' intended their actions to cause harm to Plaintiffs, because Defendants' knew they lacked probable cause to arrest Plaintiff, Dave Campbell.

884.  Fulton County Sheriff's Office jailers conduct strip searches on inmates.

885. Defendants were aware of a risk of harm.

886. Defendants chose to create the risk of harm for inmates instead of remedy the risk of harm.

887. Defendants' punishment toward Plaintiff, Dave Campbell, was grossly disproportionate to the crime, because Defendants know there is no crime.

888. Defendants' punishment toward Plaintiff, Dave Campbell, is overly painful, degrading and humiliating.

889. Defendants' punishment toward Plaintiff, Dave Campbell, failed to meet social decency standards.

890. Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

891. Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

892 Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

893. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

894. Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an

award of punitive damages is appropriate to the fullest extent permitted by law.

895.  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM FIFTEEN

### 42 U.S.C. § 1983 Deprivation of Rights Under Color of Law
### 14th Amendment Violation – Equal Protection of the Law

896.   This claim is brought against the following Defendants in their personal capacities:  8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith; 14) Timothy Morris Weaver; 15) James Ray Cantrell; 17) Chaney Wes Taylor; 18) Drew Edward Smith; and 19) Donald Taylor McSpadden.

897.  The foregoing paragraphs are re-alleged and fully incorporated herein.

898.   Plaintiffs have been repeatedly assaulted and Defendants refuse to protect Plaintiffs.

899.   Defendants committing a false making of an arrest affidavit to knowingly cause Plaintiff Dave Campbell's unlawful arrest.

900.   Defendants allowed Plaintiff Dave Campbell to be assaulted and arrested Plaintiff for standing his ground against Defendants; Brenda, Randy and Gary Dunn.

901.   Defendants disregarded Defendant Alexander's assault against Plaintiff.

902.   Defendants made an unreasonable and unconstitutional arrest of Plaintiff Dave Campbell in violation of the Fourth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to

the Constitution of the United States.

903.  Defendants' conduct, as alleged herein, constitutes retaliation.

904.  The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

905.  At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

906.  While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

907.  Defendants unlawfully deprived Plaintiff, Dave Campbell, of his freedom without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

908.  At all times relevant hereto, Defendants acted pursuant to a policy or custom of Defendants by depriving people of liberty without probable cause and without providing an opportunity for the people to be heard.

909.  Defendants failed to adopt clear policies and failed to properly train its deputies as to the proper role of officers in private disputes such as repossession.

910.  Defendant County's policy or custom, and its failure to adopt clear policies and failure to properly train its deputies, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiffs.

911.  Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

912.    Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

913.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

914.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

915    Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM SIXTEEN

### 42 U.S.C. § 1983 Deprivation of Rights Under Color of Law
### 14th Amendment Violation – Due Process

916.    This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith;

14) Timothy Morris Weaver; 15) James Ray Cantrell; 16) James Brandon Holder; 17)

Chaney Wes Taylor; 18) Drew Edward Smith; and 19) Donald Taylor McSpadden.

917. The foregoing paragraphs are re-alleged and fully incorporated herein.

918. It is a matter of practice and procedure for Fulton County District Court to

deprive defendants of their right to discovery pursuant to Ark. R. Crim. P. 20.

919. Defendants' conduct, as alleged herein, constitutes retaliation and bias.

920. The stated reasons for Defendants' conduct, as alleged herein, were

not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

921. At all times relevant to this claim, Defendants acted under the color of

Arkansas law and Plaintiffs were participating in protected activity secured by the

Constitution of the United States.

922. While acting under the color of law, Defendants deprived Plaintiffs of rights

guaranteed by the United States Constitution.

923. Defendants' conduct, as alleged herein, constitutes prejudice against

Plaintiffs by Defendants.

924.. Defendants' actions were unnecessary, unreasonable, unlawful, malicious

and with reckless disregard for the truth.

925. Defendants' color-of-law conduct, as alleged herein, proximately

caused Plaintiffs to be harmed and suffer damages and there is a nexus between

Defendants' conduct, as alleged herein, and Plaintiffs' damages.

926. As a direct and proximate result of Defendants' actions, Plaintiffs have

suffered and continue to suffer substantial past and future damages, both compensatory

and general, including, but not limited to, endless stomach pains and a loss of the

following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

927.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

928  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM SEVENTEEN

### 42 U.S.C. § 1983 Deprivation of Rights Under Color of Law
### Violation of 1st Amendment - Right of the People to Peaceably to Assemble

929. This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray Crawford; 19) Donald Taylor McSpadden; 23) Paul David Kauffman; 24) Frederick Alexander O'Neil; 25) Gavin Moore.

930.    The foregoing paragraphs are re-alleged and fully incorporated herein.

931.    Defendants caused Plaintiffs to be deprived of the right to peaceably assemble by unlawfully interfering to prohibit Plaintiffs' from visiting  Betty Dunn in the nursing home when there are no lawful order to prohibit visitations.

932   Plaintiffs were prohibited from peaceably assembling during the 04/01/24 and 06/10/24 City Council meetings.

933   Defendants' conduct, as alleged herein, constitutes bias and/or retaliation based on the right to peaceably assemble, in violation of the First Amendment of the United States Constitution.

934.  In addition to the paragraphs incorporated herein, Defendants worked together to have Betty Dunn fraudulently found to be *"incapacitated"* and voided by the Fulton County Probate Court.

935.   The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

936.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

937.  While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

938.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

939.   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

940.   Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

941.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory

and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales. Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

942.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

943    Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM EIGHTEEN

### 42 U.S.C. §1983 – Failure to Provide Transparent Process
### Violation of 5th Amendment Rights

944.    This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; 8) James Edward Turnbough; 9) John Allen Barnett; 10) Hunter Ray Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith; 14) Timothy Morris Weaver; 16) James Brandon Holder; 17) Chaney Wes Taylor; 18) Drew Edward Smith; 19) Donald Taylor McSpadden ;and 32) FCSO.

945.    The foregoing paragraphs are re-alleged and fully incorporated herein.

946.    Defendants' conduct, as alleged herein, constitutes bias and/or retaliation based on rights in violation of the Fifth Amendment of the United States Constitution.

947.    The stated reasons for Defendants' conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendants' retaliatory animus.

948.    At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

949.    While acting under the color of law, Defendants deprived Plaintiffs of rights guaranteed by the United States Constitution.

950. Defendants failed to provide a fair and transparent process that includes appropriate legal protections for the citizens.

951.    Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

952.    Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

953.    Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

954.    Defendants' color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendants' conduct, as alleged herein, and Plaintiffs' damages.

955.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

956.    Defendants' actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

957.  Plaintiffs claim and demand compensation from Defendants for the damages caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM NINETEEN

### 42 U.S.C. §1983 –  February of 2025
### 1st Amendment Violation – Freedom of Petition

958.  Plaintiffs bring this cause of action against Defendant Turnbough:

959.  The foregoing paragraphs are re-alleged and fully incorporated herein.

960.    On or about 02/10/25, Plaintiffs were participating in constitutionally-protected activity.

961. On 02/10/25, Defendant Turnbough refused Plaintiffs right to redress.

962.  On 02/10/25, Defendant Turnbough directed Plaintiffs' complaints for citizens' arrest to be taken up with his personal attorney and to stop bothering them at City Hall.

963.  Defendants did not act in accordance with their official duties.

964.  Defendants have a duty to protect every citizen's Constitutional rights.

965.     Plaintiffs' rights are protected by the Constitution of the United States.

966.    Defendant's conduct, as alleged herein, constitutes bias and/or retaliation based on the freedom to petition for redress of grievances, in violation of the First Amendment of the United States Constitution.

967.   The stated reasons for Defendant's conduct, as alleged herein, were not the true reasons, but instead were a pretext to hide Defendant's retaliatory animus.

968.   At all times relevant to this claim, Defendants acted under the color of Arkansas law and Plaintiffs were participating in protected activity secured by the Constitution of the United States.

969.   While acting under the color of law, Defendant deprived Plaintiffs of rights guaranteed by the United States Constitution.

970.   Defendants' conduct, as alleged herein, constitutes prejudice against Plaintiffs by Defendants.

971..   Defendants' actions were unnecessary, unreasonable, unlawful, malicious and with reckless disregard for the truth.

