## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

DAVE CAMPBELL AND
CATRENIA DAWN CAMPBELL,

**JURY TRIAL REQUESTED**

PLAINTIFFS,

v.

Case Number: 3:25-CV-00064-KGB

CITY OF MAMMOTH SPRING, ARKANSAS, Monell Liability ;
BARRY JOSEPH O'DELL, Individually and in his official capacity;
DANNY L. BUSCH,  Individually and in his official capacity;
CARL DWAYNE PLUMLEE, Individually;
BARBARA ANN GANN, Individually and in his official capacity;
JAMES EDWARD TURNBOUGH Individually and in his official capacity;
JOHN ALLEN BARNETT, Individually and in his official capacity;
HUNTER RAY CRAWFORD Individually and in his official capacity;
TIMOTHY MORRIS WEAVER, Individually;
CHANEY WES TAYLOR Individually;
DREW EDWARD SMITH, Individually;
DONALD TAYLOR MCSPADDEN, Individually;
GARY LEE DUNN, Individually;
RANDALL DALE DUNN, Individually;
BRENDA E. DUNN, Individually;
PAUL DAVID KAUFFMAN, Individually;
FREDERICK ALEXANDER O'NEILL, Individually;
JOHN T. MCGINNES, Individually;
JODY LEE SHACKELFORD, Individually;
SHAYNE LEE PETERSON, Individually;
LAUREN ELIZABETH SIEBERT, Individually;
LOUISE DUNN ALEXANDER, Individually;
BRAGG BROADCASTING, INC,
HALLMARK MEDIA, LLC,
PETERSON PROPERTIES, LLC,
IRON ROCK LAW FIRM, PLLC, and
ADULT PROTECTIVE SERVICES, for information.

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 1 6 2026

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

1

DEFENDANTS.

## PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Campbells, Dave Campbell and Catrenia Dawn Campbell (hereafter *"Campbells,"* appearing pro se , allege the following against the following Defendants, and request a trial by jury on all triable issues.  Campbells bring this action pursuant to 42 U.S.C. §§ 1983 and 1985, as well as Arkansas state law, to remedy a severe and ongoing pattern of harassment, retaliation, abuse of process, and civil rights violations. Defendants, acting individually, in concert, and under color of state law, have systematically attempted to suppress Campbells' constitutional rights, including their right to free speech and due process, and Defendants engaged in a conspiracy to injure Campbells.

## I.    JURISDICTION AND VENUE

1.  This Honorable Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

2.  This Honorable Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, as they arise from a common nucleus of operative fact.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to these claims occurred here.

## II.    Parties

### i.    Plaintiffs' name and address:

4.  Plaintiff, Dave Campbell and Catrenia Dawn Campbell are residents of Mammoth Spring, Arkansas. They are private citizens and sworn Court Appointed Special Advocates (CASA).

**ii.    Defendants' names and addresses:**

5.    Defendant, City of Mammoth Spring (hereinafter *"City"*) is a second-class city incorporated under the laws of Arkansas located at 160 N. 1st ST, Mammoth Spring, Arkansas, 72554.

6.    Defendant, Barry Joseph O'Dell (hereinafter *"O'Dell"*) is a City Councilman and Church of Christ preacher in Mammoth Spring, with last known residence: 214 Florence ST, Mammoth Spring, AR, Fulton County 72554.

7.    Defendant, Danny L. Busch (hereinafter *"Busch"*), is the Mayor of Mammoth Spring, Arkansas, who resides at 111 Riverbend RD, Mammoth Spring, AR, 72554.

8.    Defendant, Carl Dwayne Plumlee (hereinafter *"Plumlee"*), was City Attorney for Mammoth Spring, Arkansas and was Deputy Prosecuting Attorney for Fulton County, Arkansas, with last known residence: 203 Circle High DR, Salem, Fulton, County AR, 72576.

9.    Defendant, Barbara Ann Gann (hereinafter *"Gann"*), is a Mammoth Spring City Clerk and Notary for the State of Arkansas with last known residence: 2532 AR HWY 175, Mammoth Spring, Fulton County, AR, 72554.

10.    Defendant, James Edward Turnbough (hereinafter *"Turnbough"*), is Chief of Police for Mammoth Spring, Arkansas, with last known address: 332 Preacher Town TRL, Mammoth Spring, Fulton County, AR, 72554.

11.    Defendant, John Allen Barnett (hereinafter *"Barnett"*) is Assistant Chief of Police for Mammoth Spring, Arkansas, with last known residence: 515 Weatherstone RD, Mammoth Spring, County, AR, 72554.

12.    Defendant, Hunter Ray Crawford (hereinafter *"Crawford"*), is a Mammoth

Spring police officer with last known residence: 1000 Fryatt Cemetery RD, Mammoth Spring, Arkansas 72554-7513.

13.   Defendant, Timothy Morris Weaver (hereinafter *"Weaver"*), is a Fulton County, Arkansas Magistrate Judge with last known residence: 2524 Barren Fork Rd, Mount Pleasant, AR 72561-8886,

14.   Defendant, Chaney Wes Taylor (hereinafter *"Taylor")*, is a Fulton County District Judge with last known residence: 15 Aberdeen DR, Batesville, AR, 72501-4299

15. Defendant, Drew Edward Smith (hereinafter *"Smith"*), is Prosecuting Attorney for the 16th Judicial District with last known residence: 2599 Sunny Slope Rd, Edgemont, AR 72044-9756.

16.   Defendant, Donald Taylor McSpadden (hereinafter *"McSpadden"*), is a circuit judge for Fulton County, Arkansas, with last known residence: 115 Dusty LN, Cave City, AR, 72521.

17.   Defendant, Gary Lee Dunn (hereinafter *"Gary Dunn"*) is an individual with last known residence: 10117 County Road 6550, West Plains, MO 65775-6320.

18.   Defendant, Randall Dale Dunn (hereinafter *"Randall Dunn"*) in an individual with last known residence: 207 East Church St, Horseshoe Bend, AR 72512-3824.

19.   Defendant, Brenda E. Dunn (hereinafter *"Brenda Dunn"*) is an individual with last known residence: 10117 County Road 6550, West Plains, MO 65775-6320.

20.   Defendant, Paul David Kauffman hereinafter ("*Kauffman*"), is a medical doctor with last known residence: 102 Riva Ridge Ln, Salem, Arkansas, 72576.

21.   Defendant Frederick Alexander O'Neill (hereinafter *"O'Neill"*), is a Thayer, Missouri attorney with last known residence: 1695 County RD 261, Myrtle, MO, 65778.

22.   Defendant, John T. McGinnes (hereinafter *"McGinnes"*), is an Arkansas attorney

4

with last known residence: 163 W Lakeshore DR, Cherokee Village AR  72529-7306.

23.  Defendant, Jody Lee Shackelford (hereinafter *"Shackelford"*), is an Arkansas attorney with last known residence: 58 Isleta DR, Cherokee Village, AR  72529-5013.

24.  Defendant, Shayne Lee Peterson (hereinafter *"Peterson"*), is an individual residing at 28 Dogwood CIR, West Plains, Howell County, MO, 65775

25.  Defendant Lauren Elizabeth Siebert (hereinafter *"Siebert"*) is a radio personality for Bragg Broadcasting  and Hallmark Media, LLC with last known residence: 50 Orchard Dr, Williford, AR 72482-7012.

26.  Defendant, Louise Dunn Alexander (hereinafter "*Alexander*") in an individual with last known address 2568 Moten Cemetary Road.

27.  Defendant Bragg Broadcasting, Inc. (hereinafter *"Bragg"*)  is an Arkansas corporation with contact information: Registered Agent James Bragg, 6 Setting Sun TR, Cherokee Village, Arkansas, 72529.

28.  Defendant Hallmark Media, LLC (hereinafter *"Hallmark"*) is an Arkansas Limited Liability Company with contact information: Registered Agent Johanna Strong Siebert, 2906 Springhill RD, Violet Hill, Arkansas, 72584.

29.  Defendant, Peterson Properties & Investments, LLC (hereinafter *"Properties"*), is Missouri limited liability company with contact information:  Registered Agent Renetta Peterson, 1390 South Highway 63, West Plains, Missouri, 65775.

30.  Defendant, Iron Rock Iron Rock, PLLC (hereinafter *"Iron Rock"*), is an alleged Corporation with address 131 Church Street (PO Box 125), Salem, Arkansas, 72576-0125.

31.  Defendant, Adult Protective Services (hereinafter *"A.P.S."*), is being sued for information only is located at Donaghey Plaza South, (P.O. Box 1437) Little Rock,

Arkansas, 72203-1437.

32.   An indispensable party to this action is Melissa Rogers, who is Mammoth Spring's City Secretary who filed for bankruptcy (10/04/2024) after suing Campbells (07/16/2024) requesting prior restraint on free speech.

## III.    BACKGROUND FACTS:

### Factual Allegations Regarding Harassment by Defendant Peterson:

33.  Campbells reside next door to a property operated as a used car lot by Defendant Peterson.

34.  In March of 2024, Defendant Peterson began construction on a border wall along what he claimed was the property line.

35. This first wall later collapsed in March of 2025.

36.   Immediately following the collapse, Defendant Peterson proceeded to install a third wall.

37. Each time a wall was rebuilt, Defendant Peterson intentionally moved the barrier closer to his own commercial building, using the construction process to leave debris on Campbells' side of the property line.

38. Around May 2025, following construction of the third wall, Defendant Peterson began a new pattern of harassment directed at Campbells.

39. Defendant Peterson specifically informed a local police officer he intended free access on Campbells' side of his 14.5' border wall.

40. Campbells responded to Peterson's stated intent and ongoing harassment by installing their own connector barrier to prevent unauthorized access.

6

41. Defendant Peterson reacted to Campbells' installation of their connector barrier by becoming enraged and engaging in the intentional destruction of private property.

42. Defendant Peterson physically and repeatedly removed Campbells's barrier poles from the ground and threw the removed poles onto Campbells' front and back yards.

43. A local police officer, Defendant Barnett, witnessed Defendant Peterson actively damaging Campbells' barrier in an attempt to knock it down.

44. Despite witnessing Peterson's act of property destruction, Defendant Barnett failed to arrest Defendant Peterson at the request of Campbells.

45. During his interaction with law enforcement, Defendant Peterson falsely accused Campbells of trespassing near the wall, even though Defendant Peterson had constructed the walls without ever conducting a formal property survey, or communicating with Campbells, to establish the actual boundary line.

46. Defendant Peterson asked the police officer (Defendant Barnett) to *"just throw Campbell down on the ground and handcuff him and haul him off to prison."*

47. The Police Officer, Defendant Barnett, laughed in response and indicated he understood Defendant Peterson's request for an unlawful arrest, further demonstrating coordination and bad faith.

48. Campbells installed surveillance cameras due to Defendant Peterson's prior threats and false police report and were falsely accused of recording children.

49. Campbells reported Defendant Peterson's attack to the City of Mammoth Spring's Police Department and also requested a protective order against Defendant Peterson.

50. During the interaction with Defendant Barnett, Defendant Peterson made a new,

entirely false allegation: Campbells come to his property to record his small children; a blatant lie, as Campbells utilize surveillance cameras on their own home for security purposes after Defendant Peterson previously issued threats.

51. Defendant Barnett failed to investigate Defendant Peterson's new allegation of recording children; the officer never asked Campbell's about Peterson's allegation or sought to verify the claim.

52. Instead of prosecuting Defendant Peterson for the May 2025 attack or the property damage Defendant Barnett witnessed, Defendant Barnett engaged in official misconduct by suggesting to Defendant Peterson he fabricate a charge against Campbells by suggesting Defendant Peterson accuse Campbells of stealing Peterson's lumber to build Campbells' wooden barrier (a conversation captured on FCSO body camera).

53. The police department and city attorney failed to prosecute Defendant Peterson for the May 2025 attack or the property damage, demonstrating a pattern of selective enforcement and deliberate indifference to Campbells' safety and legal rights.

54. Defendant Barnett's and city officials' actions were part of the ongoing pattern of retaliation against Campbells for their constitutionally-protected activities and complaints about city corruption.

### April 01, 2024 City Council Meeting

55. On April 1, 2024, Campbells attended a city council meeting and raised concerns regarding the police department's failure to respond to theft, safety issues and a break-in at an elderly neighbor's home on November 30, 2023.

56. Early during the 04/01 meeting, the mayor, Defendant Busch, abruptly shut down

Campbells' complaints and made disparaging comments about Campbells to the audience.

57. As Campbells attempted to leave, the police chief, Defendant Turnbough, verbally assaulted Mr. Campbell in the lobby, shouting orders about how he was permitted to interact with his wife, threatening litigation, and attempting to goad Campbell into an altercation.

58. In retaliation for Campbells exercising First Amendment rights, City officials engaged in a pattern of harassment and abuse of power designed to punish Campbells.

**Factual Allegations Regarding June 10, 2024 City Council Meeting:**

59.  On June 10, 2024, at a regularly scheduled public city council meeting in Mammoth Spring, Arkansas, Campbells, were present as citizens.

60. Defendant O'Dell was acting in his official capacity as a member of the city council.

61. Leading up to this meeting, Defendant O'Dell emailed Campbells stating, *"Correct your records. I am not a pastor."* Campbells previously erected a sign on their property which stated: *"Preacher is not a pastor, but preacher can be a failure as he was at City Hall on 04/01."*

62. Defendant O'Dell then took an invasive, denigrating photo of Mr. Campbell bending over in his yard and posted the photo publicly on his personal Facebook page to over 1,300 friends, which led to mocking comments and suggestions of violence against Campbells.

63. In response to Defendant O'Dell's public posting of the photo, Mr. Campbell

placed a subsequent sign in his yard stating Defendant O'Dell showed his *"flitty side"* by posting an image of Mr. Campbell's rear online.

64. Defendant O'Dell then publicly wrote on Facebook Mr. Campbell had called him a *"homosexual,"* a statement Campbells allege to be false.

65. During the June 10, 2024 city council meeting, while acting under the color of law, Defendant O'Dell engaged in a public beratement of Campbells in front of a packed overflowing room of citizens.

66. Defendant O'Dell falsely alleged to the assembled citizens Campbells had called him a *"homosexual."*

67. When Mrs. Campbell attempted to defend themselves by clarifying they called Mr. Campbell *"unstable,"* the mayor, Defendant Busch, intervened and called on the police chief, Defendant Turnbough, to handle Campbells, warning them any further comments would result in the police chief removing them.

68. Defendant O'Dell proceeded to call Campbells *"childish"* and *"petulant."*

69. Other council members, including the mayor (Defendant Busch), publicly nodded in agreement with the slandering Defendant O'Dell and applauded. Individuals in the overflowing room, appeared to be friends and relatives of the councilmen and also applauded the abuse.

70. Campbells were not permitted an opportunity to defend themselves against Defendant City's false allegations and slander during the public meeting.

71. Actions of Defendant O'Dell, Defendant Busch, and other officials were intended

to humiliate Campbells, retaliate against protected speech, and chill future criticism of local government.

**Allegations Regarding Fraudulent Legal Filings and the *"Iron Rock Iron Rock"***

72. On July 16, 2024, in their individual capacities, Defendant Turnbough and City Secretary Melissa Rogers filed separate defamation lawsuits against Campbells.

73. These lawsuits were initiated by the *"Iron Rock"* and associated attorneys McGinnes and Shackelford.

74. Upon information confirmed via correspondence from the Senior Legal Counsel for the Arkansas Secretary of State, *"Iron Rock Iron Rock"* lacks a valid Certificate of Good Standing to operate or practice law as a corporate entity in the State of Arkansas.