972.   Defendant color-of-law conduct, as alleged herein, proximately caused Plaintiffs to be harmed and suffer damages and there is a nexus between Defendant's conduct, as alleged herein, and Plaintiffs' damages.

973.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, endless stomach pains and a loss of the following: relationship; freedom, consortium; reputation, neighbor, friendships, business investment and sales.  Plaintiffs endured physical depression and pain and suffering caused by and a life of having chickens and gardening.

974.   Defendant's actions were motivated by iniquity, intent and involved a reckless indifference to the Constitutionally-protected rights of Plaintiffs; therefore, an award of punitive damages is appropriate to the fullest extent permitted by law.

975.   Plaintiffs claim and demand compensation from Defendants for the damages

caused to Plaintiffs by Defendants' conduct, as alleged herein.

## CLAIM TWENTY

### 42 U.S.C. §1983- Failure to Intervene
### Violation of the 4th Amendment of the United States Constitution.

976.   This claim is brought against the following Defendants in their personal

capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4)

Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee

Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray

Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith;

14) Timothy Morris Weaver; 15) James Ray Cantrell; 16) James Brandon Holder; 17)

Chaney Wes Taylor; 18) Drew Edward Smith; 19) Donald Taylor McSpadden and 32)

Fulton County Sheriff's Office.

977.      Plaintiffs incorporate by reference each and every allegation contained

within the paragraphs above as if fully rewritten herein, and further state:

978.      Defendants had a duty to intervene when Plaintiffs' Constitutional rights

were being violated and/or when Betty Dunn was being *"voided."*

979.      Defendants observed and/or had reason to know, constitutional violations

were being was being inflicted upon Plaintiffs without a legitimate goal or justification.

980.      Defendants had the opportunity and means to prevent the violations of

Plaintiffs' Constitutionally-protected rights from occurring.

981.      Not only are Defendants deliberately indifferent to the constitutional

violations against Plaintiffs, Defendants continue to proceed against Plaintiffs in four

criminal cases and two civil cases.

982.    All of Defendants' evidence used in their four criminal cases and two civil cases against Plaintiffs is based on major material misrepresentations.

983.   Defendants have a duty to protect every citizen's Constitutional rights.

984.   Plaintiffs' rights are protected by the Constitution of the United States.

985.   At all times relevant to this claim, Plaintiffs were participating in protected activity secured by the Constitution of the United States.

986.    At all times relevant to this claim, Defendants acted under the color of Arkansas law.

987.   Defendants, while acting under the color of Arkansas law, deprived Plaintiffs of rights secured by the Constitution of the United States.

988.   The deprivation of Plaintiffs' rights harmed and damaged Plaintiffs.

989.   There is a nexus between Defendants' conduct and Plaintiffs' damages.

990.    The harm and damages done to Plaintiffs is as a result of the conduct of Defendants. Defendants' conduct, in depriving Plaintiffs of Constitutional Rights, caused harm and damages to Plaintiffs, which Plaintiffs are continuing to suffer.

## CLAIM TWENTY-ONE

### Violations of 18 U.S.C. § 1962(c)—Conduct of a RICO Enterprise

991.  This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray

Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith;

14) Timothy Morris Weaver; 15) James Ray Cantrell; 16) James Brandon Holder; 17)

Chaney Wes Taylor; 18) Drew Edward Smith; 19) Donald Taylor McSpadden; 20) Gary

Lee Dunn; 21) Randall Dale Dunn; 22) Brenda E. Dunn; 23) Paul David Kauffman; 24)

Frederick Alexander O'Neil; 25) Gavin Moore; 26) Lauren Elizabeth Siebert; 27)

Benjamin Richard Burnett; 28) Shayne Lee Peterson; 29) Jody Lee Shackelford; 30) John

T. McGinnes; and 31) Iron Rock Law Firm, LLC is sued as an entity.

992.    Plaintiffs incorporate by reference all the preceding paragraphs of this
amended complaint as if fully set forth herein.

993.  At all relevant times, Defendants are each *"person[s]"* within the meaning
of 18 U.S.C. §§ 1961(3) and 1962(c). Defendants each violated 18 U.S.C. § 1962(c) by
the acts described in the paragraphs below.

**The Enterprise.**

*The Unjust Family ("TUF")*

994.  Each defendant named in page one of this complaint, which is the style of the
case, belong to TUF and are participants of TUF's activities.

995.  At all relevant times, TUF constitutes an *"Enterprise"* within the meaning of 18
U.S.C. §§ 1961(4) and 1962(c).

996.  At all relevant times, TUF was engaged in, and/or its activities affected,
interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. §
1962(c).

997. At all relevant times, Defendants held a position in TUF as well as participated in the operation, management, and directed the affairs of TUF.

998. TUF, as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity.

999. TUF exists separate and apart from the pattern of racketeering activity.

1000.    Defendants have and do have legitimate governmental business plans outside of

the pattern of racketeering activity related to TUF.

### Pattern of Racketeering Activity:

1001.    Defendants, each of whom are persons associated with, or employed by TUF, did willfully, knowingly and unlawfully conduct or participate directly or indirectly in the conduct, operation, or management of the affairs of TUF through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341 and 1343.

1002.    Defendants, each of whom are persons associated with, or employed by TUF, did willfully, knowingly and unlawfully conduct or participate directly or indirectly in the conduct, operation, or management of the affairs of TUF through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1512(b)(1), § 1512(b)(2)(A), § 1512(b)(2)(B), § 1512(c)(1), § 1512(c)(2) and § 1512(2)(1).

1003.    Defendants, each of whom are persons associated with, or employed by TUF, did willfully, knowingly and unlawfully conduct or participate directly or indirectly in the conduct, operation, or management of the affairs of TUF through a pattern of racketeering activity in violation of 18 U.S.C. § § 1513 (b) and

1513(e).

1004.    Defendants, each of whom are persons associated with, or employed by
TUF, did willfully, knowingly and unlawfully conduct or participate directly or
indirectly in the conduct, operation, or management of the affairs of TUF
through a pattern of racketeering activity in violation of 18 U.S.C. § 1201(a)(1).

1005.    Defendants, each of whom are persons associated with, or employed by
TUF, did willfully, knowingly and unlawfully conduct or participate directly or
indirectly in the conduct, operation, or management of the affairs of TUF
through a pattern of racketeering activity in violation of 18 U.S.C. § 1951(a).

1006.    Defendants, each of whom are persons associated with, or employed by
TUF, did willfully, knowingly and unlawfully conduct or participate directly or
indirectly in the conduct, operation, or management of the affairs of TUF
through a pattern of racketeering activity in violation of 18 U.S.C. § 1503.

1007.   Defendants, each of whom are persons associated with, or employed by
TUF, did willfully, knowingly and unlawfully conduct or participate directly or
indirectly in the conduct, operation, or management of the affairs of TUF
through a pattern of racketeering activity in violation of 18 U.S.C. § 1951, for
interference with commerce by threats for violence.

A. **18 U.S.C. §§ 1341 and 1343 – Violation of Use of Mail Service and Wires**

1008.   Defendants advised, or intended to advise a scheme to defraud Plaintiffs of
money, rights and benefits by means of false or fraudulent pretenses and representations.

1009.    For the purposes of executing their scheme, Defendants delivered or
caused delivery of various documents and things by U.S. Postal Service or by private
or commercial interstate carriers, or received such there from. For the purposes of

117

executing their scheme, Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

1010.    In furtherance of their scheme to defraud Plaintiffs of money, rights and benefits, Defendants used the wires and/or the U.S. Postal Service or private or commercial carriers in violation of 18 U.S.C. §§ 1341 and 1343 to deliver documents and things to Plaintiffs, or TUF, including, but not limited to the following:

   **a.**    Emails and website postings incorporating false, fraudulent and misleading statements regarding: the authority of Defendants; the purported acts of Plaintiffs; as well as other TUF'S directions, instructions and actions taken to deprive Plaintiffs of money and property as well as other state and federal benefits.

   **b.**    Wirings and/or mailings between and among Defendants concerning: the scheme to defraud Plaintiffs of money, freedom, and state and federal benefits.