75. The lawsuits filed by the Fraudulent Counsel were an act of *"law-fare"* designed purely for retaliation and harassment to silence Campbells' protected political speech.

76. In conjunction with the lawsuits, Defendants; Shackelford and McGinnes filed two fraudulent requests for a preliminary injunction in circuit court to prohibit speech from Campbells' yard sign.

77. Defendants; Iron Rock, McGinnes and Shackelford made false allegations within the injunction request and the complaint, falsely stating Campbells' message on the sign read: *"Jamie and Melissa get it on,"* a knowing and willful misrepresentation of actual protected speech.

78. Defendants; McGinnes and Iron Rock attached a *"Certificate of Service"* to the fraudulent injunction request, falsely certifying to the Court, Campbells were served three ways

(personal, mail, and email) on July 15, 2024.

79. This certification was false; no methods of service occurred on July 15, 2024.

80. Campbells were not officially served with the summons and complaints until July 23, 2024, when the documents were served by the Sheriff's Office.

81. Stapled to the top of the complaint served by the Sheriff's office was an unrelated *"cease and desist demand"* letter, dated July 19, 2024, which confusingly demanded $500 from Campbells for each official. This was an attempt to use formal service of process to make an extrajudicial extortionary demand. A false (alleging mail) Certificate of Service was upon the letter, never sent by mail.

82. The use of a non-existent/unauthorized Iron Rock name, the false representations to the court regarding the content of the sign, and the fraudulent certificate of service all demonstrate bad faith and abuse of process engaged in by the Fraudulent Counsel and the city officials who hired them.

### Allegations regarding Radio and News Broadcasting:

83. On July 19, 2024, Defendant Siebert, friend and client of the misrepresenting Attorneys (McGinnes and Shackelford), announced lawsuits against Campbells on the radio, falsely reporting injunctions had been filed against Campbells for defamation and the false report was read with criminal matters as if a felony. Ms. Seibert announced on Facebook she only reports on felonies.

84. Defendant Siebert also published three front-page articles on her Hallmark news site repeating the false information. A search engine query revealed Defendant Siebert

created the file for her false stories one week before either case was filed.

85. Despite Campbells' requests, Defendant Bragg and Defendant Hallmark Media, refused to correct the record or respond to Campbells' notices.

**Unconstitutional Prior Restraint:**

86. In Defendant Turnbough's case, on 04/29/2025, Circuit Judge Holly Meyer granted an unconstitutional preliminary injunction against Campbells (Mr. and Mrs. Campbell), a *"prior restraint"* on free speech, despite Turnbough's prolonged filing.

87. During the preliminary injunction hearing, the Judge demonstrated bias and relied on the fraudulent information.

88. Judge Meyer erroneously stated to Campbells, *"You should not have stated Jamie and Melissa get it on,"* despite the record proving the police chief and city secretary fabricated said statement to manufacture a claim of defamation.

89. On 04/29/2025, in Case 25CV-24-72, Judge Meyer falsely determined Campbells defamed the Police Chief (Defendant Turnbough).

90. In the 05/19/2025 written order granting the injunction, Judge Meyer included language admitting she admonished Campbells for appearing *pro se* and told them to get an attorney, demonstrating a failure to be neutral and a bias against self-represented litigants.

91. During the hearing, the Defendant Turnbough's attorney (Defendant Shackelford) yelled out at Plaintiff/Campbells in an unprofessional manner, saying, *"YOU SHOULDN'T HAVE DEFAMED MY CLIENT,"* which was based on the false premise and the legally erroneous determination of defamation.

**Unconstitutional Circuit Proceedings:**

92. Around July 2025, Campbells (Defendants in parallel state case 25V-24-72, proceeding *pro se*) requested a hearing date to address a Motion for Reconsideration they had filed in May 2025 concerning a preliminary injunction. This hearing was noted on the court's calendar for October 21, 2025.

93. By September 2025, under Arkansas procedural rules, the time for the Court to rule on the Motion for Reconsideration had expired, and the motion was deemed denied/moot.  On 10/21/2025, Judge Meyer stated Campbells could refile their motion.

94. On or about October 14, 2025, Campbells sent a letter via email to the Court Scheduler and opposing counsel (Defendants; Iron Rock, McGinnes and Shackelford).

95. In this letter, Campbells requested clarification on the purpose of the October 21 hearing, noting their original motion was moot and there was no longer a scheduled matter for the court to hear on 10/21/2025.

96. Campbells' letter listed several other pending motions which *did* require scheduling and requested the Court consider consolidating the scheduling with City Secretary Melissa Rogers' related case, (the automatic stay was lifted on 08/23/25) and requested a hearing in November due to a hearing set for October 23, 2025 in Ms. Rogers' bankruptcy case, to ensure judicial efficiency.

97. Campbells also noted in their letter, opposing counsel had inquired about the October 21 date via email on September 30, and Campbells had received no formal notice of hearing from either the court or opposing counsel.

98. Instead of the Court Scheduler responding to Campbells' letter, Judge Holly Meyer

emailed both parties on October 14, 2025.

99. Judge Meyer's email stated she intended to *"take up all pending ripe motions at the October 21 hearing"* to keep the case moving forward, specifically referencing discovery issues as well.

100.    Judge Meyer's email further instructed any party with objections to the unilateral expansion of the hearing's scope to file a *"letter objection"* to be addressed first on October 21.

101.    Judge Meyer subsequently filed her email communication into the official case docket.

102.    Judge Meyer failed or refused to file Campbells' (Campbells) initial letter requesting clarification/cancellation into the official case docket until motioned to do so by Campbells.

103.    Judge Meyer unilaterally expanded the scope of a hearing originally requested for a single, now-moot motion to encompass *all* ripe motions and discovery issues, without formal notice of hearing or adequate time for the *pro se* Campbells to prepare for multiple complex arguments.

104.    On October 20, 2025, a court scheduler emailed Campbells, stating *"court starts at 10:00,"* implying the hearing was going forward without clarification of the specific motion to be heard or acknowledging the complexity of the case (e.g., two identical cases involving the same issues).

105.    The court scheduler referenced a document serving as the *"hearing notice"* which was, in fact, a *"Trial Scheduling Sheet"* for an unrelated, never-set August 17,

15

2025, hearing, further confusing and misleading pro se Campbells, who are defendants in the state case.

### Supreme Court Vindication:

106.    On October 28, 2025, the Arkansas Supreme Court granted Campbells' petition for writ of certiorari and vacated the injunction, explicitly ruling the statement on the sign was protected "*free speech*" under the Constitution.

### Pattern of Conduct:

107.    The actions of the individually-named Defendants occurred under color of state law, as they used their official positions, police authority, and court systems to execute a conspiracy to violate Campbells' civil rights.

108.    Furthermore, Campbells have been subjected to severe threats and intimidation in retaliation for pursuing their legal rights. An associate of the Mayor threatened Campbells' house would likely burn down if Campbells continued their fight, and Officer Crawford threatened any complainants against Mammoth Spring Police Department will receive a felony charge.

109.    These actions are part of a broader pattern of harassment and retaliation by state actors, including fabricating arrest affidavits, orchestrating a false arrest, evidence spoliation, and judicial misconduct, all designed to silence Campbells after they complained about police corruption.

110.    Prior to the Supreme Court ruling, Defendants; Iron Rock, McGinnes and Shackelford acted in contempt of court by using a name Judge Meyer instructed them not to use and violating an automatic stay in the City Secretary's bankruptcy case by

continuing to prosecute the state court lawsuit against Campbells, filing motions for summary judgment while arguing only Campbells are barred from rights to discovery and motion practice.

### The July 16, 2024 Altercation and Forged Arrest Affidavit

111.     Also on July 16, 2024, the two estranged sons of Campbells' elderly neighbor (Defendants Randall Dunn and Gary Dunn) were trespassing on the neighbor's property, threatening to take her to a hospital against her will without presenting a Power of Attorney (POA). The elderly neighbor requested Campbells' assistance.

112.     On 07/16/2024, Mr. Campbell called 9-1-1 to report harassment and trespass by Defendant Gary Dunn, Defendant Randall Dunn and Defendant Brenda Dunn.

113.     Defendant Turnbough flatly refused to respond to the scene, lied to the dispatcher by claiming he was not allowed at Plaintiff's neighbor's residence, claimed he had no officers available, and instructed the dispatcher to send the county sheriff instead.

114.     As Mr. Campbell approached the neighbor's home, one of the estranged sons assaulted Campbell in the face with a sharp, pointed object.

115.     Defendant Gary Dunn continued to push Mr. Campbell from behind, placing the sharp object into the back of Campbell's neck.

116.     Mr. Campbell turned and pushed Defendant Gary Dunn in self-defense. Defendant Gary Dunn fell, due to pre-existing balance issues (later confirmed by medical records).

117.     Defendant Gary Dunn's brother (Randall Dunn) and Gary Dunn's wife

(Brenda Dunn) subsequently joined the assault on Mr. Campbell.

118.    A city police officer,  Defendant Crawford eventually responded to the scene at the request of Defendant Gary Dunn's wife (Defendant Brenda Dunn). The officer failed to interview actual victims or witnesses (Campbells and the elderly neighbor), failed to view the recorded evidence Plaintiff possessed, and instead focused on facilitating a false arrest of Mr. Campbell.

119.    During Mr. Campbell's district court bench trial on 09/15/2025, Defendant Crawford testified he never watched the 07/16/2024 video even though he admitted knowing about the 07/16/2024 video since 07/16/2024.

120.    Defendant Crawford's 07/19/2024 statement states there was no evidence.

121.    Police Chief Defendant Turnbough, Officer Defendant Crawford, and Assistant Police Chief Defendant Barnett conspired to fabricate a false arrest affidavit.

**Factual Allegations of Forgery and Utterance of Fraudulent Arrest Document**

122.    According to the officers' district court testimony on 09/15/2025, on July 22, 2024, the Police Chief (Defendant Turnbough), Assistant Chief (Defendant Barnett), and Officer (Defendant Crawford) allegedly convened at City Hall and made an unlawful agreement with City Clerk (Defendant Gann), an Arkansas Notary, to notarize Defendant Crawford's signature on an affidavit falsely attributed to Defendant Barnett.

123.    The resulting affidavit was blatantly forged. The signature's accompanying badge number (Badge 7) did not match the affiant's badge number (Badge 5).

124.    Police Chief (Defendant Turnbough) then drove his forged, municipal

document approximately 20 miles to the county prosecutor's office.

125.     Deputy County Prosecutor (Defendant Plumlee) irregularly *"approved"* the document without proper review.

126.     The Magistrate Judge (Defendant Weaver) signed the document and authorized Mr. Campbell's unlawful arrest without probable cause and without proper review of the document's obvious defects.

127.     The Arkansas Secretary of State (AR SOS) subsequently investigated and reprimanded Defendant Gann for notarizing the forged document.

128.     The arrest affidavit falsely stated *"Injuries"* were *"None,"* yet Mr.Campbell was erroneously charged with "Battery 3rd degree, recklessly causing injuries." The incident report also falsely stated the scene was *"unknown"* to justify a separate *"disorderly conduct"* charge.

129.     On August 3, 2024, arresting officers refused to provide Mr. Campbell with the warrant or the reason for his arrest. Mr. Campbell was never formally served with the affidavit or summons.

**Factual Allegations of Judicial and Prosecutorial Misconduct in District Court:**

130.     Deputy Prosecutor (Defendant Plumlee) and later Prosecutor (Defendant Smith) continued to utter the false affidavit and pursue the charges, despite knowing about the Arkansas Secretary of State ("*AR SOS*") reprimand and the lack of a sworn statement for misdemeanor charges.

131.     Defendant Smith argued in opposing Plaintiff's motion to dismiss, sworn statements are not needed when an officer suspects a felony, even though Defendant

Smith knew he was prosecuting misdemeanor charges.

132.    The case was improperly assigned to the 14th State District Court starting in January 2025, even though the arrest occurred under the 16th Judicial District in August 2024, indicating a venue violation.

133.    District Judge (Defendant Taylor) admittedly held court proceedings outside the designated department of the municipality without a valid administrative plan or city ordinance, in violation of A.C.A. § 16-17-138.

134.    The District Judge (Defendant Taylor) announced via email he made an *"unlawful venue agreement"* with Police Chief (Defendant Turnbough).

135.    During Mr. Campbell's arraignment approximately six months after arrest, Defendant Taylor refused to allow mention of the AR SOS reprimand, told Mr. Campbell he was *"out of [his] lane,"* and forcibly seized Campbell's notes, preventing him from presenting a pro se defense, which is on video.

136.    Defendant Taylor later approached Campbells at a restaurant and coerced a handshake over their food, a blatant act of judicial harassment, which is on video.

137.    The Attorney General's Office ("*AGO*") interfered with Mr. Campbells' ability to prepare for his September 15, 2025 bench trial by requesting *"no contact"* with the judge and prosecutor, *"in any manner,"* which was emphasized in bold letters.

138.    Defendant Smith proceeded *ex parte* in changing the hearing to a bench trial despite having noticed Mr. Campbell the proceeding was for a motion hearing.

139.    The District Clerk falsely informed Mr. Campbell the hearing was continued, preventing him from subpoenaing witnesses.

140.     At the subsequent bench trial on September 15, 2025, Defendant Taylor convicted Mr. Campbell, despite knowing the Arkansas Supreme Court had notified Defendant Taylor to answer the allegations of misconduct in Mr. Campbells' extraordinary writ proceeding.

141.     Defendant Taylor refused to view evidence proving Mr. Campbells's self-defense claim during the trial.

### Factual Allegations of the Probate and Elder Abuse Conspiracy:

142.     On or about September 30, 2024, Defendant Randall Dunn obtained a fraudulent medical affidavit from Dr. Kauffman to have Campbells' elderly neighbor committed to a nursing home against her will and declared mentally incompetent in a probate case.

143.     Defendant Kauffman falsely swore he examined the elderly woman on July 16, 2024, and found her incompetent, even though the ambulance's *"RUN"* report from 07/16/2024 stated she was *"A&O"* (Alert and Oriented) and passed all tests.  Dr. Kauffman never visited Mrs. Dunn on 07/16/2024 and notated wrote in her medical report she was *"A&O"* on 07/01/2024.

144.     Defendant McSpadden presided over the probate hearing in Independence County, a venue violation intended to prevent the elderly woman from attending the hearing (Fulton County was the correct jurisdiction), even after Mrs. Dunn's personally-handwritten request for a continuance so the nursing home could transport her.

145.     Defendant McSpadden threatened Campbells via telephone, warning he would hold Campbells in contempt if they attempted to file the ambulance RUN report

21

showing the woman was competent.

146.    Defendant O'Neill, representing Defendant Gary Dunn, proceeded with the fraudulent commitment, violating Mrs. Dunn's rights by declaring her a ward and preventing Campbells from visiting her, as well as her siblings, nieces and friends.

### Factual Background Pertaining to Judge Weaver:

147.    Defendant Weaver, while acting in his capacity as a magistrate judge, signed and *"uttered"* the 07/22/2024 arrest affidavit, thereby authorizing Mr. Campbell's arrest. This placed Judge Weaver in the position of a material witness to the execution and validity of the core document being challenged in later proceedings.

148.    Plaintiff Dave Campbell subsequently filed an extraordinary writ petition in the Arkansas Circuit Court, Case No. CV-25-571 challenging the validity of his arrest and the jurisdiction of the district court, placing the signed arrest affidavit directly at issue.

149.    In a severe conflict of interest, the state court writ case was assigned to the same individual, Defendant Weaver, whose signature and actions were being challenged.