   **c.**    Funds transferred between Defendants with the intent those funds be used to promote the carrying on of Defendants' scheme to defraud Plaintiffs of money, rights, liberty and state and federal benefits.

   **d.**    Electronic filing and service of court papers containing false and misleading statements intended to further Defendants' scheme to defraud Plaintiffs of money, rights, liberty and state and federal benefits.

1011.    Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or assist the promotion, management, establishment, or carrying on, of an unlawful activity.

1012.    Defendants racketeering activities were multiple, continuous, and ongoing from about September of 2021, and continues to be ongoing.

1013.    Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of money, rights, liberty and state and federal benefits.

1014.    Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, court papers, letters, notices, and other documents, and then knowingly and with the intent to deceive Plaintiffs, caused those documents to be sent to Plaintiffs or entities that would further Defendants' scheme to defraud.

B. **18 U.S.C. § 1512 - Tampering with Witnesses - Destroying / Concealing Evidence**

1015.  Defendants advised, or intended to advise a scheme to defraud Plaintiffs of money, rights, liberty and state and federal benefits by witness tampering.

1016.  Defendants advised, or intended to advise a scheme to defraud Plaintiffs of of money, rights, liberty and state and federal benefits by destroying and concealing evidence.

1017.  For the purposes of executing their scheme to deprive Plaintiffs Defendants concealed witness testimony and evidence and destroyed preserved video evidence.

1018.  In furtherance of their scheme to deprive Plaintiffs, Defendants caused witness testimony to be concealed and concealed evidence from Fulton County court cases in violation of 18 U.S.C. § 1512 including, but not limited to the following:

     a.    In 2021, via a burglary at Plaintiffs' residence where police stood down;

     b.    In April of 2024, Defendants; Plumlee Davis, O'Dell, Busch, Bennet and Owsley spoiled preserved evidence lawsuit they were notified of 04/15/24;

     c.    , Defendants; Davis, O'Dell, Busch, Bennet and Owsley spoiled preserved 02/10/25 video evidence for Plaintiffs' lawsuit;

d. Defendants; Turnbough, Barnett and Crawford concealed witness

statements from four pending criminal cases;

e. Defendants; Turnbough, Barnett and Crawford concealed 7/16/24 video
from four pending criminal cases;

f. Plumlee, Gann, Crawford and Weaver concealed Barnett's testimony;

g. Defendant McSpadden prevented Plaintiffs' testimony in Mrs. Dunn's case;

h. Defendant McSpadden concealed evidence from Mrs. Betty Dunn's case;

1019. Defendants tampered with witnesses, concealed and destroyed evidence with intent to promote, manage, establish, carry on, or assist the promotion, management, establishment, or carrying on, of an unlawful activity.

1020. Defendants racketeering activities were multiple, continuous, and ongoing from around the Summer of 2021, and continue to be ongoing to the present time

1021. Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of money, rights, liberty and state and federal benefits.

1022. Defendants knowingly and intentionally destroyed evidence and concealed evidence and witness testimony with intent to deceive Plaintiffs and other entities to further Defendants' scheme to defraud in order to deprive Plaintiffs of money, rights, liberty and state and federal benefits.

c. **Assaults:**

1023. Plaintiffs were assaulted by members of the TUF gang members on 03/21/24, 07/16/24, 09/22/24 and 10/19/24.

d. **18 U.S.C. § § 1513 (b) and 1513(e).– Retaliating against a witness / victim**

1024.   Defendants advised, or intended to advise a scheme to defraud Plaintiffs of money, rights, liberty and state and federal benefits by retaliating against witnesses and victims to deprive Plaintiffs of their money, rights and benefits by means of false or fraudulent pretenses and representations.

1025.   For the purposes of executing their scheme to deprive Plaintiffs of money, rights, liberty and state and federal benefits, Defendants engaged in conduct, which caused bodily injury to Plaintiffs.

1026.   For the purposes of executing their scheme to deprive Plaintiffs of money, rights and benefits, Defendants knowingly and with the intent to retaliate, took harmful action against Plaintiffs, including interference with the lawful employment and livelihood of Plaintiffs, as a result of Plaintiffs notifying Mammoth Spring Police Department of the fact Defendant Randall Dunn and Defendant Gary Dunn broke into the home of Betty Dunn on 10/30/23.  Gary Dunn assisted Randall Dunn with the break-in via a phone call where Gary Dunn was in Missouri.  Gary Dunn called Fulton County Dispatch and made false allegations against Plaintiffs by accusing Plaintiffs of wanting Betty Dunn's home.

1027.   Defendants retaliated against Plaintiffs and Betty Dunn with intent to promote, manage, establish, carry on, or assist the promotion, management, establishment, or carrying on, of an unlawful activity.

1028.   Defendants racketeering activities were multiple, continuous, and ongoing from about September of 2021, and continues to be ongoing.

1029.   Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of

money, rights and benefits.

1030.    Defendants knowingly cause fraudulent criminal charges against citizens to cover up Defendants' crimes.

1031. Defendants knowingly and intentionally retaliated against Plaintiffs and Betty Dunn to further Defendants' scheme to defraud.

e.    **18 U.S.C. § 1201–Kidnapping:**

1032.   Defendants advised, or intended to advise a scheme to defraud Plaintiffs of money, rights and benefits by means of false or fraudulent pretenses and representations.

1033.   For the purposes of executing their scheme, Defendants caused Betty Dunn to be kidnapped.

1034.   In furtherance of their scheme to defraud Plaintiffs of money, rights and benefits, by concealing witness testimony, Defendants unlawfully seized and confined Betty Dunn with use of the United States Postal Service and wire services of interstate commerce in furtherance of the commission of the unlawful seizure and confinement of Betty Dunn.

1035.   Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or assist the promotion, management, establishment, or carrying on, of unlawfully seizing and confining Betty Dunn to prevent her from testifying for Plaintiffs.

1036.   Defendants racketeering activities were multiple, continuous, and ongoing from about September of 2021, and continues to be ongoing.

1037.   Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of money, rights and benefits.

1038.    Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, court papers, letters, notices, and other documents, and then knowingly and with the intent to deceive, caused those documents to be sent to entities that would further Defendants' scheme to defraud.

### f.    18 U.S.C. § 1503 – Obstruction of Justice:

1039.  Defendants advised, or intended to advise a scheme to defraud Plaintiffs of money, rights and benefits by means of false or fraudulent pretenses and representations.

1040.   For the purposes of executing their scheme, Defendants obstructed justice with an intent to have an impact on the legal proceedings against Plaintiffs brought by Defendants and Melissa Rogers.

1041.   In furtherance of their scheme to defraud Plaintiffs of money, rights and benefits, Defendants committed Obstruction of Justice in violation of 18 U.S.C. § 1503, including, but not limited to the following incidents:

    a.    In 2021, Plaintiffs were burglarized the law enforcement stood down.

    b.   On 07/16/24, two civil SLAPP suits were brought against Plaintiffs.

    c.   On 07/16/24, Plaintiffs were set up by Dunns in an attack to cause arrest.

    d.   On 07/22/24, a fraudulent affidavit was manufactured to hurt Plaintiffs.

    e.   On 08/02/24, four criminal SLAPP cases brought against Plaintiff Dave.

    f.   Defendants committed fraud and kidnapped Betty Dunn via the court.

    g.   Defendants concealed evidence of the 07/16/24 Incident.

    h.   Defendants fabricated false evidence to hide the 07/16/24 video

i.   On 02/10/25, Defendant Turnbough rejected Plaintiffs' criminal complaints

j.   Defendants prohibited Plaintiffs from filing charges against Notary Gann.

k.   In October of 2024 Defendant McSpadden concealed evidence.

l.   Defendant McSpadden threatened contempt of court to suppress testimony.

m.  Defendants destroyed preserved video evidence from 04/01/24.

n.   09/30/24, Defendant Kauffman swore a false affidavit against Betty Dunn.

1042.    Defendants committed Obstruction of Justice with intent to promote, manage, establish, carry on, or assist the promotion, management, establishment, or carrying on, of an unlawful activity.

1043.    Defendants racketeering activities were multiple, continuous, and ongoing from about summertime of 2021, and continues to be ongoing.

1044.    Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of money, property, rights and benefits.

1045.    Defendants knowingly and intentionally committed Obstruction of Justice to further Defendants' scheme to defraud Plaintiffs of money, property, rights and benefits.