150.    Plaintiff Dave Campbell filed a formal motion requesting Judge Weaver recuse himself from the case due to this direct conflict and bias.

151.    Despite the clear conflict of interest and the pending recusal motion, Judge Weaver failed to rule on or grant the motion to recuse.

152.    Further, prior to the state court hearing on November 3, 2025, Plaintiff had already filed this federal civil rights lawsuit (Case No. 3:25-CV-00064KGB) in the

United States District Court, Eastern District of Arkansas, naming Judge Weaver as a

Defendant in his individual capacity for related unconstitutional actions. This case was

consolidated by order of the U.S. District Court on October 16, 2025.

153.     At a hearing on November 3, 2025, Judge Weaver proceeded to dismiss

Campbell's state court writ petition without first ruling on Mr. Campbell's recusal motion

or the motion for leave to amend Campbells' extraordinary writ petition. He also

focused on the technicality of service for the federal lawsuit rather than the substantive

conflict itself.

154.     Judge Weaver's actions, including his authorization of the forged document,

his failure to recuse himself despite undeniable conflicts of interest, and his dismissal of

the case while ignoring procedural matters, demonstrate a deliberate indifference to

Plaintiff's right to due process and an impartial tribunal, in violation of the Fourteenth

Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**Factual Allegations of Requested FOIA Information:**

155.     On or about September 22, 2024, a report was filed with Defendant Adult

Protective Services ("*APS*") listing Plaintiff Dave Campbell as the Alleged Perpetrator

(AP) and Betty K. Dunn as the Alleged Victim (AV).

156.     On January 6, 2025, pursuant to the Arkansas Freedom of Information Act

("*AFOIA*"), Ark. Code Ann. § 25-19-101 *et seq.*, Campbells submitted a formal FOIA

Request to APS requesting all records concerning themselves related to Ms. Dunn.

157.     On February 11, 2025, APS representative Margaret M. Newton, J.D.,

emailed Campbells, admitting *"Under the statutes, the Alleged Perpetrators are*

*entitled to obtain a copy of the records with applicable redactions,"* and further verifying, *"I was able to verify that you are entitled to the records. We will begin working on those documents for you."*

158.    In a subsequent phone call on March 10, 2025, Ms. Newton confirmed Campbells were listed as *"the perpetrators"* but noted difficulty redacting the complaint. She also informed Campbells the file contained a notation of a protective order against Campbells, which was later verified by the Fulton County Circuit Clerk to be fraudulent/non-existent.

159.    On March 13, 2025, Ms. Newton abruptly reversed APS's position, emailing Campbells to state, *"Unfortunately, it appears that we are not able to provide any records regarding Ms. Dunn,"* citing an exception for screened-out reports disclosed only to the Attorney General, a prosecutor, or law enforcement.

160.    Despite APS's initial admission Campbells are entitled to the records, Defendant APS prejudicially deprived Campbells of access to records about Campbells.

161.    The information contained within the APS file is necessary for Campbells to defend themselves against an ongoing conspiracy, defamation, and malicious prosecution by Defendants (City, O'Dell, Busch, Turnbough, Dunns, Crawford, Barnett, Smith, Plumlee, Taylor, Weaver, Alexander, Kauffman, O'Neill, Hallmark, Bragg, Siebert, etc.), who have apparently accessed and utilized official information improperly, even fabricating evidence.

162.    Defendant APS is non-compliant with the AFOIA and has harmed Campbells by withholding information Campbells are legally entitled to receive.

## IV.    CAUSES OF ACTION

### COUNT I: VIOLATION OF RICO ACT (18 U.S.C. § 1962(c)

**(Against Defendants: City, Turnbough, Crawford, Barnett, Busch, O'Dell, Peterson, Gann, Dunn Defendants, Iron Rock, McGinnes, Shackelford, (collectively "Defendants"))**

163.    Campbells re-allege and incorporate by reference all preceding paragraphs.

164.    Defendants constituted an enterprise within the meaning of 18 U.S.C. § 1961(4) (hereinafter, the *"Enterprise"), associated in fact, including public entities, officials, private attorneys, and individuals sharing a common purpose: using official power and the legal system for unlawful financial gain and to silence political opposition.

165.    The Enterprise engaged in a pattern of racketeering activity, including mail fraud, wire fraud, conspiracy to obstruct justice, and extortion.

166.    The Enterprise's predicate acts include utterance of forged documents, mail/wire communications regarding fraudulent lawsuits, threats of false arrest to compel compliance, and extortionary demands for money ($500 cease and desist demand).

167.    These predicate acts are related and continuous, occurring over many months and all with the same purpose and participants.

168.    Defendants were employed by or associated with the Enterprise and conducted or participated in the conduct of its affairs through a pattern of racketeering activity.

169.    The private party Defendants conspired or acted in concert with state officials to violate Campbells' constitutional rights.

170.    Defendants: Iron Rock, Shackelford and McGinnes participated in the *"enterprise"* by committing predicate acts (mail fraud, wire fraud, extortion via the $500 demand) as part of the ongoing pattern of corruption.

171.    Defendants: Iron Rock, Shackelford and McGinnes facilitated the overall scheme which involved multiple fraudulent legal filings and communications.  City Secretary Melissa Rogers testified on 08/23/2025 in the United States Bankruptcy Court, she paid a total of $500 to Defendant McGinnes as a flat fee for the entire litigation, which is the same amount Defendants; Iron Rock and McGinnes demanded from Campbells on 07/23/2024 (via Sheriff's service) to cease the city secretary's S.L.A.P.P. suit against Campbells (25CV-24-73).

172.    Campbells suffered injury to their business or property (legal fees, loss of time, damages, etc.) as a direct result of the Enterprise's RICO violations.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT II: CONSPIRACY TO VIOLATE RICO ACT (18 U.S.C. § 1962(d))
### (Against: All Defendants Named in Count I)

173.    Campbells re-allege and incorporate by reference all preceding paragraphs.

174.    Defendants conspired to violate 18 U.S.C. § 1962(c) and agreed to the commission of the predicate acts detailed in Count I and Background Facts.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT III: VIOLATION OF FOURTH AMENDMENT RIGHTS

## (UNLAWFUL SEIZURE & FALSE ARREST)

**(Against Defendants: City, Turnbough, Barnett, Crawford, Weaver, Gann,**

**Randall Dunn, Gary Dunn and Brenda Dunn (collectively as "Defendants"))**

175.     Campbells re-allege and incorporate by reference all preceding paragraphs.

176.     Campbells' claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

177.     On 08/03/2024, Defendants, acting under color of state law or in concert with state actors, seized Mr.Campbell without probable cause by fabricating evidence (forged affidavit) and ignoring exculpatory evidence.

178.     As Magistrate Judge, Defendant Weaver authorized the warrant without a good faith review, based on the fraudulent affidavit provided by the Police Chief, Defendant Turnbough, relying on Defendant Plumlee's endorsement on the blatantly-forged arrest document.

179.     Defendants' conduct violated Mr. Campbell's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments.

180.     At the time of the 08/03/2024 seizure, a reasonable person in Mr. Campbell's position would not feel free to leave, and Campbell was, in fact, confined. Campbell did not consent to this confinement.

181.     Defendants lacked probable cause to arrest Plaintiff. At no point prior to or during Plaintiff's arrest did Defendants have reasonable and trustworthy information

or objective facts sufficient to warrant a prudent person to believe Plaintiff committed, was committing, or was about to commit a crime and violated Brady by withholding (hiding) and fabricating evidence.

182.    Specifically, the alleged offense cited by Defendants was Battery 3rd Degree – Recklessly Causing Injuries and Disorderly Conduct. However, Mammoth Spring Police Department's incident report for the alleged incident states *"Injuries"* reported are *"None"* and description for any injuries is blank. The forged affidavit admits the charged incident occurred at residence, which invalidates *the "Disorderly Conduct"* charge. Therefore, no probable cause existed for said charges. Additionally, there are no mandatory sworn statements for finding probable cause.

183.    The seizure and arrest of Plaintiff by Defendants was objectively unreasonable and violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures and false arrest.

184.    Because the underlying affidavit was forged/fraudulent, and because the warrant erroneously stated *"county"* jurisdiction for a municipal issue, Defendant Weaver lacked the proper legal foundation (jurisdiction) to issue a valid warrant. By proceeding despite knowing the document was fraudulent, Defendant Weaver acted in a knowing absence of valid probable cause

185.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered physical pain and suffering, severe emotional distress, humiliation, injury to reputation, loss of liberty, and economic damages including [e.g., lost wages, attorney fees for criminal case, etc.].

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT IV: VIOLATION OF FOURTH AMENDMENT RIGHTS
## (MALICIOUS PROSECUTION)

**(Against Defendants: Turnbough, Barnett, Crawford, Gann, Plumlee, Smith, City, Taylor, Weaver (collectively as "Defendants")))**

186.     Campbells re-allege and incorporate by reference all preceding paragraphs.

187.     Campbells' claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of Campbells' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution against unreasonable seizures pursuant to legal process.

188.     At all times relevant hereto, Defendants were acting under color of state law, statute, ordinance, regulation, custom, or usage of the State of Arkansas.

189.     On 07/16/24, Defendants initiated or caused the initiation of a criminal proceeding against the Plaintiff, Mr. Campbell.

190.     Defendants; Turnbough, Crawford and Barnett submitted sworn false testimony and submitted a false police report and influenced the prosecutor to file charges, etc., which led to formal charges being filed against the Plaintiff in Fulton County 16th District Court,  Case Number CR-25-541, 542, 543 and 544.

191.     The aforementioned criminal proceedings were initiated without probable cause. At the time Defendants; Barnett, Crawford and Turnbough initiated the charges, they knew or should have known there were insufficient facts or evidence to support a belief Mr. Campbell committed the alleged crimes. *Defendant Crawford fabricated*

*evidence, omitted critical exculpatory evidence, and knew the charges were baseless.*

192.    Defendants acted with malice or for a purpose other than bringing Plaintiff to justice. *Defendants' actions were motivated by personal animosity towards Plaintiff, a desire to meet arrest quotas, or a deliberate indifference to the truth.*

193.    The criminal prosecution against Mr. Campbell turned in Campbells' favor in October of 2024 when the Arkansas Secretary of State reprimanded the notary, Defendant Gann, for the forged arrest affidavit.

194.    As a result of Defendants' initiation of erroneous criminal charges and the ensuing legal process, Mr. Campbell was seized within the meaning of the Fourth Amendment. This seizure included [e.g., pretrial detention, having to post bail, significant restrictions on travel and liberty during the pendency of the case, multiple court appearances, etc.]

195.    As a direct and proximate result of the Defendants' malicious prosecution, Campbells suffered physical pain and suffering, severe emotional distress, humiliation, damage to reputation, loss of liberty, consortium and economic damages including [e.g., lost wages, litigation fees for the criminal defense, etc.], for which Campbells are entitled to compensation.

196.    Defendants actions are willful, intentional, malicious, and in deliberate indifference to Campbell's constitutional rights, warranting imposition of punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT V: VIOLATION OF FIRST AMENDMENT RIGHTS & RETALIATION

## (42 U.S.C. § 1983)

**(Against Defendants:  City, Turnbough, Busch, O'Dell, McSpadden,**

**Plumlee, Weaver, Taylor and Smith (Collectively as "Defendants")))**

197.    Campbells re-allege and incorporate by reference all preceding paragraphs.

198.    Campbells' claim for relief is brought pursuant to 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of Campbells' rights secured by the First and Fourteenth Amendments to the United States Constitution.

199.    Campbells' complaints about Mammoth Spring Police Department and the municipal government, made during a public meeting and displayed on their private property sign, constitute speech on matters of public concern and are protected by the First Amendment.

200.    Defendants engaged in a pattern of adverse actions against Campbells, including:

      A.  Silencing Mr. Campbell during a public meeting;

      B.  Dictating how Mr. Campbell could interact with Mrs. Campbell in public;

      C.  Advising Mr. Campbells to *"get an attorney,"* and to "*be a man."*

      D.  Destroying preserved video evidence of the 04/01/24 council meeting;

      E.  Initiating a series of baseless and fraudulent defamation lawsuits and injunction requests;

      F.  Orchestrating a false arrest scheme.

31

G. Utilizing a fraudulent Iron Rock and forged documents to pursue litigation.

H. Depriving Campbells of their right to testify in a related probate case by intimidation by Defendant McSpadden.

I.   Defendants Smith and Plumlee actively participated in the *fabrication* of false evidence *before* a charge was filed, and/or used investigative tactics not intimately associated with the judicial phase of the case.

J. Defendant Smith continued uttering the false/forged affidavit even after being notified of its fraudulent nature and the AR SOS reprimand.

K. Defendants Smith and Plumlee withheld the forged affidavit despite multiple FOIA requests for discovery.

L. The prosecutors (Defendants Plumlee and Smith) conspired with police officers (Defendants Turnbough, Barnett and/or Crawford) and judges (Defendants Taylor and Weaver) outside the scope of their advocacy role to violate Mr. Campbell's rights.

M. Prosecutor Smith made an untimely opposition to Campbell's motion to dismiss and argued a frivolous legal theory (sworn statements not necessary for a felony when only a misdemeanor was charged, demonstrating a lack of probable cause and a malicious intent to pursue an unfounded case

201.    Defendants took these adverse actions with the specific intent and motivation to retaliate against Campbells for exercising their protected speech and to chill future exercise of their First Amendment rights, as if following protocol.

32

202.     Defendants' retaliatory conduct would chill or silence a person of ordinary firmness from engaging in further protected activity.

203.     As a direct and proximate result of Defendants' actions in violation of Campbells' First Amendment rights, Campbells suffered severe emotional distress, loss of consortium, financial losses (including litigation fees and court costs), damage to reputation, and deprivation of liberty interests.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT VI: Violation of First and Fourteenth Amendments (Witness Intimidation/Obstruction) (42 U.S.C. § 1983)

### (Against Defendant McSpadden.)

204.     Plaintiffs incorporate by reference all preceding paragraphs.

205.     Defendant actions in contacting Plaintiffs at their home to threaten contempt if they provided truthful evidence constituted non-judicial acts performed in the complete absence of any legitimate jurisdiction or authority to do so via private phone call.

206.     This conduct violated the Plaintiffs' First Amendment right to participate in legal proceedings and their Fourteenth Amendment right to due process by obstructing access to the courts and intimidating witnesses.

207.     Defendant McSpadden is not entitled to absolute judicial immunity for these non-judicial, intimidating acts.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

## COUNT VII: VIOLATION OF FOURTEENTH AMENDMENT RIGHTS

## (DENIAL OF PROCEDURAL DUE PROCESS)

**(Against Defendants: Busch, Turnbough, Barnett, Crawford, Weaver,**

**Smith, Plumlee, Taylor, and City, (Collectively as "Defendants"))**

208.    Campbells re-allege and incorporate by reference all preceding paragraphs.

209.    This claim for relief is brought pursuant to 42 U.S.C. § 1983, to redress the

deprivation, under color of state law, of Campbells' rights secured by the Due Process

Clause of the Fourteenth Amendment to the United States Constitution.

210.    The Fourteenth Amendment guarantees no State shall deprive any

person of life, liberty, or property without due process of law.

211.    Campbells' constitutionally-protected liberty and property interests are at

stake, including but not limited to their right to physical liberty (false arrest), their interest

in their home and property, and their right to a fair and impartial judicial process.

212.    Defendants (including the City, Mayor Busch, Police Chief Turnbough,

Assistant Chief Barnett, Officer Crawford, Judge McSpadden, Magistrate Weaver,

Prosecutor; Smith and Plumlee, and others acting under color of state law) deprived

Campbells of these protected interests without adequate pre-deprivation or post-

deprivation procedures.