**g.      18 U.S. Code § 1038 - False information and hoaxes:**

1046. Defendants; Brenda Dunn, Randall Dunn and Gary Dunn filed false statements with FCSO and MSPD on 07/16/24 and 07/19/24.

1047.  Defendants; Crawford and Barnett filed false statements to cause Plaintiff, Dave Campbell's arrest.

1048.  Defendant Turnbough stated numerous lies to Fulton County Dispatch on

07/16.

1049.  Defendant Peterson made a police report to Mammoth Spring Police Dept., falsely accusing Plaintiff, or Plaintiffs of a crime on or about 12/06/23 and on 03/21/24.

1050.  Defendant Gavin Moore made a police report to Salem, Arkansas Police Dept. on or about 02/07/25, falsely accusing Plaintiffs of a crime against Betty Dunn.

**h.    18 U.S.C. § 1951 – Interference with commerce by threats or violence:**

1051.  Defendants advised, or intended to advise a scheme to defraud Plaintiffs of money, rights and benefits by means of threats and violence.

1052.   For the purposes of executing their scheme, Defendants physically assaulted Plaintiffs so Plaintiffs could be erroneously prosecuted for Plaintiffs' reaction.

1053.    In furtherance of their scheme to defraud Plaintiffs of money, rights and benefits, Defendants threatened violence against Plaintiffs and enacted violence against Plaintiffs, including, but not limited to the following instances:

a.   September of 2023, Plaintiffs were attacked by a loose pit bull and ignored.

b.   On 04/01/24 intimidation against Plaintiffs by Turnbough, and Busch.

c.   On 06/10/24, color of law used by Mammoth Spring's council and mayor.

d.   In mid June of 2024, Jerry Kollar, who manages the Mammoth Spring senior center suggested Plaintiffs home would be burned by fire department with Plaintiffs inside if Plaintiffs opposed the City of Mammoth Spring.

e.   On 10/19/24, Defendant Turnbough organized an assault on Plaintiffs during the Koshkonong Heritage Festival by Kosh's mayor's daughter's boyfriend and her husband, the attacker parroted Turnbough's fraud.

f.   In July of 2024, Defendant Burnett unlawfully threatened Plaintiffs.

g.   On 07/16/24, unconstitutional arrest of Plaintiff, Dave Campbell.

h.   On 09/22/24, the Dunn's first cousin, Louise Dunn Alexander, physically attacked Plaintiff, Dawn Campbell, and stated *"the whole town"* is against Plaintiffs.  Law enforcement refused to prosecute Ms. Alexander.

i.   Cyberstalking of Plaintiffs on 04/02/25, by Defendant O'Dell.

j.   Defendant Peterson verbally attacked Plaintiffs on 12/06/23 and had his employee physically attack Plaintiffs on 03/21/24.

### i.   25 CFR § 11.411 - Criminal trespass:

1054.   Defendants; Randall Dunn, Brenda Dunn and Gary Dunn trespassed at 435 Bethel AV in Mammoth Spring, Arkansas on 07/16/24.

### j.   18 U.S. Code § 1621 - Perjury generally:

1055.   Defendant Kauffman knowingly submitted a false affidavit in Betty Dunn's guardianship case dated 09/30/24.  Defendant Kauffman confirmed to the Arkansas Medical Board, the affidavit is false.  Defendant Kauffman failed to correct his perjury.

### k.   18 U.S. Code § 1341 - Frauds and swindles:

1056.   Defendant McGinnes and Defendant Shackelford have operated  a fraudulent corporation: from at least 07/15/24, which is *"The Iron Rock Law Firm, PLLC."*

1057.    On or about 04/14/25, Defendants; McGinnes and Shackelford registered the corporation *"Iron Rock Law Firm, LLC"* in the State of Delaware.

1058.   Defendants; McGinnes and Shackelford created *"Iron Rock Law Firm, LLC"* to cover-up their unlawful use of the name *"The Iron Rock Law Firm, PLLC."*

**L.** **The Following S.L.A.P.P. Suits are Filed Against Plaintiffs By TUF Members:**

    a.  25CV-24-72, brought by Defendant Turnbough in a fraudulent injunction;

    b.  25CV-24-73, brought by Melissa Rogers in a fraudulent injunction;

    c.  CR-24-541, brought from Defendant Barnett's 07/22/24 false affidavit;

    d.  CR-24-542, brought from Defendant Barnett's 07/22/24 false affidavit;

    e.  CR-24-543, brought from Defendant Barnett's 07/22/24 false affidavit;

    f.  CR-24-544, brought from Defendant Barnett's 07/22/24 false affidavit.

**m.** **18 U.S.C. § 2261A – Stalking:**

1059.  Defendant O'Dell, et al cyber-stalked Plaintiffs on Facebook and made or threatening comments to be stated about Plaintiffs.

1060.  On or about 12/06/24, Defendant Peterson traveled from Missouri to stalk, threaten and harass Plaintiffs.

1061.  On 07/16/24, Defendants; Brenda Dunn and Gary Dunn traveled from Missouri to stalk and harass Plaintiffs.

1062.  On 10/04/24, Defendants; Brenda Dunn and Gary Dunn traveled from Missouri to stalk and harass Plaintiffs.

**n. Penal Code 37.09, Tampering With or Fabricating Physical Evidence:**

1063.  In October of 2024, Defendant McSpadden tampered with evidence in Betty Dunn's guardianship matter to allow TUF member Randall Dunn to have control of her.

1064.  In July of 2024, Defendant Crawford concealed and fabricated evidence to cause the unconstitutional arrest of Plaintiff, Dave Campbell.

1065. In October of 2024, Defendant O'Neil concealed Betty Dunn's ambulance Report from her guardianship matter.

1066.  In October of 2024, Defendant O'Neil concealed the fact he knew Defendant

Kauffman submitted a false affidavit in Betty Dunn's guardianship matter.

### ***Defendants' Racketeering is Ongoing***

1067    Defendants racketeering activities were multiple, continuous, and ongoing from about September of 2021, and continues to be ongoing at the present time.

1068.    TUF uses acts of terrorism to intimidate and/or coerce its members' critics into silence.

1069.  TUF uses lawfare against critics of its members in order to chill free speech.

1070.  TUF falsely charges critics of its members of crimes in retaliation of protected speech.

1071.  Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive and/or defraud Plaintiffs of money, rights and benefits.

1072.    Defendants knowingly and intentionally threatened violence against Plaintiffs and enacted violence against Plaintiffs to deprive Plaintiffs of money, rights and benefits.

**Summary.**

1073.    Each RICO Defendant has engaged in multiple predicate acts, as described in paragraphs 38 - 457, Pages 9 - 56, which Plaintiff fully incorporate herein. The conduct of each RICO Defendant described in paragraphs 38 – 457, *supra,* constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

1074.    RICO Defendants' violations of federal law as set forth herein, each of which

directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money, rights and benefits through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5). Plaintiffs were injured in their money and freedoms by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

1075.    RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.

1076.    Plaintiffs are the ultimate victims of RICO Defendants' unlawful enterprise. Plaintiffs have been and will continue to be injured in their money and freedoms in an amount to be determined at trial.

1077.    Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants, as well as any other relief authorized by statute.