213.    Specific violations of procedural due process include:

1. Securing Mr. Campbell's arrest through the use of a forged affidavit, thus

lacking fundamental probable cause and the procedural regularity required for a lawful arrest.

2.  Conducting judicial proceedings (e.g., arraignment, setting a bench trial *ex parte*) in an unlawful venue via a private agreement between officials, thereby denying access to a proper forum in violation of Ark. Code Ann. § 16-17-138.

3.  Denying Mr. Campbell the ability to present a full defense *pro se* during court proceedings by seizing notes, refusing to admit evidence, and ignoring the binding ARSC ruling.

4.  Interfering with the legal process by using fraudulent lawsuits and false certifications of service to gain an unfair advantage and deny a fair hearing.

5.  Forcing Campbells' elderly neighbor from her home against her will without a valid power of attorney or court order, denying her due process.

214.    Defendants acted intentionally and recklessly in their disregard for the established rules of procedure and law, demonstrating deprivation of rights was not a random or unauthorized act, but part of a pattern of misconduct facilitated by state actors.

215.    As a direct and proximate result of Defendants' denial of procedural due process, Campbells suffered monetary damages, loss of liberty, and severe emotional distress.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT VIII: FEDERAL CIVIL RIGHTS - DUE PROCESS VIOLATION
## (FABRICATED EVIDENCE)

**(Against Defendants: City, Turnbough, Barnett, Crawford, Gann, Plumlee, Weaver, and Smith (Collectively as "Defendants"))**

216.    Campbells re-allege and incorporate by reference all preceding paragraphs.

217.    Campbells' claim for relief is brought pursuant to 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of Campbells' rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

218.    The Fourteenth Amendment guarantees the right to a fair judicial process, free from knowing and intentional fabrication of evidence by state actors.

219.    Defendants acted under color of state law to fabricate evidence used to secure the arrest and prosecution of Plaintiff Dave Campbell.

220.    Specifically, on or around July 22, 2024, the aforementioned Defendants conspired to create and utter a forged affidavit alleging *"Battery 3rd degree."*

221.    The affidavit falsely represented officer with Badge #7 (Defendant Crawford) signed the 07/22/2024 arrest affidavit as the affiant, when the designated affiant was a different officer (Badge #5 Defendant Barnett). The City Clerk (Defendant Gann) acted as an improper notary in facilitating this forgery.

222.    To secure an unlawful arrest warrant, Defendant Turnbough personally delivered this forged municipal document to Defendant Plumlee to irregularly endorse with his signature, *"approved"* and *"D.P.A."* for Deputy Prosecuting Attorney; not as city attorney. prosecutor to secure the unlawful arrest warrant.

223.     Defendants knew the affidavit was forged and contained false information (e.g., incident report stated *"Injuries 'None'"* but charge was *"recklessly causing injuries").*

224.     The use of fabricated evidence was intentional, malicious, and designed to secure a false arrest and retaliatory prosecution against Plaintiff Dave Campbell.

225.     As a direct and proximate result of Defendants' actions in fabricating, hiding and falsifying evidence, Plaintiff Dave Campbell was unlawfully detained, arrested and prosecuted, suffering a deprivation of liberty, monetary damages, and severe emotional distress (PTSD).

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

**COUNT IX: CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1985) (Against Defendants: Turnbough, Busch, Crawford, Barnett, McSpadden, Weaver, Smith, Iron Rock, McGinnes, Shackelford, Bragg, Siebert, Kauffman, O'Neill, Gary Dunn, Randall Dunn and Brenda Dunn (collectively as "Defendants"))**

226.     Campbells re-allege and incorporate by reference all preceding paragraphs.

227.     This claim is brought pursuant to 42 U.S.C. § 1985(2) and (3) against Defendants: Turnbough, Busch, Crawford, Barnett, McSpadden, Weaver, Smith, Iron Rock, Shackelford, McGinnes, Siebert, Smith, Kauffman, O'Neill Gary Dunn, Randall Dunn and Brenda Dunn for conspiring to impede, hinder, obstruct, or defeat the due course of justice with the intent to deny Campbells' constitutional rights.

228.    Defendants formed a conspiracy and reached a mutual understanding to deprive Campbells of their rights to free speech, due process, and equal protection under the law, and to obstruct justice in state court proceedings (civil defamation cases, criminal case, and probate case) with the intent to deny the Plaintiffs the equal protection of the laws and equal privileges and immunities under the laws.

229.    The Conspirators formed a conspiracy to obstruct the due course of justice in the State of Arkansas

230.    The object of this conspiracy was to retaliate against Plaintiffs for their protected First Amendment speech, secure an unlawful criminal conviction against Mr. Campbell using a fraudulent affidavit, and prevent Plaintiffs from obtaining redress and justice through the state court system.

231.    Overt acts were committed in furtherance of Defendants' conspiracy, including but not limited to:

a.  **Act 1:** Judge Weaver signing a forged arrest affidavit as a magistrate, despite the facial invalidity of the document and lack of valid probable cause.

b.  **Act 2:** The Police Chief and Prosecutor Smith presenting and utilizing the fraudulent affidavit to initiate criminal proceedings.

c.  **Act 3:** Judge Weaver acting as a Circuit Judge in the extraordinary writ case filed by Plaintiff concerning the very same forged affidavit he signed as a magistrate, creating an undeniable conflict of interest.

d.  **Act 4:** Judge Weaver ignoring a valid recusal motion filed by Plaintiff that objected to this conflict of interest.

e. **Act 5:** Judge Weaver conducting improper ex parte communications and proceedings with the Arkansas Attorney General's Office on October 9, 2025, without notice or input from Plaintiff.

f. **Act 6:** The Attorney General's Office drafting and Judge Weaver signing a hostile hearing notice which threatened sanctions against Plaintiff, demonstrating a coordinated effort to intimidate Plaintiff outside the bounds of proper judicial procedure.

g. **Act 7:** Judge Weaver dismissing Plaintiff's extraordinary writ petition without ruling on the pending recusal motion first, demonstrating bias and an intent to obstruct justice.

h. **Act 8:** Fabricating a forged affidavit for Plaintiff Dave Campbell's arrest.

i. **Act 9:** Filing a fraudulent civil lawsuit and injunction request based on a fabricated statement.

j. **Act 10:** Defendant McSpadden Making threats over the phone to prevent Campbells from testifying in their neighbor's probate case.

k. **Act 11:** Defendant Taylor seizing legal notes from the Plaintiff Dave Campbell during a court proceeding.

l. **Act 12:** Defendants; Turnbough, McGinnes and Shackelford ignoring requests for discovery and due process procedures in state court cases.

m. **Act 13:** Coordinating with the media to publish false information about Defendant Turnbough and City Secretary Rogers' lawsuits to amplify harm.

232.    By these actions, the Conspirators acted with an invidious discriminatory animus and a deliberate intent to deprive Plaintiffs of their constitutional rights and the ability to access an impartial judicial forum.

233.    The Conspirators' actions were taken under color of state law, and the Plaintiffs have been injured in their person and property and deprived of their rights and privileges as U.S. citizens.

234.    As a direct and proximate result of Defendants' conspiracy, Campbells have suffered monetary damages, loss of liberty, and severe emotional distress.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

**COUNT X: Conspiracy Claim (42 U.S.C. § 1983)**

**(Against Defendants: Turnbough, Busch, Barnett, McSpadden, Weaver, Smith, Iron Rock, Shackelford, McGinnes, Siebert, Bragg, Hallmark, Kauffman, O'Neill, Randall Dunn, Gary Dunn, and Brenda Dunn, (collectively as "Defendants"))**

235.    Campbells re-allege and incorporate by reference all preceding paragraphs.

236.    Campbells' claim is brought pursuant to 42 U.S.C. § 1983 against Defendants; Turnbough, Busch, Barnett, McSpadden, Weaver, Smith, Iron Rock, Shackelford, McGinnes, Siebert, Bragg, Hallmark, Kauffman, O'Neill, Randall Dunn, Gary Dunn, and Brenda Dunn for conspiring under color of state law to deprive Campbells of their constitutional rights.

237.    The aforementioned Defendants reached a mutual understanding or

agreement to violate Campbells' constitutional rights, including their First Amendment

rights to free speech and their Fourteenth Amendment rights to due process and liberty.

238.    Private individual Defendants are considered state actors under the

*"joint action"* doctrine because they willfully participated in a joint activity with state

officials (police, city hall, court officials) to violate Campbells' rights (e.g., the set-up for

the false arrest, the fraudulent lawsuits, Mr. Campbellipulation of the probate case).

239.    An actual deprivation of a constitutional right occurred, as described

throughout this Complaint (e.g., false arrest, unconstitutional prior restraint via the

injunction, retaliation for protected speech).

240.    Overt acts were committed in furtherance of Defendants' conspiracy,

including but not limited to:

   a.  Fabricating a forged affidavit for Dave Campbell's arrest.

b.  Filing a fraudulent civil lawsuit and injunction request based on a fabricated statement.

c.  Coaching a private assailant to file false charges against Campbells for theft (recorded on
    body cam).

d.  Threatening witnesses to prevent testimony in the probate case.

e.  Manipulating court venues and procedures via private agreements, which was discovered

f.  in a FOIA request. Defendant Taylor's email confirms his agreement with a police chief.

241.    As a direct and proximate result of Defendants' conspiracy, Campbells have

suffered monetary damages, loss of liberty, and severe emotional distress.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

## COUNT XI: MUNICIPAL LIABILITY (MONELL CLAIM) –

## FEDERAL CIVIL RIGHTS

### (Against Defendants: City, Busch, O'Dell, Turnbough, Plumlee

### Smith, Crawford and Barnett)

242.     Campbells re-allege and incorporate by reference all preceding paragraphs.

243.     Campbells' claim is brought against Defendant **City of Mammoth Spring, Arkansas** (hereinafter "*the City*") pursuant to 42 U.S.C. § 1983.

244.     The City is a municipal corporation and a "person" within the meaning of 42 U.S.C. § 1983.

245.     The underlying actions of the individual Defendants (Busch, Turnbough, Smith, Plumlee, O'Dell Crawford, and Barnett) described herein constitute a deprivation of Campbells' constitutional rights as secured by the First and Fourteenth Amendments to the U.S. Constitution.

246.     The deprivation of Campbells' rights occurred as a direct and proximate result of an official policy, custom, or practice of Defendant City. Defendant City's policy or custom includes, but is not limited to:

a.     A custom of retaliating against citizens for exercising First Amendment rights to criticize the government and police department.

b.     A pattern of deliberate indifference to the constitutional rights of its citizens regarding free speech, due process, and proper police procedure (e.g., false arrest standards, use of forged documents, unconstitutional prior restraints).

c.     The ratification of unconstitutional conduct by final policymakers (e.g., the Mayor

42

and City Council nodding and clapping in agreement with the Police Chief's actions at the 06/10/24 meeting).

d.      A failure to adequately train or supervise its officers and officials regarding constitutional limitations on their authority and proper legal procedures, demonstrating deliberate indifference to the rights of the public they serve.

e.      The official use of city resources (city hall, clerk/notary time, official emails) to facilitate *"law-fare"* and fraudulent legal actions against citizens.

247.    Defendant City's policy or custom was the "moving force" behind the constitutional violations and injuries suffered by Campbells.

248.    As a direct and proximate result of Defendant City's official policy, custom, or practice, Campbells suffered monetary damages, severe emotional distress, and deprivation of their constitutional rights.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XII: VIOLATIONS UNDER THE HOBBS ACT (18 U.S.C. § 1951) (EXTORTION)

**(Against Defendants: Turnbough, Iron Rock, McGinnes and Shackelford (collectively as "Defendants")))**

249.    Campbells re-allege and incorporate by reference all preceding paragraphs.

250.    This claim is brought against Defendants Turnbough, Iron Rock, McGinnes and Shackelford for violations of the Hobbs Act, 18 U.S.C. § 1951.

251.    The Hobbs Act prohibits actual or attempted robbery or extortion

43

interfering with interstate commerce. Extortion is defined therein as *"the obtaining of property from another, with his consent, induced by wrongful use of fear or force or under color of official right."*

252.     Defendants engaged in extortionate conduct on or about July 19, 2024 (via letter dated 07/19/24, served 07/23/24), by sending a *"cease and desist demand"* letter which demanded $500 from Campbells for each official, plus an apology and promise concerning an action Campbells never did.

253.     Defendants' demand for "property" (money and a coerced apology/promise which has value) was induced by the wrongful use of fear, specifically the fear of ongoing and fraudulent legal actions and injunctions threatened by Defendants.

254.     The conduct of Defendants affected interstate commerce through their use of electronic communications and interactions within commercial settings.

255.     Defendants' conduct violated 18 U.S.C. § 1951.

256.     As a direct and proximate result of Defendants' violations of the Hobbs Act, Campbells suffered monetary damages and severe emotional distress, which continues.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### (State Law Claims)

### COUNT XIII: ASSAULT AND BATTERY

**(Against Defendants: Turnbough Barnett, Gary Dunn, Randall Dunn, Brenda Dunn, and Alexander, (collectively as "Defendants"))**

257.    Campbells re-allege and incorporate by reference all preceding paragraphs.

258.    On 07/16/24, Defendant Gary Dunn intentionally caused harmful or offensive contact with Mr. Campbell by placing a sharp object in his face and to the back of the neck instead of properly greeting a stranger with thanks for helping their mother.

259.    On 07/16/24, Defendant Randall Dunn intentionally caused harmful or offensive contact with Mr. Campbell by getting in Plaintiff's face and placing his body against Plaintiff's.

260.    On 07/16/24, Defendant Brenda Dunn intentionally caused harmful or offensive contact with Mr. Campbell by shaking her finger in Plaintiff's face and placing her body against Plaintiff's body.

261.    Plaintiff Dave Campbell used reasonable force in self-defense to push the aggressors off his body to protect himself from further harm.

262.    On 09/22/24, Defendant Alexander intentionally caused harmful or offensive contact with Mrs. Campbell by hitting Plaintiff in Plaintiff's right-side ribcage and causing Plaintiff to drop her camera.

263.    On or about 11/30/2023, Defendant Barnett placed Campbells in imminent apprehension of harm by barreling toward Campbells as if to throw Campbells to the ground.

264.    Defendant Turnbough assaulted Campbells during the April 01, 2024 city council meeting.

265.    Police Chief Turnbough's aggressive demeanor and yelling at Campbells during the city council meeting (*"DON'T YOU EVER TOUCH YOUR WIFE*

*LIKE THAT AGAIN!")* and in the lobby (*"GET BACK IN THAT MEETING"* and "*BE A MAN*") constitute assault, which placed Campbells in fear of imminent physical harm and caused Campbells to live in fear of imminent physical harm.

266.    Defendants acted with the intent to place Campbells in imminent apprehension of harmful or offensive contact.

267.    Campbells were placed in such apprehension of imminent harm or offensive contact when confronted on 11/30/2023 by Defendant Barnett.

268.    Mr. Campbell was placed in such apprehension of imminent harm or offensive contact when he was confronted with a weapon and physically pushed on 07/17/2024 by Defendants: Gary Dunn, Randall Dunn and Brenda Dunn.

269.    Mrs. Campbell was placed in such apprehension of imminent harm or offensive contact when she was physically hit in the ribcage by Defendant Alexander on 09/22/2024, knocking Campbell's recording phone to the ground.

270.    Defendants intentionally, or with the intent to cause apprehension, caused harmful or offensive contact with Campbells.