## CLAIM TWENTY-TWO

### Short and Plain Statement of the Claim

### Violations of Civil RICO—Conspiracy to Violate § 1962(c) of RICO 18 U.S.C. § 1962(d)

1078.    This claim is brought against the following Defendants in their personal capacities:  1) Barry Joseph O'Dell; 2) Danny L. Busch; 3) Carl Dwayne Plumlee; 4) Barbara Ann Gann; 5) Adam Mark Davis; 6) Thomas Raymond Owsley; 7) Robert Lee Bennett; No. 8) James Edward Turnbough; No. 9) John Allen Barnett; 10) Hunter Ray

Crawford; 11) Jacob Lee Smith; 12) William Michael Fawcett; 13) John Gregory Smith;

14) Timothy Morris Weaver; 15) James Ray Cantrell; 16) James Brandon Holder; 17)

Chaney Wes Taylor; 18) Drew Edward Smith; 19) Donald Taylor McSpadden; 20) Gary

Lee Dunn; 21) Randall Dale Dunn; 22) Brenda E. Dunn; 23) Paul David Kauffman; 24)

Frederick Alexander O'Neil; 25) Gavin Moore; 26) Lauren Elizabeth Siebert; 27)

Benjamin Richard Burnett; 28) Shayne Lee Peterson; 29) Jody Lee Shackelford; 30) John

T. McGinnes; and 31) Iron Rock Law Firm, LLC is sued as an entity.

### Defendant Barry Joseph O'Dell

1079.  Barry O'Dell knowingly agreed to participate with TUF to engage in racketeering activity.

1080.  Defendant O'Dell supported TUF's criminal scheme.

### Defendant Danny Busch

1081.  Danny Busch knowingly agreed to participate with TUF to engage in racketeering activity.

1082.  Danny Busch supported TUF's criminal scheme.

1083.  Defendant Busch participated in the unlawful arrest of Plaintiff Dave Campbell.

1084.  Defendant Busch knowingly agreed to participate with TUF to engage in racketeering activity.

### Defendant Carl Dwayne Plumlee

1085.  Defendant Plumlee knowingly agreed to participate with TUF to engage in racketeering activity.

1086. Defendant Plumlee supported TUF's criminal scheme.

1087. Defendant Plumlee participated in the unlawful arrest of Plaintiff Dave Campbell.

1088. Defendant Plumlee made false statements in support of Plaintiff Dave Campbell's arrest.

### *Defendant Barbara Gann*

1089.  Defendant Gann knowingly agreed to participate with TUF to engage in racketeering activity.

1090. Defendant Gann supported TUF's criminal scheme.

1091. Defendant Gann participated in the unlawful arrest of Plaintiff, Dave Campbell.

1092. Defendant Gann certified a false Notarization and oath in support of Plaintiff Dave Campbell's arrest.

### *Defendant Adam Mark Davis*

1093.  Defendant Davis knowingly agreed to participate with TUF to engage in racketeering activity.

1094. Defendant Davis supported TUF's criminal scheme.

1095. Defendant Davis participated in the unlawful arrest of Plaintiff Dave Campbell.

### *Defendant Thomas Raymond Owsley*

1096. Defendant Owsley knowingly agreed to participate with TUF to engage in racketeering activity.

1097. Defendant Owsley supported TUF's criminal scheme.

1098.  Defendant Owsley participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant Robert Lee Bennett

1099.  Defendant Bennett knowingly agreed to participate with TUF to engage in racketeering activity.

1100.  Defendant Bennett supported TUF's criminal scheme.

1101.  Defendant Bennett participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant James Edward Turnbough

1102.  Defendant Turnbough knowingly agreed to participate with TUF to engage in racketeering activity.

1103.  Defendant Turnbough supported TUF's criminal scheme.

1104.   Defendant Turnbough participated in the unlawful arrest of Plaintiff Dave Campbell.

1105.  Defendant Turnbough made false statements to Fulton County 911 Dispatcher on 07/16/24.

1106.  Defendant Turnbough alleged in an Injunction Request against Plaintiffs on or about 07/16/24 a quote Plaintiffs never stated.

### Defendant John Allen Barnett

1107.  Defendant Barnett knowingly agreed to participate with TUF to engage in racketeering activity.

1108.  Defendant Barnett supported TUF's criminal scheme.

1109.  Defendant Barnett participated in the unlawful arrest of Plaintiff Dave

Campbell.

1110.  Defendant Barnett made false statements in support of Plaintiff Dave Campbell's arrest.

### Defendant Hunter Ray Crawford

1111.  Defendant Crawford knowingly agreed to participate with TUF to engage in racketeering activity.

1112.  Defendant Crawford supported TUF's criminal scheme.

1113.  Defendant Crawford participated in the unlawful arrest of Plaintiff Dave Campbell.

1114.  Defendant Crawford made false statements in support of Plaintiff Dave Campbell's arrest.

### Defendant Jacob Lee Smith

1115.  Defendant Jacob Smith knowingly agreed to participate with TUF to engage in racketeering activity.

1116.  Defendant Jacob Smith supported TUF's criminal scheme.

1117.  Defendant Jacob Smith participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant William Michael Fawcett

1118.  Defendant Fawcett knowingly agreed to participate with TUF to engage in racketeering activity.

1119.  Defendant Fawcett supported TUF's criminal scheme.

1120.  Defendant Fawcett participated in the unlawful arrest of Plaintiff Dave Campbell.

1121.  Defendant Fawcett authorized the arrest of Plaintiff, Dave Campbell.

1122.  Defendant Fawcett knew no affidavit was attached to the warrant to arrest Plaintiff Dave Campbell.

1123.  Defendant Fawcett telephoned Plaintiffs on 10/04/24, stating Plaintiffs are now trespassed at 435 Bethel AV in Mammoth Spring, Arkansas.

### Defendant John Gregory Smith

1124.  Defendant John Smith knowingly agreed to participate with TUF to engage in racketeering activity.

1125.  Defendant John Smith supported TUF's criminal scheme.

1126.  Defendant John Smith participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant Timothy Morris Weaver

1127.  Timothy Weaver knowingly agreed to participate with TUF to engage in racketeering activity.

1128.  Defendant Weaver supported TUF's criminal scheme.

1129.  Defendant Weaver participated in the unlawful arrest of Plaintiff Dave Campbell.

1130.  Defendant Weaver made false statements in support of Plaintiff Dave Campbell's arrest.

### Defendant James Ray Cantrell

1131.  James Cantrell knowingly agreed to participate with TUF to engage in racketeering activity.

1132.  Defendant Cantrell supported TUF's criminal scheme.

1133.  Defendant Cantrell participated in the unlawful arrest of Plaintiff Dave Campbell

### Defendant James Brandon Holder

1134.  Brandon Holder knowingly agreed to participate with TUF to engage in racketeering activity.

1135.  Defendant Holder supported TUF's criminal scheme.

1136.  Defendant Holder participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant Chaney Wes Taylor

1137.  Defendant Taylor knowingly agreed to participate with TUF to engage in racketeering activity.

1138.  Defendant Taylor supported TUF's criminal scheme.

1139.  Defendant Taylor participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant Drew Edward Smith

1140. Defendant Drew Smith knowingly agreed to participate with TUF to engage in racketeering activity.

1141.  Defendant Drew Smith supported TUF's criminal scheme.

1142.  Defendant Drew Smith participated in the unlawful arrest of Plaintiff Dave Campbell.

### Defendant Donald Taylor McSpadden

1143.  Donald McSpadden knowingly agreed to participate with TUF to engage

in racketeering activity.

1144.  Defendant McSpadden supported TUF's criminal scheme.

1145.  Defendant McSpadden assisted Randall Dunn in unlawfully seizing and confining Betty Dunn.

1146.  In violation of 18 U.S.C. Section 1512(b)(1), to prevent the testimony of Plaintiffs in Betty Dunn's guardianship case, Defendant McSpadden knowingly used intimidation, threats, and/or corruptly persuaded Plaintiffs not to testify.

1147.  In violation of 18 U.S.C. Section 1512(b)(2)(A), Defendant McSpadden caused Plaintiffs to withhold the 07/16/24 Ambulance Run Report from Betty Dunn's official proceedings.

1148.  In violation of 18 U.S.C. Section 1512(b)(2)(B), Defendant McSpadden caused to be destroyed or concealed Betty Dunn's 07/16/24 Ambulance Run Report with intent to impair the integrity of the Run Report by causing it to be unavailable for use in official court proceedings.

1149.  Defendant McSpadden violated 18 U.S.C. Section 1512(c)(1), by corruptly destroying, or mutilating Betty Dunn's 07/16/24 Fulton County Ambulance Run Report, which evidenced Betty Dunn was *"alert and oriented"* on 07/16/24.

1150.  Defendant McSpadden violated of 18 U.S.C. Section 1512(c)(2) by obstructing the official proceeding of Betty Dunn.

1151.  Defendant McSpadden violated of 18 U.S.C. Section 1512(2)(1) by intentionally harassing Plaintiffs in a phone-call to hinder and dissuade Plaintiffs from attending or testifying in Betty's Dunn's official court proceeding.