271.    The actions of Defendants were willful, malicious, and entirely without privilege or justification.

272.    As a direct and proximate result of Defendants' assault and battery, Campbells, Dave and Dawn Campbell sustained physical injury, pain, suffering, and severe emotional distress.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XIV INTERFERENCE WITH RELATIONSHIP

**(Against Defendants: Kauffman and O'Neill, (collectively as *"Defendants")))***

273.    Campbells re-allege and incorporate by reference all preceding paragraphs.

274.    Plaintiffs maintained a friendship with their elderly neighbor, Ms. Betty Dunn, residing at 435 Bethel Avenue in Mammoth Spring, Arkansas, for a period of approximately four years.

275.    Plaintiffs had a reasonable expectation of a continued, ongoing friendship with Ms. Betty Dunn.

276.    Defendants were aware of friendship between Plaintiffs and their neighbor.

277.    On or about September 30, 2024, Dr. Kauffman intentionally and maliciously deprived and interfered by issuing a false medical affidavit alleging Ms. Betty Dunn was mentally incompetent.

278.    Dr. Kauffman knew the affidavit was false, as his notes allegedly reveal he falsely reported the Plaintiffs as having committed financial malfeasance (an issue outside his medical scope) and the 07/16/24 ambulance report stated the patient was "A&O."

279.    Dr. Kauffman's interference was improper in motive and means, including conspiring with the estranged sons (Defendants; Gary and Randall Dunn) to have her fraudulently committed to a nursing home against her will.

280.    Defendant O'Neill was the legal counsel representing the neighbor's estranged sons in the guardianship/probate case where the sons sought to have Ms. Dunn

declared mentally incompetent.

281.    Defendant O'Neill intentionally interfered with this relationship through improper conduct, including:

A. Presenting Dr. Kauffman's allegedly fraudulent affidavit to the court, despite its falsehoods.

B. Manipulating the legal venue to Independence County to prevent Ms. Dunn from appearing at her hearing.

C. Ignoring Ms. Dunn's handwritten motion for continuance, demonstrating a disregard for her basic rights and wishes.

D. Acting in concert with others to have her falsely declared a ward and committed to a nursing home against her will.

282.    Defendant O'Neill's interference was malicious and improper, serving the interests of his clients (Gary and Randall Dunn) rather than seeking a just administration of the neighbor's affairs or the truth of her competency.

283.    As a direct and proximate result of Defendants' interference and the ensuing fraudulent guardianship proceeding, Plaintiffs were explicitly prohibited from visiting their neighbor in the nursing home where she was committed, causing the termination of their relationship and significant emotional distress.

284.    Plaintiffs were thereby damaged by the loss of society, companionship, and support of their neighbor.  Defendants' actions directly led to Plaintiffs being prohibited from visiting their neighbor in the nursing home.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

## COUNT XV: PRIVATE NUISANCE

**(Against Defendants: Peterson and Properties, (collectively as "Defendants")))**

285.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

286.     Since at least March 2024, Defendants have undertaken a series of actions which constitute an ongoing private nuisance, substantially interfering with the Plaintiffs' right to use and enjoy their residential property.

287.     Specifically, Defendants erected a series of three (3) border walls, each approximately 14.5 feet high, along the property line.

288.     The first and second walls were constructed of *"rickety"* wood and the second wall collapsed due to wind, demonstrating negligent construction and creating a safety hazard.

289.     The construction of a 14.5-foot wall far exceeds typical municipal height limitations for residential fences (generally 6 to 8 feet) and serves no legitimate beneficial use to the Defendant's commercial property.

290.     The primary purpose of the wall and the Defendant's associated actions—including leaving construction debris (concrete piles, tree stumps) on the Plaintiffs' side of the line, verbally harassing the Plaintiffs, and destroying their property when they erected a barrier—is to annoy, spite, harass, and intimidate the Plaintiffs in retaliation for protected activities (reporting child neglect and complaining at city hall).

291.     This conduct is ongoing, continuous, and extreme.

292.     The Defendant's actions have unreasonably, substantially, and intentionally interfered with the Plaintiffs' quiet use and enjoyment of their home and yard.

293.     The Defendant knew or should have known that these actions would cause offense, distress, and interference with the Plaintiffs' property rights.

294.     As a direct and proximate result of the Defendant's maintenance of a private

nuisance, the Plaintiffs have suffered significant harm, including but not limited to:

A. Deprivation of the full use and enjoyment of their property.

B. Emotional distress and mental anguish.

C. Diminution in the value of their property (a 14.5-foot spite wall materially impacts market value).

D. Expense and costs associated with clean-up and litigation.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XVI: TRESPASS TO LAND

**(Against Defendants: Peterson and Properties (collectively, *"Defendants"))***

295.     Campbells re-allege and incorporate by reference all preceding paragraphs.

296.     Defendant Peterson operates the used car lot on the adjacent property from Campbells, which is owned by Peterson Properties & Investments, LLC.

297.     On or about December 06, 2023, Defendant Peterson entered Campbells' property (specifically their yard/curtilage) without permission or invitation for the purpose of threatening and harassing Campbells.

298.    During this unauthorized entry, Defendant Peterson threatened Campbell with physical violence for calling the child neglect hotline.

299.    Defendant Peterson in subsequent, repeated acts of trespass, including:

300.    Pulling out Campbells' wooden fence posts from the ground and throwing them in Campbells' front and back yard in May of 2025 and kicking and beating on Campbells' wooden barrier fence in front of Assistant Police Chief Barnett on or about May 19, 2025 while attempting to knock the barrier down.

301.    Defendant Peterson's actions were deliberate, intentional, and performed without justification or consent from Campbells.

302.    As a direct and proximate result of Defendant Peterson's trespasses, Campbells suffered actual damages, including property damage to their fence, as well as emotional distress, annoyance, and the deprivation of their right to peaceful enjoyment of their property.

303.    Defendant Peterson's actions were malicious, warranting punitive damages to deter future trespasses.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XVII: DESTRUCTION OF PROPERTY / TRESPASS TO CHATTELS
### (Against Defendants: Peterson and Properties (collectively, *"Defendants"*))

304.    Campbells re-allege and incorporate by reference all preceding paragraphs.

305.    Defendants, acting intentionally and without authorization or legal justification, interfered with and destroyed the Plaintiffs' personal property.

306.  Specifically, on or about May 14, 2025, Defendant physically assaulted the Plaintiffs' personal property by:

1.      Pulling Plaintiffs' fence posts (chattels) out of the ground.

2.      Throwing the posts into Plaintiffs' front and back yards.

3.      Kicking and beating on the wooden barrier/partition erected by Plaintiffs.

307.  Defendant Peterson's actions were partly captured on video and witnessed by a local police officer (Defendant Barnett).

308.  Defendants' interference with Plaintiffs' chattels was a deliberate, malicious, and unauthorized interference with their rightful possession and use of their property.

309.  As a direct and proximate result of Defendants' actions, Plaintiffs suffered actual damages, including the labor required for repairs.

310.  Defendants acted with malice, intent, and reckless disregard for Plaintiffs' property rights, justifying punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XVIII: TRESPASS TO LAND

### (Against: Gary Dunn, Randall Dunn and Brenda Dunn)

311. Campbells re-allege and incorporate by reference all preceding paragraphs.

312. At all times relevant hereto, Dave and Dawn Campbell were lawfully present at the real property located at 435 Bethel Avenue in Mammoth Spring, Arkansas, at the express request and invitation of the elderly resident, who was legally in possession of the property.

313. On July 16, 2024, Defendants; Gary Dunn, Randall Dunn and Brenda Dunn, (hereinafter "*Dunn Defendants*") intentionally entered onto this property without permission, invitation, or legal justification (such as a valid Power of Attorney or court order).

314. Dunn Defendants were present for the purpose of harassing the elderly resident and were trespassing at the time Mr. Campbell called 9-1-1.

315. When Mr. Campbell entered the neighboring property to assist the alarmed elderly resident as requested, Dunn Defendants remained on the property without authorization and proceeded immediately to physically assault Mr. Campbell.

316. Dunn Defendants' entry and continued presence on the land constituted an intentional and unauthorized interference with the possessory interest of the elderly resident and the lawful presence of Campbells.

317. As a direct and proximate result of Dunn Defendants' trespass and subsequent assaults, Campbells suffered damages, including physical injury, emotional distress, and the deprivation of the peaceful enjoyment of the premises.

318. The actions were malicious and committed in concert with Defendant Turnbough to orchestrate a false arrest, warranting punitive damages to deter such future conduct.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XIX: SPOILIATION OF EVIDENCE

### (Against Defendants: City, Busch, O'Dell, and Turnbough)

319. Campbells re-allege and incorporate by reference all preceding paragraphs.

320.    On April 1, 2024, a city council meeting was held where Campbells attempted to voice grievances regarding police misconduct before being improperly silenced by city officials.

321. Proceedings of the 4/1/2024 meeting were recorded by the City's surveillance system. These recordings were vital evidence regarding Campbells' protected speech and Defendants' retaliatory actions (e.g., the Mayor shutting down the meeting, the Police Chief's aggressive behavior).

322. On **April 15, 2024**, Campbells sent a formal *"litigation hold"* notice to Defendant City, specifically instructing the preservation of the April 1, 2024, surveillance videos.

323. The City of Mammoth Spring and its employee, the City Secretary Melissa Rogers, had a duty to preserve material evidence once they were put on notice of potential litigation.

324. Despite this explicit notice, the City Secretary waited until **April 22, 2024**—a full week after receiving the preservation notice—to request the videos from the security company.

325. Due to this intentional delay and negligence, the surveillance videos were subsequently deleted and permanently destroyed.

326. The evidence contained in these videos would have supported Campbells' claims their First Amendment rights were violated and the officials engaged in misconduct, mirroring the videoed 06/10/2024 council meeting; both violating rights.

327. The destruction of 4/1 evidence significantly prejudiced Campbells' ability to

prove their case regarding the events of the April 1, 2024, meeting.

328. The actions of the City and City Secretary constitute spoliation of evidence, entitling Campbells to damages and potential evidentiary sanctions in this case and a spoliation ruling.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XX: ABUSE OF PROCESS

**(Against Defendants: Turnbough, Iron Rock, McGinnes, Shackelford and O'Neill, Plumlee and Smith, (collectively as *"Defendants"))***

329. Campbells re-allege and incorporate by reference all preceding paragraphs.

330. Defendant Turnbough acted in concert with Defendant Iron Rock and its individual attorneys (Defendant McGinnes and Defendant Shackelford), initiated two separate state court lawsuits against Campbells on July 16, 2024.

331. These lawsuits were initiated as "*law-fare*"—the use of the legal process for an improper, collateral purpose outside of the intended function of a defamation lawsuit. The lawsuits were Strategic Lawsuits Against Public Participation (S.L.A.P.P.).

332. Defendants' ulterior purpose was to retaliate against, harass, intimidate, and silence Campbells' constitutionally-protected speech concerning matters of public concern (city government and police misconduct).

333. Defendants committed willful acts in the use of the process not proper in the regular conduct of proceedings, including:

      1. Using a Iron Rock not authorized to practice law in Arkansas.

2. Filing fraudulent allegations within court documents (the false claim that the sign stated *"Jamie and Melissa get it on"*).

3. Filing a false "certificate of service" with the court.

4. Securing an unconstitutional preliminary injunction which served as a prior restraint on free speech, later vacated by the Arkansas Supreme Court.

334.   Defendant O'Neill used the legal guardianship process for an improper purpose—to silence Plaintiff's neighbor's wishes, prevent Plaintiffs from having contact with her, and facilitate her involuntary commitment, rather than acting in Mrs. Dunn's best interest or following legal procedure.

335.   Prosecutors (Defendant Smith and Plumlee) used the legal process for an improper purpose, such as retaliation against Plaintiffs' exercise of free speech.

336.  As a direct and proximate result of the Defendants' abuse of process, Campbells suffered actual damages, including substantial litigation fees defending against the police chief and city secretary's improper lawsuits, severe emotional distress, and reputational harm.

337.  Actions of Defendants were malicious and intentional, warranting punitive damages to deter such future conduct.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXI: MALICIOUS PROSECUTION (State Claim)

**(Against Defendants: City, Turnbough, Barnett, Crawford, Plumlee, Weaver, (and Smith collectively as "Defendants"))**

338. Campbells re-allege and incorporate by reference all preceding paragraphs.

339. Defendants instigated and actively participated in the criminal prosecution of Plaintiff Dave Campbell on or about July 22, 2024, for charges including *"Battery 3rd degree, recklessly causing injuries"* and *"disorderly conduct."*

340. The prosecution was initiated without probable cause. The basis for the lack of probable cause includes:

341. The use of a forged arrest affidavit signed by the wrong officer (a fact admitted by the officers).

342. The police incident report explicitly stating *"Injuries: None,"* which directly contradicts the charge of *"recklessly causing injuries."*

343. The underlying incident being a setup orchestrated by the Police Chief involving his friends.

344. Defendants acted with malice in initiating Mr. Campbell's prosecution. Malice is evidenced by the retaliatory nature of the actions following Campbells' complaints about the police department, Defendants' deliberate use of a forged document, and orchestrating Campbell's false arrest.

345. The criminal proceedings against Plaintiff Dave Campbell resulted in his favor when the Arkansas Secretary of State reprimanded the notary, Defendant Gann, for notarizing a forged document and a fraudulent conviction was obtained by Defendant Taylor ab initio. Defendant Taylor convicted Mr. Campbell two days after the Arkansas Supreme Court ordered him to answer Campbell's extraordinary writ petition.

346. As a direct and proximate result of Defendants' malicious prosecution,

Plaintiff Dave Campbell suffered damages, including but not limited to, unlawful seizure, arrest, incarceration/booking, emotional distress, damage to reputation, and the incurrence of attorney fees and court costs.

347. Defendants' actions were willful and malicious, warranting punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

**COUNT XXII: MALICIOUS PROSECUTION (State Claim)**

**(Against Defendants: Turnbough, Iron Rock, McGinnes and Shackelford (collectively as "Defendants"))**

348. Campbells re-allege and incorporate by reference all preceding paragraphs.

349. Defendants; Turnbough, Iron Rock, McGinnes and Shackelford initiated two separate civil lawsuits for defamation and injunction against Campbells on July 16, 2024, in Arkansas Circuit Court. (Police Chief: 25CV-24-72 and City Secretary (25Cv-24-73)

350. The lawsuit in the Police Chief's case sought an unconstitutional preliminary injunction to serve as a prior restraint on Campbells' protected free speech.

351. The initiation of Defendants' civil action was without probable cause or reasonable belief the claim would succeed. The basis for lack of probable cause includes:

352. The use of a Iron Rock allegedly not authorized to practice in Arkansas.

353. The inclusion of demonstrably false allegations regarding the content of the

Campbells' sign ("*Jamie and Melissa get it on*").

354. The fact underlying speech was political speech concerning public officials, highly protected under the First Amendment and Arkansas Constitution.

355. Defendants acted with malice in initiating their lawsuits, which is evidenced by the retaliatory nature of the suits, filed on the same day as other retaliatory acts were being carried out against Campbells, and use of judicial process for an improper purpose of harassment and to silence critics.

356. The original civil action terminated in favor of Campbells when the Arkansas Supreme Court granted their Petition for Writ of Certiorari on October 28, 2025, and vacated the preliminary injunction, explicitly ruling the speech was protected free speech and could not be barred.

357. As a direct and proximate result of Defendants' malicious prosecution of a civil action, Campbells suffered significant damages, including substantial attorney fees and court costs in defending the unconstitutional injunction, severe emotional distress, and damage to reputation.