### *Defendant Gary Lee Dunn*

1152.  Defendant Gary Dunn knowingly agreed to participate with TUF to

engage in racketeering activity.

1153. Defendant Gary Dunn supported TUF's criminal scheme.

1154. Defendant Gary Dunn participated in the unlawful arrest of Plaintiff Dave Campbell.

1155. Defendant Gary Dunn made false statements in support of Plaintiff Dave Campbell's arrest.

### Defendant Randall Dale Dunn

1156. Defendant Randall Dunn knowingly agreed to participate with TUF to engage in racketeering activity.

1157. Defendant Randall Dunn supported TUF's criminal scheme.

1158. Defendant Randall Dunn participated in the unlawful arrest of Plaintiff Dave Campbell.

1159. Defendant Randall Dunn violated 18 U.S.C. Section 1201, by unlawfully seizing and confining Betty Dunn by using the United States Postal Service in furtherance of a kidnapping offense.

1160. Defendant Randall Dunn made false statements in support of Plaintiff Dave Campbell's arrest.

1161. Defendant Randall Dunn deprived Betty Dunn of visitors while she was in the nursing home in Salem, Arkansas.

### Defendant Brenda E. Dunn

1162. Brenda Dunn knowingly agreed to participate with TUF to engage in racketeering activity.

1163. Defendant Brenda Dunn supported TUF's criminal scheme by

participating in the unlawful arrest of Plaintiff, Dave Campbell.

1164.   Related to 07/16/24, Defendant Brenda Dunn submitted a criminal

complaint against Plaintiff, Dave Campbell, to MSPD on 07/16/24 and 07/19/24.

### Defendant Paul David Kauffman

1165.   Paul Kauffman knowingly agreed to participate with TUF to engage in

racketeering activity.

1166.   Defendant Kauffman supported TUF's criminal scheme.

1167.   Defendant Kauffman assisted Randall Dunn in unlawfully seizing and

confining Betty Dunn.

1168.   Defendant Kauffman submitted a false affidavit alleging he examined and

found Betty Dunn mentally incompetent on 07/16/24.

1169.   Defendant Kauffman admitted to the Arkansas Medical Board he did not see

Betty Dunn on 07/16/24.

1170.   Defendant Kauffman alleged to the Arkansas Medical Board, he examined and

found Betty Dunn mentally incompetent on 07/01/24.

1171.   Betty's Dunn's patient report by Defendant Kauffman for the 07/01/24

examination indicates Betty Dunn was *"alert and oriented"* on 07/01/24.

1172.   Defendant Kauffman never corrected his false affidavit he caused to be filed in

the Fulton County Probate Court.

### Defendant Frederick Alexander O'Neil

1173.     Defendant O'Neil knowingly agreed to participate with TUF to engage in

racketeering activity.

1174.     Defendant O'Neil supported TUF's criminal scheme and participated in

the unconstitutional *"voiding"* of Mrs. Betty K. Dunn.

1175.  Defendant O'Neil supported TUF's criminal kidnapping scheme.

1176.  Defendant O'Neil assisted Randall Dunn in unlawfully seizing and confining Betty Dunn by using the United States Postal Service in furtherance of a kidnapping offense.

### Defendant Gavin Bryce Moore

1177.  Gavin Moore knowingly agreed to participate with TUF to engage in racketeering activity.

1178.  Defendant Moore supported TUF's criminal scheme.

1179.  Gavin Moore participated in the unconstitutional *"voiding"* of Betty Dunn.

1180.  Defendant Moore supported TUF's criminal kidnapping scheme.

1181.  Defendant Moore assisted Randall Dunn in unlawfully seizing and confining Betty Dunn by using the United States Postal Service in furtherance of a kidnapping offense.

1182.  Defendant Moore refused to transport Mrs. Dunn to Batesville, Arkansas so she could attend her emergency guardianship hearing on or about 10/08/24.

1183.  Defendant Moore used the mail or wire service to notify Fulton County Probate Court there was no transportation available to transport Mrs. Dunn to her hearing.

1184.  On or about 02/07/25, Defendant Moore falsely reported Plaintiffs to Salem, Arkansas Police Department as trespassers who went into Betty Dunn's room, despite knowing Plaintiffs were not trespassing and did not go into Mrs. Dunn's room.

1185.  Defendant Moore assisted Defendant Randall Dunn in depriving Mrs. Dunn of visitors.

### *Defendant Lauren Elizabeth Siebert*

1186.  Defendant Siebert knowingly agreed to participate with TUF to engage in racketeering activity.

1187.  Defendant Siebert supported TUF's criminal scheme.

1188.  Defendant Siebert broadcast false information about Plaintiffs via radio wires and created the web file for her publications about Cases 25CV-24-72  and 72 filed by Defendant Turnbough and Melissa Rogers one week before the cases were filed.

1189.  Defendant Siebert's radio broadcast about Plaintiffs indicated Injunctions were already filed against Plaintiffs for committing defamation.

1190.  Defendant Siebert does not announce civil matters on the radio and made an exception against Plaintiffs.

1191.  Defendant Siebert's 07/19/24 radio broadcast about Plaintiffs sounded like a criminal matter.

1192.  Defendant Siebert's 07/19/24 radio broadcast published false information.

### *Defendant Jody Lee Shackelford*

1193.  Defendant Shackelford knowingly agreed to participate with TUF to engage in racketeering activity.

1194.  Defendant Shackelford supported TUF's criminal scheme.

1195.  For Defendant Turnbough, Defendant Shackelford filed two S.L.A.P.P. cases against Plaintifffs.

1196.  In bringing two S.L.A.P.P. cases against Plaintiffs, Defendant Shackelford stated a quote Plaintiffs never stated in his request for a Preliminary Injunction.

1197.  In bringing two S.LA.P.P. cases against Plaintiffs, Defendant Shackelford

alleged he worked for an attorney firm (The Iron Rock Law Firm, PLLC) which never existed.

### *Defendant John T. McGinnes*

1198.  Defendant McGinnes knowingly agreed to participate with TUF to engage in racketeering activity.

1199.  Defendant McGinnes supported TUF's criminal scheme.

1200.  For Defendant Turnbough, Defendant McGinnes filed two S.L.A.P.P. cases against Plaintifffs.

1201.  In bringing two S.L.A.P.P. cases against Plaintiffs, Defendant McGinnes stated a quote Plaintiffs never stated in his request for a Preliminary Injunction.

1202.  In bringing two S.LA.P.P. cases against Plaintiffs, Defendant McGinnes alleged he worked for an attorney firm (The Iron Rock Law Firm, PLLC) which never existed.

### *Defendant Iron Rock Law Firm, LLC*

1203.  Defendant, Iron Rock Law Firm, LLC,  knowingly agreed to participate with TUF to engage in racketeering activity.

1204.  Defendant, Iron Rock Law Firm, LLC, supported TUF's criminal scheme.

### *Defendant Shayne Lee Peterson*

1205.  Defendant Peterson knowingly agreed to participate with TUF to engage in racketeering activity.

1206.  Defendant Peterson supported TUF's criminal scheme.

1207.  On or about 12/06/23, Defendant Peterson made a false report of a crime against Plaintiffs to the Mammoth Spring Police Department.

1208.  On or about 12/06/23, Defendant Peterson threatened to cause bodily harm to Plaintiff, Dave Campbell.

1209.  On or about 12/06/23, while Plaintiffs were standing on Plaintiffs' side of their property line, Defendant Peterson, while standing on his side, pointed across the street Mammoth Spring City Hall's location at that time, stating *"they"* told him all about Plaintiffs.

1210.  On or about 12/06/23, Defendant Peterson alleged Plaintiffs would soon be getting into trouble.

1211.  On or about 12/07/23, Defendant Peterson installed a total of three surveillance cameras, which were all directed at Plaintiffs' residence.  One camera was placed on a banner post and directed at Plaintiffs' screened-in front porch.

1212.  On 03/21/24, Defendant Peterson began constructing an approximately 14.5' (fourteen-and-one-half feet) tall.

1213.  On 03/21/24, Defendant Peterson's contractor physically attacked Plaintiff, Dave Campbell and threatened to cause bodily harm.

1214.  On 03/22/24, Defendant Peterson, or his wife, falsely reported to Mammoth Spring Police Department, Plaintiff, Dawn Campbell, committed a crime against Defendant Peterson's wife.