358. The actions of Defendants were willful and malicious, warranting punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXIII: MALICIOUS PROSECUTION / ABUSE OF PROCESS

### False Police Reports

### (Against Defendants: Peterson, Gary Dunn, Randall Dunn and

**Brenda Dunn (collectively as "Defendants"))**

359. Campbells re-allege and incorporate by reference all preceding paragraphs.

360. On July 16, 2024, the Dunn Defendants physically assaulted Plaintiff Dave Campbell on his neighbor's property.

361. After the assault, the Dunn Defendants actively initiated and instigated a criminal prosecution against Mr. Campbell by making false reports to law enforcement stating Campbell committed assault or battery against them.

362. Defendant Peterson made false reports with the intent of having Plaintiff Dave Campbell unlawfully arrested, as demonstrated by his on-camera request to the police officer to *"just throw Campbell down on the ground and handcuff him and haul him off to prison."*

363. The prosecution was initiated without probable cause. The Dunn Defendants knew their claims were false, as they were the initial aggressors.

364. The Dunn Defendants acted with malice in initiating the prosecution. Defendants' malice is evidenced by the retaliatory nature of their actions, their collaboration with the Police Chief, and their manipulation of the legal system to set up Plaintiff Dave Campbell.

365.    As a direct and proximate result of Defendants' malicious prosecution, Plaintiff Dave Campbell suffered damages, including but not limited to, unlawful seizure, arrest, incarceration/booking, emotional distress, damage to reputation, and the incurrence of attorney fees, court costs and huge time and monetary loss.

366. The actions of the Defendants were willful and malicious, warranting

punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XXIV: DEFAMATION/SLANDER

**(Against Defendants: Busch, O'Dell and Peterson (Collectively as "Defendants"))**

367. Campbells re-allege and incorporate by reference all preceding paragraphs.

368. Defendants; Busch, O'Dell and Peterson published false and defamatory statements of fact concerning Campbells to third parties.

### Statements by the Mayor (Defendant Busch):

369. During the April 1, 2024, City Hall meeting, Mayor Busch, while acting in his official capacity during a public forum, stated he received *"numerous complaints"* about Campbells and laughed they *"do not have friends."*

370. These statements were false, implied wrongdoing by Campbells, and were made with malice or reckless disregard for the truth in an attempt to discredit Campbells during a public meeting.

371. As a direct result, Campbells suffered harm to their reputation and emotional distress.

### Statements by Defendant O'Dell (Defendant O'Dell):

372. In March/April of 2024, Defendant O'Dell took an invasive photo of Mr. Campbell bending over in his private front yard while picking up letters for his sign.

373. Defendant O'Dell published his image publicly on his Facebook page to over

1,300 friends, intending to mock and humiliate Campbell, which caused others to mock and suggest violence against Campbell.

374.    At the June 10, 2024, City Council meeting, Defendant O'Dell publicly berated Campbells in front of a packed room, falsely alleging Campbells called O'Dell a "*homosexual*" (when the sign displayed the word *"flitty"*).

375.    These statements were false, exposed Campbells to hatred, contempt, and ridicule, and were made with malice or a reckless disregard for the truth during official proceedings.

376.    As a direct result, Campbells suffered severe reputational harm, humiliation, and emotional distress.

### Statements by Defendant Peterson:

377.    On or about 12/06/23, Defendant Peterson, while trespassing on the Campbells' property, told Campbells, those people at City Hall told him *"all about"* Campbells and they *"are not good people."*

378.    These statements were false representations intended to damage the Campbells' standing in the community and justify his own unlawful threats and harassment.

379.    As a direct result, Campbells suffered emotional distress and reputational harm.

380.    The Defamation Defendants acted with actual malice, knowing their statements were false or acting with a reckless disregard for the truth of the matters

asserted.

381.    As a direct and proximate result of the Defendants' defamatory statements, Campbells suffered significant reputational harm, humiliation, emotional distress, and financial damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXV: DEFAMATION/SLANDER

### (Against Defendants: Bragg, Siebert and Hallmark

### (collectively as *"Defendants"))*

382. Campbells re-allege and incorporate by reference all preceding paragraphs.

383.    Defendants made false, unprivileged statements of fact to third parties, causing damage to Campbells' reputations.

384.    On 07/19/2024, Defendant Siebert reported Campbells had injunctions against them for committing defamation, and the articles reported injunctions for *"defaming city officials,"* which is a false or highly misleading characterization of the ongoing, fraudulent lawsuits, as the injunction (dated 05/19/2025) was vacated by the Arkansas Supreme Court on 10/28/2025 for unconstitutionality.

385.    Hallmark Media, LLC broadcast Defendant Siebert's false reports about Campbells.

386.    Defendants' statement was made with a certain degree of *"fault"* (negligence or malice).

387.    Defendants' statement is not protected by a legal privilege and Defendant

Bragg's report was inaccurate and sensationalized, suggesting Campbells had already been found guilty ("*committing defamation*"), rather than solely being sued.

388.    Defendants' report was made while reading *"criminal matters,"* on the radio, implying Campbells were criminals, which damaged Campbells' reputation and relations with others in the community.

389.    Defendant Bragg and Defendant Siebert ignored Campbells' request to correct the record and refused to address Campbells' notices. Defendants' deliberate ignorance after being put on notice of falsity evidences *"reckless disregard"* or *"bad faith."*

390.    Defendants Siebert, Defendant Bragg, and Defendant Hallmark published false and defamatory statements of fact concerning Campbells to the general public.

391.    Defendants have a relationship with the underlying state actors.

392.    On or about July 19, 2024, Defendant Siebert, while acting in her professional capacity, publicly announced the fraudulent lawsuit filed by the Police Chief and City Secretary on the Radio Station and published multiple front-page articles on their Website.

393.    Defendant Siebert stated Campbells had injunctions filed against them for committing defamation on a sign and had injunctions filed against them for defaming city officials.

394.    These statements were false and defamatory. As later confirmed by the Arkansas Supreme Court, the speech was protected free speech and could not be considered defamation. The Media Defendants relied on the fraudulent allegations

contained in the improperly filed lawsuits. Defendant Seibert created the file for her news story about Campbells one week before the chief and secretary filed their lawsuits.

395.    Defendants acted with reckless disregard for truth or actual malice. They published the allegations as factual charges of *"committing defamation"* without adequately verifying underlying facts or nature of the lawsuit (which used a fraudulent law firm.)

396.    Campbells requested the Radio Station and Website correct the record and address the notices provided to them, but Defendants ignored the requests entirely, demonstrating an intentional refusal to correct Defendants' false information purposefully spread to the public.

397.    As a direct and proximate result of Defendants' defamatory statements, Campbells suffered significant reputational harm, humiliation, emotional distress, physical attacks and financial damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXVI: DEFAMATION/SLANDER:

### (Against: Gary Dunn, Randall Dunn and Brenda Dunn (collectively as *"Dunn Defendants"*)

398.    Campbells re-allege and incorporate by reference all preceding paragraphs.

399.    Subsequent to the assault, Dunn Defendants published false statements concerning Campbells to third parties, specifically to the police officer (Crawford) who arrived on the scene and potentially to other witnesses and the 9-1-1

dispatcher.

400.    These false statements include:

1. Falsely accusing Campbells of trespassing on another's property.

2. Falsely reporting Mr. Campbell was the aggressor or had assaulted them, leading to Mr. Campbell's eventual arrest, prosecution and unconstitutional conviction.

401.    Dunn Defendants statements were false, intended to damage Campbells' reputation, implied criminal conduct, and subjected Campbells to public hatred, contempt, and ridicule.

402.    Dunn Defendants made their statements with actual malice, knowing the statements were false (as they were the aggressors) or acting with a reckless disregard for truth, with the intent to secure a false arrest of Mr. Campbell.

403.    As a direct and proximate result of Dunn Defendants' defamatory statements and slander, Campbells suffered significant reputational harm, loss of business, humiliation, emotional distress, and financial damages (including legal fees to defend against the resulting criminal charge).

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XXVII: INVASION OF PRIVACY (INTRUSION UPON SECLUSION): (Against Defendants: Peterson and Properties (Collectively as

## *"Defendants"))*

404.    Campbells re-allege and incorporate by reference all preceding paragraphs.

405.    Plaintiffs, Dave and Catrenia Dawn Campbell, reside at 200 Main Street in

the City of Mammoth Spring, Arkansas, where they should have a reasonable expectation of privacy within their home and its curtilage, specifically their screened-in front porch.

406. On or about December 7, 2023, Defendant Peterson installed three surveillance cameras pointed at Campbells' home and nowhere else.

407. One of these cameras was specifically secured to a banner post and aimed directly into Campbells' screened-in front porch.

408. Defendant Peterson intentionally intruded, physically or by electronic means, upon the seclusion of Campbells in a place where Campbells have an expectation of privacy.

409. Defendant Peterson's conduct in aiming a camera into Campbells' screened-in porch would be highly offensive to a reasonable person, as it interfered with Campbells' right to be left alone in a private area of their home.

410. Defendant Peterson installed their cameras in retaliation for Campbells reporting suspected child neglect and to harass and intimidate them.

411. As a direct and proximate result of Defendant Peterson's invasion of privacy, Campbells suffered severe emotional distress, anxiety, and loss of their peaceful enjoyment and sense of security in their own home.

412. The actions of Defendant Peterson were malicious and intentional, warranting punitive damages to deter future misconduct.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXVIII: INVASION OF PRIVACY (FALSE LIGHT)

**(Against Defendants: O'Dell, Peterson, Bragg., Hallmark, Siebert, and Turnbough (collectively as "Defendants"))**

413.    Campbells re-allege and incorporate by reference all preceding paragraphs.

414.    Defendants; O'Dell, Peterson, Bragg, Siebert, Hallmark and Turnbough each made communications which placed Plaintiffs, Dave and Catrenia Dawn Campbell, in a false light before the public.

**Against Defendant O'Dell:**

415.    Defendant O'Dell publicly posted a denigrating and invasive image of Mr. Campbell bending over in his yard on Facebook to over 1,300 friends.

416.    This image, coupled with the context of the ongoing dispute and the resulting mocking comments, placed Mr. Campbell in a false and humiliating light, highly offensive to a reasonable person.

**Against Defendants: Turnbough, Peterson, Bragg, Siebert, and Hallmark:**

417.    These Defendants published or broadcast the false statement Campbells had injunctions filed against them for committing defamation on a sign.

418.    The true facts, as determined by the Arkansas Supreme Court, were the speech was protected free speech and the lawsuit was retaliatory and unconstitutional.

419.    Defendants' publication of these false claims placed Campbells in a false position before the public, portraying them as law-breaking individuals who defamed public officials, which is highly offensive to a reasonable person.

420.    All False Light Defendants acted with actual malice or with a reckless disregard for the truth of the matters they published, intending to humiliate, harass, or

damage the reputation of Campbells and Campbells' business.

421.    As a direct and proximate result of False Light Defendants' actions,

Campbells suffered severe emotional distress, humiliation, and damage to their reputation

within their community.

WHEREFORE, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

## COUNT XXIX: STALKING AND HARASSMENT

**(Against Defendants: Peterson, Turnbough, O'Dell, Iron Rock, McGinnes and Shackelford (collectively as "Defendants"))**

422.    Campbells re-allege and incorporate by reference all preceding paragraphs.

423.    Defendants Peterson, Defendant Gary Dunn, Defendant Randall Dunn,

Defendant Brenda Dunn, Defendant Turnbough, Defendant O'Dell, *"Iron Rock Law*

*Firm,"* and its attorneys (hereinafter " *Defendants*") engaged in a willful and

malicious course of conduct directed at Campbells, which caused Campbells alarm, fear,

and substantial emotional distress.

424.    Defendants' conduct involved a pattern of behavior designed to intimidate

and retaliate against Campbells for exercising their constitutional rights and reporting

mandated misconduct. These acts include, but are not limited to:

**1.    Defendant Peterson:**

a. Trespassing onto Campbells' property to issue threats of physical violence and harm.

b. Installing surveillance cameras aimed directly into Campbells' private, screened-in

porch.

c.  Repeatedly constructing and moving a 14.5' border wall and leaving debris on Campbells' side of the property line.

d. Damaging Campbells' fence posts and barriers.

e. Making false police reports against Campbells (terroristic threats, trespassing, stealing lumber, videoing children).

## II. The Dunn Defendants:

a. Trespassing on Campbells' elderly neighbor's property to harass her.

b. Physically assaulting Mr. Campbell on July 16, 2024.

c. Filing false police reports and making false statements to Mammoth Spring Police Department and Fulton County Sheriff's Office to have Mr. Campbell falsely arrested.

## III. Defendant Police Chief:

a. Threatening Mr. Campbell during the April 1, 2024city hall meeting, and yelling at Campbell in the lobby.

b. Orchestrating Mr. Campbell's physical assault on July 16, 2024, by lying to dispatch and standing down.

c. Facilitating Mr. Campbell's false arrest via a forged affidavit.

d. Filing a fraudulent, retaliatory lawsuit and unconstitutional injunction request.

## IV. Defendant Councilman:

a. Posting a humiliating and invasive photo of Mr. Campbell on Facebook to over 1,300 people to incite mockery and violence.

b. Publicly berating Campbells during the June 10, 2024, council meeting under the color of law.

c. On or about April 02, 2025, Campbells' were recording in their front yard and O'Dell drove by, causing him to falsely state on Facebook Campbells followed him home to record him.

### V. Defendants: Iron Rock, McGinnes and Shackelford:

a. Filing fraudulent lawsuits and lying to the court regarding service and the content of Campbells' sign.

b. Continuing to prosecute the police chief and city secretary's cases in bad faith despite knowing their injunction request was determined by the Arkansas Supreme Court to be unconstitutional.

c. Attempting to use *"law-fare"* to silence and intimidate Campbells.

425.    Defendants' course of conduct served no legitimate purpose, and intended solely to harass, intimidate, and inflict emotional distress upon Campbells.

426.    As a direct and proximate result of Defendants' stalking and harassment, Campbells suffered severe emotional distress, anxiety, fear for their physical safety, and disruption to their daily lives and peace of mind in their home.

427.    The actions of Defendants were malicious and intentional, warranting punitive damages to deter future misconduct.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXX: UNAUTHORIZED PRACTICE OF LAW

**(Against Defendants: Iron Rock, McGinnes, Shackelford, and Turnbough (collectively as *"Defendants"*))**

71

428.    Campbells re-allege and incorporate by reference all preceding paragraphs.

429.    Defendant Iron Rock and its individual attorneys (hereinafter

*"Attorney Defendants"*) engaged in the practice of law in the State of Arkansas by filing

two separate civil lawsuits against Campbells on behalf of the Police Chief and City

Secretary.

430.    Upon information and belief, confirmed by the Senior Legal Counsel for

the Arkansas Secretary of State, *"Iron Rock"* does not have a Certificate of

Good Standing in the State of Arkansas and is not a legally authorized entity to provide

legal services or file lawsuits in the state.

431.    By filing these lawsuits, the Attorney Defendants engaged in the

unauthorized practice of law in violation of Arkansas law.

432.    Defendant Turnbough and City Secretary Melissa Rogers knowingly hired,

utilized, and collaborated with an unauthorized Iron Rock and attorneys to pursue

litigation against Campbells.

433.    Defendants; Turnbough, Shackelford, McGinnes and Iron Rock conspired to

use this unauthorized practice of law as a means of harassment and an abuse of process

("*law-fare*") to further their retaliatory agenda against Campbells.

434.    As a direct and proximate result of Defendants' unauthorized practice of

law, the lawsuits filed against Campbells are void *ab initio*, and Campbells suffered

damages, including substantial attorney fees and court costs in defending against the void

proceedings, severe emotional distress, and reputational harm.