1215.  Defendant Peterson removed his original wall and built another wall, which collapsed from high winds in March of 2025.

### *Defendant Benjamin Richard Burnett:*

1216.  Defendant Burnett knowingly agreed to participate with TUF to engage in racketeering activity.

1217.  Defendant Burnett supported TUF's criminal scheme.

1218.  Defendant Burnett participated in the unlawful arrest of Plaintiff Dave Campbell.

1219.  Prior to the 08/02/24 arrest of Plaintiff, Dave Campbell, Defendant Burnett used the United States Postal Service ("*USPS*") to mail Plaintiffs a letter discussing Plaintiff, Dave Campbell's 08/02/24 arrest.

1220.  Plaintiff Burnett used to the USPS to coerce and threaten Plaintiffs from exercising Plaintiffs' Constitutional Rights.

### Defendants Conspired to violate the RICO Act:

1221.   At all relevant times, RICO Defendants each were *"person*[s]*"* pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

1222.  At all relevant times, TUF constitutes an *"Enterprise"* within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

1223.  At all relevant times, TUF was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

1224.   At all times relevant hereto, RICO Defendants each held a position in or were otherwise affiliated with TUF, as well as participated in the management or operation and directed the affairs of TUF.

1225. TUF, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.

1226.  TUF exists separate and apart from the pattern of racketeering activity.

1227.   RICO Defendants had and have legitimate governmental business plans outside the pattern of racketeering activity related to TUF.

1228.   RICO Defendants have unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

1229.   Defendants' conspiracy commenced as early as September of 2023 and continues.

1230.   The conspiracy's purpose was to defraud Plaintiffs of money, rights and benefits by fraudulently depriving Plaintiffs of their rights by means of false or fraudulent pretenses and representations.

1231.   Each RICO Defendant committed at least one overt act in furtherance of such conspiracy.  These acts in furtherance of the conspiracy include, but are not limited to, the acts set forth in paragraphs 38 – 457, *supra.*

1232.   RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts.

1233.   RICO Defendants knew the predicate acts were part of such racketeering activity.

1234.   The participation and agreement of each of RICO Defendants was necessary to allow the commission of this pattern of racketeering activity.

1235.   RICO Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

1236.   Each RICO Defendant knew about and agreed to facilitate the scheme to defraud Plaintiffs of their money, rights and state and federal benefits by fraudulently depriving Plaintiffs of their rights by means of false or fraudulent pretenses and

representations.

1237.    It was part of the conspiracy, RICO Defendants would commit a pattern of racketeering activity in the conduct of the affairs of TUF, including the acts of racketeering set forth in paragraphs 38 – 457, *supra*.

1238.    As a direct and proximate result of RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprises, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their money, rights and state and federal benefits, in an amount to be determined at trial.

1239.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

## CLAIM TWENTY-THREE

### Freedom of Information Act – § 5 U.S.C. 552

1240.    Plaintiffs bring this claim against Defendant Adult Protective Services ("*APS*").

1241.    Plaintiffs re-allege the foregoing paragraphs by reference as if being herein.

1242.    In a FOIA Request to APS dated 01/06/25, in reference to Betty K. Dunn, Plaintiffs requested *"any and all reports, documentation, notes, records, etc. concerning Dave and or Dawn Campbell from Mammoth Spring, Arkansas."*

1243.    Plaintiffs received an email from APS, via Margaret M. Newton, J.D., dated 01/21/25, which states, *"We will need additional information before we are able to determine if you are entitled to these records under the applicable statute."*

1244.    In APS' 01/06 email, Ms. Newton asked if Plaintiffs are *"Alleged Perpetrators (AP) in a complaint made to APS where Mrs. Dunn was the Alleged Victim*

*(AV)."*

1245.  In an email to Plaintiffs dated 02/11/25, Ms. Newton stated, *"Under the statutes, the Alleged Perpetrators are entitled to obtain a copy of the records with applicable redactions, which is why I asked that question.  I was able to verify that you are entitled to the records.  We will begin working on those documents for you."*

1246.  In a 03/10/25 phone-call, Ms. Newton apologized for taking longer than anticipated to get Plaintiffs' records and stated Plaintiffs *"are listed as the perpetrators."*

1247.  In the 03/10 phone-call, Ms. Newton stated it is not easy to redact the complaint made against Plaintiffs.

1248.  In the 03/10 phone-call, Ms. Newton informed Plaintiffs, she is super confused, because Plaintiffs should have received a letter about the complaint made to APS about Plaintiffs.

1249.  Ms. Newton was unable to locate verification of a letter in the APS file sent to Plaintiffs and Plaintiffs did not receive a letter from APS.

1250.  In the 03/10 phone-call, Ms. Newton informed Plaintiffs, she was seeing in Betty Dunn's file, a protective order was entered against Plaintiffs.

1251.  On or about 03/11/25, Fulton County Circuit Clerk Vickie Bishop verified, no protective orders against Dave or Catrenia Dawn Campbell exist in Fulton County.

1252.  On 03/13/25, Plaintiffs emailed APS stating: *"FOIAs have a time stamp … we deserve to know who is defaming us and what they are defaming us about."*

1253.  On 03/13/25, Ms. Newton emailed Plaintiffs alleging, *"Unfortunately, it appears that we are not able to provide any records regarding Ms. Dunn."*

1254.  Ms. Newton's 03/13 email states: *"On 09/22/2024, a Report made against David Campbell* (sic) *was filed with APS.  The Report listed Ms. Dunn as the AV, or*

146

*Alleged Victim…In this case,* **no investigation against David** (sic) **Campbell was ever**

**undertaken by APS."**

1255.  Ms. Newton's 03/13 email states, *"Under Subsection (a), a screened-out*

*report record can* **only** *be disclosed to the Attorney General, a prosecutor, or law*

*enforcement in this circumstance."*

1256.  In a Motion for Discovery, Plaintiff, Dave Campbell, requested the APS

report about Plaintiff, Dave Campbell, from Defendant Drew Smith, who ignored

Plaintiff's request.

1257.  In this claim, Plaintiffs request to receive from APS, *"any and all reports,*

*documentation, notes, records, etc. concerning Dave and or Dawn Campbell from*

*Mammoth Spring, Arkansas,"* as set forth in Plaintiffs' 01/06/25 FOIA Request.

1258.  Defendant APS is noncompliant with Plaintiffs' FOIA Request.

1259.  On 02/11/25, APS admitted, *"the Alleged Perpetrators are entitled to*

*obtain a copy of the records with applicable redactions;"* however, APS prejudicially

deprived Plaintiffs of *"a copy of the records with applicable redactions."*

1260.  Plaintiffs are harmed by Defendant APS' failure to provide information due

Plaintiffs.

**VI.    Relief sought (including request for jury trial):**

WHEREFORE, Plaintiffs, Dave and Catrenia Dawn Campbell, seek judgment

against Defendants for:

a)    Information from Adult Protective Service entailing everything in the APS

file pertaining to Dave or Catrenia Dawn Campbell in the matter of Betty K. Dunn, and

any further relief available to Plaintiffs due to APS' failure to comply with the FOIA.

b)    Compensatory damages for all past and future economic losses and

expenses incurred by Plaintiffs as a result of Defendants' misconduct;

c)      General damages in the amount of $7.7 million (seven point seven million dollars) for all past and future physical pain, loss of consortium mental suffering, and emotional distress suffered by the Plaintiffs as a result of Defendants' malicious and retaliatory conduct;

c)      Punitive damages to the fullest extent permitted by law;

d)      Pre-judgment and post-judgment interest;

e)      Declare Defendants' acts, taken in their official capacities, as alleged above, violate the First, Fourth, Fifth, Eighth and 14th Amendment to the United States Constitution;

f)      Declare that Defendants' acts, taken in their personal capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

g)      Order Defendants to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

h)      Declare Defendant Barnett's 07/22/24 *"Affidavit of Probable Cause for Arrest"* void and unenforceable.

i)      Costs incurred in this action;

j)      Reasonable attorney fees under 42 U.S.C. §1988, if Plaintiffs retain an attorney.

k)      Such other further specific and general relief as may become apparent from discovery as this matter matures for trial.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL TRIABLE ISSUES.**