435.    Pursuant to Ark. Code Ann. § 16-22-309(b), any person injured by the

unauthorized practice of law may recover three times the amount of the damages
sustained.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment
against Defendants for relief requested at end of complaint.

**COUNT XXXI: STATE LAW - FRAUDULENT MISREPRESENTATION**

**(Against Defendants: O'Neill, Kauffman, Iron Rock, McGinnes,**

**Shackelford, Turnbough, Barnett, Crawford and Gann, (collectively as**

*"Defendants"))*

436.    Campbells re-allege and incorporate by reference all preceding paragraphs.

437.    Defendant Kauffman created and submitted a false affidavit to the court,
swearing he examined Ms. Dunn on July 16, 2024, and found her incompetent, when he
did not (the ambulance report stated she was *"A&O"* - Alert and Oriented).

438.    Defendant Kauffman made a false statement of material fact, knew it was
false (or was recklessly indifferent), and intended for the court and the estranged sons
(Defendants Gary and Randall Dunn) to rely on it to deprive Mrs. Dunn of her rights.

439.    Defendant Iron Rock and its individual attorneys (McGinnes and
Shackelford), along with Defendant Turnbough and City Secretary Melissa Rogers made
several material false representations of fact in the course of the state court lawsuits
against Campbells.

440.    These false representations include, but are not limited to:

1.    Alleging in court filings Campbells' yard sign stated, *"Jamie and Melissa get it
on"* (instead of Campbells' actual protected speech).

2.    Falsely certifying to the Circuit Court in a "*certificate of service*" Campbells had been served three ways (personal, mail, and email) on July 15, 2024, when no such service occurred.

3.    The Attorney Defendants representing themselves **and their firm** as being authorized to practice law in the State of Arkansas, while lacking proper authorization or standing with the Secretary of State in order to utilize the Arkansas Judicial System.

4.    Defendant O'Neill presented a fraudulent affidavit (Dr. Kauffman's) to the court, which is a material misrepresentation of fact made with the intent the court and all parties would rely on it.

5.    Defendant Gann knew she was participating in a scheme to create a false document intended to defraud the court and procure an arrest.

6.    Defendants Turnbough, Crawford and Barnett created the scheme to create a false document intended to defraud the court and procure an arrest.

441.    Defendants' representations are false.

442.    Defendants knew their representations were false or made with a reckless disregard for the truth and used the media to promote a defaming faux news release.

443.    Defendants intended for the Court and Campbells to rely on these misrepresentations to their detriment, specifically to secure an unlawful injunction, proceed with a fraudulent lawsuit, and prevent Campbells from properly defending themselves or being officially notified of the action.

444.    Campbells justifiably relied upon the representation of service (initially believing they were not yet properly served) and the representations made to the Court

during the injunction process.

445.    As a direct and proximate result of the Defendants' fraudulent misrepresentations, Campbells suffered actual damages, including being subject to an unconstitutional prior restraint injunction, substantial attorney fees defending against the void proceedings, severe emotional distress, and reputational harm.

446.    Defendants' actions were malicious, intentional, and warrant punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

**COUNT XXXII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Defendants:  City, O'Dell, Busch, Plumlee, Gann Turnbough, Barnett, Crawford, Weaver, Taylor, Smith, McSpadden, Gary Dunn, Randall Dunn, Brenda Dunn, Kauffman, O'Neill, McGinnes, Shackelford, Peterson, Siebert, Alexander, Bragg, Hallmark, Properties, and Iron Rock, (collectively as "Defendants")))**

447.    Campbells re-allege and incorporate by reference all preceding paragraphs.

448.    Commencing on or about December 2023, Defendants engaged in a continuous and escalating course of conduct intended to harass, intimidate, alarm, and cause severe emotional distress to Campbells.

449.    Defendants acted intentionally or recklessly to cause severe emotional distress to Campbells.

450.    Defendants' course of conduct was extreme and outrageous. Their

conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

451.    Defendants' extreme and outrageous conduct includes, but is not limited to:

1.    Systematically retaliating against Campbells for exercising their constitutional right to free speech.

2.    Orchestrating a physical assault and subsequent false arrest based on an admittedly forged affidavit.

3.    Using fraudulent lawsuits *("law-fare")* and an unauthorized Iron Rock to harass and silence Campbells.

4.    Securing an unconstitutional injunction restricting free speech, later vacated by the Arkansas Supreme Court on 10/28/2025.

5.    Lying to emergency dispatchers to ensure police non-response during a physical confrontation.

6.    Using public platforms (city council meetings, church congregation, Facebook, radio, news websites) to defame, mock, and humiliate Campbells.

7.    Interfering with Campbells' neighbor's probate case using fraudulent affidavits and threatening Campbells to prevent Campbells' testimony and from submitted proof of fraud by Defendants; Randall Dunn, Kauffman and O'Neill.

8.    Trespassing onto the Plaintiffs' property to issue threats of physical violence.

9. Filing repeated false police reports against the Plaintiffs (e.g., terroristic threats, trespassing, theft of lumber).

10. Installing surveillance cameras aimed into the Plaintiffs' private screened-in

porch.

11. Erecting multiple 14.5-foot "spite walls" designed to annoy rather than serve a legitimate purpose.

12. Destroying Plaintiffs' personal property (fence posts and barrier) on multiple occasions.

13. Making false accusations of stealing and inappropriately videoing children.

14. Judicial misconduct, including seizing a *pro se* litigant's notes, holding court in unlawful venues, engaging in *ex parte* communications, restaurant harassment, and demonstrating clear bias.

15. The coordinated effort to have Plaintiff's neighbor fraudulently committed against her will is extreme and outrageous conduct going beyond all possible bounds of decency, which caused severe emotional distress to both Mrs. Dunn and Plaintiffs, who were witnesses to the abuse of process and their neighbor's distress.

16. Dr. Kauffman's actions in providing a false medical basis for institutionalizing an elderly, competent woman are extreme and outrageous. Dr. Kauffman's conduct is *"utterly intolerable in a civilized community"* and caused severe emotional distress to Mrs. Dunn and, by extension, Plaintiffs who witnessed this abuse.

17. Defendant McSpadden's conduct in calling Plaintiffs at home and threatening them with contempt was extreme and outrageous, going beyond all possible bounds of decency. Defendant McSpadden's conduct was done with intent or reckless disregard of causing severe emotional distress, which Plaintiffs suffered as a direct result of the

Judge leveraging his official power in a private, harassing manner.

18.   Defendant Taylor approached Plaintiffs while they were seated and dining at a public restaurant and during this encounter, Defendant Taylor, leveraged his position of power and authority over Plaintiffs in pending criminal matters, by coercing a handshake from Plaintiffs over their food, which occurred outside of any courtroom or official judicial proceeding and was entirely extra-judicial in nature.

452.   Defendant Taylor's conduct was intentional and malicious, designed to intimidate and harass Plaintiffs shortly after a contentious court proceeding, and exploited the imbalance of power inherent in his judicial office.

453.   Defendant Taylor's conduct was extreme and outrageous, going beyond all possible bounds of decency, and is utterly intolerable in a civilized community. A private citizen approaching a party he has judicial authority over in such a manner is an abuse of position and authority.

454.   Defendant Taylor acted with the intent to cause, or with deliberate disregard of the high probability of causing, severe emotional distress to Plaintiffs.

455.   As a direct and proximate result of Defendant Taylor's outrageous conduct, Plaintiffs suffered severe emotional distress, anxiety, fear of retaliation in the pending legal matters, and mental anguish.

456.   Defendants' conduct was a primary cause of severe emotional distress to Campbells. Campbells suffered, and continue to suffer, severe anxiety, fear for their physical safety, humiliation, loss of security in their home, and significant disruption to their lives no reasonable person could be expected to endure, inlucing being physically

attacked by strangers who parroted Defendant Turnbough's rhetoric.

457     Defendants acted with a conscious disregard for the highly probable risk of causing this distress.

458.     Defendants' actions were malicious and intentional, warranting punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XXXIII: NEGLIGENCE

### (Failure to Exercise Reasonable Care in Reporting)

**(Against Defendants: Siebert, Bragg and Hallmark (collectively as**

***"Media Defendants"*)**

459.     Campbells re-allege and incorporate by reference all preceding paragraphs.

460.     Defendant Bragg operates a radio station broadcasting in the area, and Defendant Hallmark operate a local news website. Defendant Siebert is an employee/agent of both entities.

461.     Media Defendants had a duty to the public, including the Plaintiffs, to exercise ordinary care and diligence in gathering, verifying, and publishing accurate news information, consistent with established journalistic standards.

462.     On or about July 19, 2024, and in three subsequent front-page articles, the Media Defendants breached this duty of care by publishing false statements concerning Plaintiffs' legal status.

463.     Media Defendants negligently reported as fact, Plaintiffs *"had injunctions*

*filed against them for committing defamation,"* when in fact, Plaintiffs were the

*defendants* in a motion for an injunction, which was later vacated as unconstitutional by

the Arkansas Supreme Court.

464.    The falsity of the statements was easily verifiable through basic journalistic

practices, such as contacting Plaintiffs for comment or checking public court records.

Media Defendants failed to exercise reasonable care in confirming their sources or the

accuracy of the statements provided by a friend of the opposing counsel.

465.    Furthermore, after Plaintiffs notified Media Defendants of the factual errors

and requested a correction, Media Defendants negligently and deliberately ignored these

requests, permitting the false narrative to persist.

466.    As a direct and proximate result of Media Defendants' negligence, Plaintiffs

suffered actual damages, including but not limited to severe humiliation, damage to their

personal and community reputation, mental anguish, and emotional distress.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Media Defendants for relief requested at end of complaint.

### COUNT XXXIV: NEGLIGENCE / LEGAL MALPRACTICE

**(Against Defendants:  Iron Rock, McGinnes and Shackelford, (collectively as
"Defendants"))**

467.    Campbells re-allege and incorporate by reference all preceding paragraphs.

468.    Defendants McGinnes and Shackelford (hereinafter *"Attorneys"*) are

individuals licensed to practice law in the State of Arkansas and were acting as agents or

principals of Iron Rock.

469.   Defendants owed a duty of care to Plaintiffs, the courts, and the public to exercise the skill, diligence, and knowledge commonly possessed by a reasonable, prudent, and competent attorney practicing in Arkansas, and to adhere strictly to the Arkansas Rules of Professional Conduct and Federal Rules of Civil Procedure.

470.   Defendants breached this duty of care through a series of negligent acts and omissions, including but not limited to:

1. Operating and filing lawsuits under the name of a business entity not in good standing or properly registered with the Arkansas Secretary of State.

2. Falsely certifying service of process in the initial lawsuits filed against Plaintiffs (filing a "*certificate of service*" falsely claiming service via personal, mail, and email methods on 07/15/24 when no such service occurred).

3. Filing fraudulent injunction requests based on statement ("Jamie and Melissa get it on") which was admittedly never made by Plaintiffs.

4. Violating an automatic stay by continuing to prosecute Case 25CV-24-73 and filing motions for summary judgment when prohibited by the Automatic Stay from doing so.

5. Disregarding a Court order to prosecute cases only in their personal names, rather than the *"Iron Rock Law Firm"* corporate name.

471.   As a direct and proximate result of Defendants' negligence and breach of duty, Plaintiffs suffered actual damages, including but not limited to:

A.  Incurrence of significant attorney fees and costs to defend against the fraudulent and procedurally defective lawsuits and injunction requests.

B.  Substantial emotional distress, anxiety, and mental anguish caused

by the initiation of fraudulent legal proceedings and procedural manipulations.

      C. Deprivation of their due process rights and fair administration of

justice.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

### COUNT XXXV: NEGLIGENCE

### (Against Defendant Gann)

472.    Campbells re-allege and incorporate by reference all preceding paragraphs.

473.  As a notary for the State of Arkansas Defendant Gann owed a duty of care to the public and the Plaintiffs to perform her duties according to Arkansas law.

474.    Defendant Gann breached her duty of care by knowingly notarizing a forged arrest affidavit on July 22, 2024.

475.    Defendant Gann's breach directly and proximately caused Mr. Campbells' damages (the arrest).

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment

against Defendants for relief requested at end of complaint.

### COUNT XXXVI: Notary Misconduct / Breach of Official Duty.

### (Against Defendant Gann)

476.    Campbells re-allege and incorporate by reference all preceding paragraphs.

477.    Defendant Gann violated notary public statutes by notarizing a forged document.

478.    On 09/15/2025, Notary Gann testified she knowingly notarized Defendant

Crawford's signature on Defendant's Barnett's Affidavit and both officers were present during the notarization.

479.    The AR SOS reprimand proves Defendant Gann's breach of official duty occurred.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXXVII: Claim Against Notary Bond.

### (Against Defendant Gann)

480.    Campbells re-allege and incorporate by reference all preceding paragraphs.

481.    As a notary, Defendant Gann is required to have a surety bond in the amount of $7,500.

482.    On 09/15/2025, Notary Gann testified she knowingly notarized Defendant Crawford's signature on Defendant's Barnett's Affidavit and both officers were present during the notarization.

483.    Plaintiff, Dave Campbell, is entitled to recover damages from this bond.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXXVIII: VIOLATION OF AUTOMATIC STAY

### (Against Defendants:  Iron Rock, McGinnes and Shackelford, (collectively as "Defendants"))

484.    Campbells re-allege and incorporate by reference all preceding paragraphs.

485.    Defendant Iron Rock and Defendants McGinnes and Shackelford were at all relevant times aware of an active, automatic stay in the state court case initiated by

City Secretary Melissa Rogers against Plaintiffs.

486.  An *"automatic stay"* is a formal legal order or rule that mandates a halt to all further legal proceedings in a case, preventing any party from taking action.

487.  Despite actual knowledge of this automatic stay, the Defendants willfully, contumaciously, and intentionally proceeded to engage in further litigation activities in violation of the stay.

488.  These violations included, but were not limited to:

    1.  Continuing to actively prosecute the case against Plaintiffs.

    2.  Filing two separate motions for summary judgment.

    3.  Filing a request with the circuit court requesting the stay be disregarded so City Secretary Rogers could continue to prosecute while simultaneously arguing Campbells were barred by the stay from defending themselves.

489.  Defendants' actions were taken with knowledge of the stay and demonstrated a deliberate disregard for the authority of the court and established legal procedure.

490.  Defendants acted contemptuously by defying a prior court order dated May 19th which required them to prosecute cases only in their personal names, not the corporate name of the non-existent firm.

491.As a direct and proximate result of the Defendants' willful violation of the automatic stay, Plaintiffs suffered actual damages, including but not limited to:

    A.  Incurrence of unnecessary legal fees and costs to respond to the frivolous and unauthorized motions filed during the stay period.

    B.  Undue burden, harassment, and severe emotional distress caused by

Defendants' disregard for legal orders and procedural fairness.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXXIX: FRAUD AND MISREPRESENTATION

**(Against Defendants: City, Turnbough, Iron Rock, McGinnes, Shackelford, Kauffman, O'Neill, Weaver, and McSpadden (collectively as "Defendants"))**

492.     Campbells re-allege and incorporate by reference all preceding paragraphs.

493.     Defendants; Turnbough, City Secretary Melissa Rogers, *"Iron Rock,"* its individual attorneys (*"Attorney Defendants"*), Kauffman, O'Neill, Weaver, and McSpadden (hereinafter *"Fraud Defendants"*) made multiple material false representations of fact to Campbells, third parties, and various courts of law.

494.     Defendants' false representations were integral to a conspiracy designed to violate Campbells' rights and illegally seize control of their elderly neighbor's life and assets.