**Certification and Closing under Federal Rule of Civil Procedure 11**

By signing below, we certify to the best of our knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11

Respectfully Submitted,

_____

Dave Campbell, pro se
440 Main ST
Mammoth Spring, AR  72554-8800
Blues24Seven@ymail.com
(870) 907-0572

_____

Catrenia Dawn Campbell, pro se
440 Main ST
Mammoth Spring, AR  72554-8800
Blues24Seven@ymail.com
(870) 907-0572

July 22, 2024
10:28:22 am

# WARRANT OF ARREST

Campbell, Dave
Page 1 of 1

WARRANT #: WR-24-285

STATE OF ARKANSAS
COUNTY OF FULTON COUNTY
CITY OF CITY OF SALEM

Fulton County District Court
P.O. Box 928
201 Church Street
Salem, Arkansas 72576
(870)895-4136

| | | | | | |
|---|---|---|---|---|---|
| Name: | Campbell, Dave | | | Home: | |
| Address: | 440 Main St | | | Work: | |
| | Mammoth Spring, Arkansas 72554 | | | Party #: | 15646 |
| Race: | White | Hair: | Height: | DOB: | 09/30/55 | SSN: |
| Sex: | Male | Eye: | Weight: | DL: | AR / 944021099 |
| Alias: | | | | Employer: | |

The State of Arkansas To Any Sheriff, Policeman, Constable, Coroner, Jailer, Or Marshal In The State Of Arkansas, Greeting. It Appearing That There Are Reasonable Grounds For Believing That The Above-Named Person Has Committed The Offense(s) Listed Below. You Are Therefore Commanded To Arrest And Bring The Above-Named Person Before Larry Kissee Judge of the Fulton County District Court To Be Dealt With According To Law.

Given Under My Hand And Seal Of Said Court This _22_ Day Of July 20 24

\*\*\* MUST APPEAR \*\*\*

Judge / Clerk of the Court

## WARRANT DETAILS

| Issue Date | Case Number | Charge Doc Number | Description | Cash Only | Bond Amt | Warrant Fee | Total |
|---|---|---|---|---|---|---|---|
| **Affidavit** | | | | | | | |
| 07/22/24 | CR-24-543 | WR-24-285 | Battery 3rd Degree | No | $710.00 | $0.00 | $710.00 |
| 07/22/24 | CR-24-542 | WR-24-285 | Battery 3rd Degree | No | $610.00 | $0.00 | $610.00 |
| 07/22/24 | CR-24-541 | WR-24-285 | Battery 3rd Degree | No | $510.00 | $0.00 | $510.00 |
| 07/22/24 | CR-24-544 | WR-24-285 | Disorderly Conduct | No | $265.00 | $0.00 | $265.00 |
| | | | **CITY OF MAMMOTH SPRING TOTALS:** | | **$2,095.00** | **$0.00** | **$2,095.00** |

**\*\*\* MUST APPEAR \*\*\***    **TOTAL TO COLLECT:**    **$2,095.00**    **$0.00**    **$2,095.00**

I Certify That I Served This Warrant Of Arrest By Then And There Taking Into My Custody The Above-Named Person On The _2nd_ Day Of _August_, 20 _24_

Officer of Service

Service Fee: $ _____

Mileage Fee: $ _____

Total Fees: $ _____

City Court Date: _____
City Court Time: _____

County Court Date: _10/9/2024_
County Court Time: _1:00 pm_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Filed This _____ Day Of _____, 20

Clerk of the Court

RECEIVED
JUL 2 2 2024
BY: _____

ORIGINAL

## AFFIDAVIT OF PROBABLE CAUSE FOR ARREST

In The Matter of: DAVE CAMPBELL                    W/M  AGE: 68

Re: Request for Magistrates Determination for Probable Cause for Warrant of Arrest for the Defendant on the following charges:

## 5-13-203. Battery in the third degree x3

(a) A person commits battery in the third degree if:

(1) With the purpose of causing physical injury to another person, the person causes physical injury to any person;

## 5-71-207. Disorderly conduct

(a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

(1) Engages in fighting or in violent, threatening, or tumultuous behavior

THE UNDERSIGNED, BEING DULY SWORN, FOR HIS AFFIDAVIT FOR PROBABLE CAUSE FOR ARREST, DEPOSES AND SAYS:

On 7/19/2024 at approximately 1:00 PM, I Assistant Chief John Barnett conducted an interview with Gary Dunn, Randy Dunn, and Brenda Dunn. During this interview Mr. Gary stated that on 7/16/2024 at approximately 9:26 AM, he along with his wife Mrs. Brenda and brother Mr. Randy came into City Hall to show a warranty deed of the house that their mother Ms. Betty Dunn currently resides in at 435 Bethel Ave in Mammoth Spring, AR. After showing the deed they informed City Hall that they were going to put up no trespassing signs on their property as soon as they left. They also told City Hall to inform the Police Department that they might be needed because of some neighbors to the property a Mr. Dave and Dawn Campbell being in a property dispute over the house at 435 Bethel Ave in Mammoth Spring AR. At approximately 9:46 AM as Mr. Gary was heading into his mother's "Ms. Betty's" home he noticed Mrs. Campbell was walking toward Ms. Betty's home, she quickly turned around and ran to her residence. Mr. Gary said that he seen Mr. Campbell become visibly irate

practically running up to their property with Mrs. Campbell right behind him. As the Campbell's made it onto their property Mr. Gary asked if Mr. Campbell had a weapon, they both stated they did while placing their hands on their waste line indicating they were carrying firearms. Mr. Gary then told them that they needed to leave the property they both refused, instead Mr. Campbell started calling Mr. Gary and Mr. Rany idiots, constantly insulting them and their intelligence. During this time Mr. Gary noticed his mother being visibly upset, as he tried to make his way to Ms. Betty to check on her, Mr. Campbell stepped in front of him to block his path. Mr. Gary then tried to step around Mr. Campbell, Mr. Campbell chest bumped Mr. Gary and stated loudly "You pushed me"! Then Mr. Campbell hit Mr. Gary with his left closed fist in Mr. Gary's stomach, Mr. Campbell then vigorously pushed Mr. Gary to the ground with both hands. Mrs. Campbell then screamed at Mr. Campbell stop and calm down. Mr. Campbell immediately turned his aggression toward Mr. Randy, Mr. Gary's brother, Mr. Campbell pushed Mr. Randy then yelled you pushed me, then pushed Mr. Randy even harder causing him to stumble and he would've fell if he didn't hit his back on the pole that holds the carport up. Then Mr. Campbell turned back towards Mr. Gary and Mrs. Brenda, Mr. Gary's wife, got out of their vehicle, went to Mr. Campbell and while shaking her finger in his face said stop pushing my husband around. Mr. Campbell then said nobody shakes their finger in my face, so Mrs. Brenda shook it again in his face, Mr. Campbell then kneed Mrs. Brenda in the middle of her lower stomach, Mrs. Benda then immediately after being kneed said may God bless you. Mr. Campbell replied God is with me! After being kneed in the stomach Mrs. Brenda got back in her vehicle, went to City Hall, and asked for help. By the time she arrived back at the scene Officer Hunter Crawford was on scene. Due to the above stated facts, I Assistant Chief John Barnett of the Mammoth Spring Police Department am charging Mr. Dave Campbell with 3 counts of Battery in the 3rd Degree and 1 count of Disorderly Conduct. End of Statement.

_VonAr creend MST_
AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS _22nd_ DAY OF _July_ , 2024.

_Boularia Gann_
JUDGE, NOTARY PUBLIC OR CLERK

My Commission Expires: _Aug. 23, 2033_

**BARBARA GANN**
NOTARY PUBLIC - ARKANSAS
SHARP COUNTY
Commission # 12725096
My Commission Expires Aug. 23, 2033

_Approved 7-22-2024_
_Dewayne Plumber DPA_

## FINDING OF PROBABLE CAUSE FOR ARREST

I hereby find that the foregoing sworn Affidavit demonstrates reasonable and probable cause for the issuance of a warrant of arrest for the defendant for the charges listed in the attached Information and that the defendant should be arrested and bound over for trial.

JUDGE

Dated and signed this _22nd_ day of _July_ , 2024.