495.     The false representations include, but are not limited to:

1. **Police Chief City Secretary and Attorney Defendants:**

a. Falsely alleging in court filings Campbells' yard sign stated, *"Jamie and Melissa get it on."*

b. Filing a false *"certificate of service"* with the Circuit Court.

c. Representing Defendant Iron Rock is authorized to practice law in Arkansas.

   **i. Police Chief:** Lying to a 9-1-1 dispatcher on July 16, 2024, by falsely alleging Defendant Turnbough was not permitted at the elderly woman's address

and no officers were on duty.

**ii. Police Chief & Magistrate Judge Weaver:** Submitting and accepting a forged arrest affidavit signed by the wrong officer with conflicting badge numbers to secure an unlawful arrest warrant and adamantly standing behind the fraud.

### iii. Dr. Kauffman, Judge McSpadden and Attorney O'Neill:

**A. Dr. Kauffman:** Issuing a false affidavit on September 30, 2024, where he swore he had examined the elderly neighbor on July 16, 2024, and found her mentally incompetent, when the ambulance run report proved she was *"alert and oriented"* on that date and never examined her then. Kauffman did examine Mrs. Dunn on 07/01/2024 and found her *"A&O"*.

**B. Attorney O'Neill:** Utilizing Dr. Kauffman's fraudulent affidavit in probate court to have the elderly woman declared mentally incompetent and a ward of the state.

**C. Judge McSpadden:** Threatening Campbells with contempt of court to prevent them from filing an exculpatory ambulance run report in the erroneous probate case and holding the hearing in the wrong county (Independence County instead of Fulton County) to ensure Mrs. Dunn could not attend. The nursing home stated no transportation existed.

496.    Defendants' representations were false when made, and Fraud Defendants knew them to be false or made them with a reckless disregard for the truth.

497.    The Fraud Defendants intended for third parties (the court systems, law enforcement, the public, and Campbells) to rely upon Defendants' misrepresentations to their detriment, specifically to secure unlawful arrests and convictions, obtain

unconstitutional injunctions, deny Campbells due process, and interfere with the elderly neighbor's rights.

498.    Campbells and the courts justifiably relied upon some of these representations (e.g., the validity of filings, the actions of a licensed doctor/attorney/judge) to their detriment.

499.    As a direct and proximate result of the Defendants' fraudulent misrepresentations, Campbells suffered actual damages, including unlawful seizure, arrest, conviction, substantial attorney fees, severe emotional distress, and reputational harm.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XXXX: AIDING AND ABETTING TORTIOUS CONDUCT (Against Defendants: Turnbough, City, Busch, Dunn Defendants, Peterson, Barnett, Iron Rock, McGinnes, Shackelford, Siebert, Bragg, Hallmark, Kauffman, O'Neill, Weaver and McSpadden (collectively as *"Defendants"*))

500.    Campbells re-allege and incorporate by reference all preceding paragraphs.

501.    The primary *"Active Tortfeasors"* engaged in underlying tortious conduct including Assault and Battery, Trespass, Defamation, Spoliation of Evidence, Abuse of Process, Malicious Prosecution, Fraudulent Misrepresentation, and Intentional Infliction of Emotional Distress (Outrage).

502.    The following *"Aiding and Abetting Defendants"* gave substantial assistance or encouragement to the Active Tortfeasors, knowing their conduct

constituted a breach of duty to Campbells:

1. **Defendant Turnbough:** Aided and abetted Defendant Peterson's harassment, the assailants' assault and battery, and the fraudulent legal processes. (Specifically, lying to dispatch during the 07/16 911 call, providing a forged affidavit for arrest).

2. **City Secretary:** Aided and abetted the Police Chief's *"law-fare"* by participating in her Own fraudulent lawsuit, the false certificate of service, and the spoliation of evidence (video deletion), all less than ninety (90) days before filing for bankruptcy.

3. **Mayor Defendant Busch and Councilman Defendant O'Dell:** Aided and abetted the Police Chief and City Secretary's actions by silencing Campbells, condoning the abuse at the meetings, and using their official positions to facilitate retaliation.

4. **The Dunn Defendants:** Aided and abetted the Police Chief's scheme to falsely arrest Mr. Campbell by participating in the physical assault and making multiple false police reports on different dates.

5. **Peterson, Barnett and Crawford:** Aided and abetted the police officer's suggested scheme to make a false police report regarding stolen lumber. Defendants Barnett and Crawford fabricated the 07/22/2024 arrest affidavit for Mr. Campbell's unlawful arrest.

6. ***"Iron Rock Iron Rock"*** **& Attorneys (Defendants; McGinnes and Shackelford):** Aided and abetted the Police Chief Turnbough and City Secretary Rogers' malicious prosecution and abuse of process by using an unauthorized firm, fabricating allegations, and lying to the court regarding service. Rogers testified in bankruptcy court to paying Mr. McGinnes a flat fee of $500 for the complete litigation in Case No. 25CV-24-73.

7. **Defendant Siebert, Radio Station (Bragg), & Website (Hallmark):** Aided and abetted

the defamation initiated by the Police Chief by publicly broadcasting the false allegations without verification and later refusing to correct the record.

8. **Dr. Kauffman & Attorney O'Neill:** Aided and abetted the scheme to strip Campbells' neighbor (Mrs. Dunn) of her rights and harass Campbells by providing and using a fraudulent affidavit of incompetence.

9. **Magistrate Judge Weaver & Judge McSpadden:** Aided and abetted the unlawful arrest and interference in the probate case by knowingly utilizing a forged affidavit and threatening Campbells to interfere with their testimony/evidence submission.

503.    All Aiding and Abetting Defendants, by their actions, substantially contributed to the harm suffered by Campbells.

504.    As a direct and proximate result of the Aiding and Abetting Defendants' actions, Campbells suffered significant damages, including physical injury, emotional distress, damage to reputation, and financial damages.

505.    The actions were malicious and intentional, warranting punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

## COUNT XXXXI: CIVIL CONSPIRACY

**(Against Defendants: Turnbough, City, Busch, Peterson, Dunn Defendants, Iron Rock, McGinnes, Shackelford, Siebert, Bragg, Hallmark, Kauffman, O'Neill, Weaver, Taylor, McSpadden collectively as *"Defendants"))***

506.    Campbells re-allege and incorporate by reference all preceding paragraphs.

507.    Defendants entered into an agreement to engage in an unlawful course of

action or to use lawful means to achieve an unlawful result, specifically the harassment, intimidation, false arrest, malicious prosecution, and deprivation of the constitutional rights of Campbells.

508.    The Conspiracy Defendants shared a common unlawful objective: to silence Campbells' complaints regarding public corruption and police misconduct, retaliate against Campbells for reporting mandated child neglect, and illegally seize control of the elderly neighbor's person and property.

509.    The following overt acts were committed by one or more of the Conspiracy Defendants in furtherance of this conspiracy:

1. **Police Chief:** Standing down to a 9-1-1 call and lying to a 9-1-1 dispatcher to ensure the City's non-response during a physical assault setup; submitting a forged affidavit for Mr. Campbell's arrest; filing a fraudulent lawsuit; entering into an agreement with a judge (Defendant Taylor) to violate venue rules to violate Campbells.

2. **City Secretary:** Delaying her duty to the preservation of the 04/01/2024 video evidence, leading to spoliation; participating in her fraudulent lawsuit and false service certifications to Campbells.

3. **Mayor (Defendant Busch) & Councilman (Defendant O'Dell):** Silencing Campbells at public meetings; making false statements about complaints; using an invasive photo to humiliate Mr. Campbell; allowing applause and show applause for the beratement of citizens.

4. **Dunn Defendants) & Defendant Peterson:** Physically attacking Mr. Campbell; filing false police reports; manipulating police into suggesting

false charges and causing an arrest and unconstitutional conviction of Mr. Campbell.

5. **Attorneys (McGinnes and Shackelford) & Iron Rock (Law Firm) Defendants:** Filing unauthorized, fraudulent lawsuits and lying about service; seeking an unconstitutional injunction and using an unregistered law firm.

6. **Media Defendants (Siebert, Bragg and Hallmark):** Publishing fabricated allegations to damage Campbells' reputation and ignored Campbells' request for equal air time for correction of Media Defendants' fraud to resolve Campbells' grievance.

7. **Dr. Kauffman & Attorney O'Neill:** Using a false affidavit of incompetence to manipulate the probate process and have Mrs. Dunn committed and falsely reporting to Adult Protective Services Campbells mistreated their elderly neighbor. Dr. Kauffman conspired with the estranged sons, Attorney O'Neill, and possibly Judge McSpadden to unlawfully commit Mrs. Dunn against her will. The coordination of the fraudulent affidavit and the venue manipulation suggests a meeting of the minds to achieve an unlawful objective (unlawful confinement and deprivation of rights). Defendant O'Neill conspired with the estranged sons, Dr. Kauffman, and Judge McSpadden to unlawfully declare Mrs. Dunn incompetent to prevent her from appearing at her hearing and to keep Plaintiffs from testifying.

8. **Judicial Defendants (Weaver, Taylor, Plumlee and McSpadden):** Accepting forged documents; threatening Campbells to prevent them from presenting evidence; holding court in unlawful venues; seizing Mr. Campbell's legal notes; facilitating ex parte communications. Judicial Defendants refused to correct when made aware of fraud. The judges conspired with the police chief and prosecutor *outside* of the formal judicial

process to ensure Mr. Campbell's arrest and conviction, irrespective of the facts or law. The detail that the prosecutor "irregularly wrote 'approved'" and the judge then signed the flawed document is evidence of a non-judicial agreement or coordinated effort going beyond normal courtroom functions.

510.    As a direct and proximate result of Conspiracy Defendants' actions in furtherance of Defendants' conspiracy, Campbells suffered significant damages, including physical injury, emotional distress, damage to reputation, unlawful arrest and conviction, financial damages, and the loss of their peaceful enjoyment of their home and community life.

511.    The actions were malicious, intentional, and warrant punitive damages.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, demand judgment against Defendants for relief requested at end of complaint.

### COUNT XXXXII - Freedom of Information Act – § 5 U.S.C. 552

### REQUEST FOR INJUNCTIVE RELIEF

512.    Campbells re-allege and incorporate by reference all preceding paragraphs.

513.    This claim is brought against Margaret M. Newton, J.D., solely in her *official capacity* as a representative of APS who is responsible for compliance with AFOIA requests.

514.    Pursuant to Ark. Code Ann. § 25-19-105(a)(1), all public records are open to inspection and copying by citizens of Arkansas, with limited exceptions. Campbells are citizens entitled to the requested records as alleged perpetrators under the relevant statutes as acknowledged by APS's representative Ms. Newton.

515.    Defendant Newton, acting under color of state law and within her official capacity, has failed and refused to comply with the lawful AFOIA request submitted by Campbells on January 6, 2025.

516.    Campbells seek mandatory injunctive relief to compel production of the documents. Campbells do not seek monetary damages from APS or the individual in their official capacity for this count, only compliance with the statute.

517.    Campbells are harmed by Defendant's ongoing failure to provide information due them by law, which obstructs their ability to defend themselves against ongoing misconduct by other state actors.

**WHEREFORE**, Plaintiffs, Dave and Catrenia Dawn Campbell, pray for judgment against Defendant Margaret M. Newton (Official Capacity, APS representative) for:

A. A mandatory injunction ordering the immediate production of *"any and all reports, documentation, notes, records, etc. concerning Dave and or Dawn Campbell from Mammoth Spring, Arkansas,"* as requested in the January 6, 2025 FOIA Request, with appropriate redactions as required by law.

B. Reasonable litigation fees and costs associated with compelling compliance with the AFOIA, pursuant to Ark. Code Ann. § 25-19-107(d).

C. Any other relief the Court deems just and proper.

## V.    PRAYER FOR RELIEF

WHEREFORE, Campbells respectfully request this Honorable Court enter judgment in their favor and award the following relief:

A.    A declaration Defendants violated Campbells' constitutional rights;

B.     A permanent injunction prohibiting Defendants from further harassment and

Retaliation;

C.     Monetary damages for the harm caused to their property, loss of enjoyment, and

emotional distress in an amount to be determined at trial or summary judgment;

D.  Compensatory damages in an amount to be determined at trial or summary

Judgment;

E.     Punitive damages due to the willful, malicious, and intentional nature of

Defendants' conduct;

G.     Treble damages, costs, and litigation fees pursuant to 18 U.S.C. § 1964(c) for the

RICO violations;

G.     Litigation fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws;

H.     An order instructing Judge Weaver to stop unconstitutional practice in the future;

I.      Appropriate evidentiary sanctions (e.g., an adverse inference instruction to the jury

the destroyed evidence would have been favorable to Campbells);

J.      An order permanently enjoining Defendant Peterson and Defendant Properties;

from maintaining the 14.5-foot wall and compelling Defendants Peterson and Properties

to remove the existing structure and all debris from Plaintiffs' property;

K.     An award for litigation fees and costs pursuant to 42 U.S.C. § 1988;

L.     An award for damages to be paid from the notary's (Defendant Gann) surety

bond, and

M.     Any other relief the Court deems just and proper.

**CAMPBELLS REQUEST A TRIAL BY JURY ON ALL TRIABLE ISSUES.**

**Certification and Closing under Federal Rule of Civil Procedure 11**

By signing below, we certify to the best of our knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11

Respectfully Submitted,

Dave Campbell, pro se

Catrenia Dawn Campbell, pro se

Plaintiffs' Info: (870) 907-0572
440 Main ST
Mammoth Spring, AR  72554-8800
Blues24Seven@ymail.com

## CERTIFICATE OF SERVICE

We, Dave and Dawn Campbell, certify to have served a copy of the foregoing document to Defendants, as follows on the **15**[th] day of **January, 2026**:

1. For Defendants; Brenda Dunn, Randall Dunn, Gary Dunn, Louise Dunn Alexander and Shayne Peterson, Defendants' counsel of record; Fred O'Neill was served via email to **law@perkinslawoffice.com**;

2. For Defendants; City of Mammoth Spring, Barry O'Dell and James Turnbough, Defendants' counsel of record; Kaitlynn Meister was served via email to: **kmeister@arml.org**;

3. For Defendants Hallmark Media, LLC, Lauren Siebert, John McGinnis and Jody Shackelford, Defendant Jody Shackelford was served via email to: **John@GoIronRock.com** and **Jody@GoIronRock.com**;

4. Defendant Bragg Broadcasting, Inc. was served via USPS to: Registered Agent James Bragg at 6 Setting Sun TR (PO Box 909), Cherokee Village. 72529-0909

Respectfully Submitted,

Dave Campbell, pro se

Catrenia Dawn Campbell, pro se

Plaintiffs' Info: (870) 907-0572
440 Main ST
Mammoth Spring, AR 72554-8800
Blues24Seven@ymail.com



DAVE CAMPBELL
(870) 907-0572
THE UPS STORE #1299
STE 6
1310 EASTSIDE CENTRE CT
MOUNTAIN HOME AR 72653-2748

1 LBS        1 OF 1
SHP WT: 1 LBS
DATE: 15 JAN 2026

SHIP EASTERN DISTRICT OF ARKANSAS/JAKE
TO: US DISTRICT COURT
    STE 312
    615 S MAIN ST

JONESBORO  AR 72401-2861

AR 724 0-01

UPS GROUND
TRACKING #: 1Z 9A4 83F 03 0563 9530

BILLING: P/P

REF #2: JE

MMA4GTJA199XW ISH 13.00C ZZP 450 50.5U 12/2025

The UPS Store RFID Label
Tracking #
1Z9A4383F030305563
9530